# EXHIBIT 6

Before the
**U.S. Copyright Office, Library of Congress**
Washington, DC

| | |
|---|---|
| In the Matter of<br>**Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies** | )<br>)<br>)   Docket No. 2014–07<br>)<br>) |

**Reply Comment on Proposed Class 9:
Literary Works Distributed Electronically—Assistive Technologies**
of
**American Foundation for the Blind (AFB)
American Council of the Blind (ACB)
Samuelson-Glushko Technology Law & Policy Clinic (TLPC)
Library Copyright Alliance (LCA)
American Association of People with Disabilities (AAPD)**

**American Foundation for the Blind**

Mark Richert, Director of Public Policy
mrichert@afb.net • 202.469.6833

www.afb.org

1600 L Street NW, Suite 513
Washington, DC 20036-5689

**American Council of the Blind**

Melanie Brunson, Executive Director
mbrunson@acb.org • 202.467.5081

Eric Bridges, Director of
External Relations and Policy
ebridges@acb.org 202.467.5081

www.acb.org

2200 Wilson Boulevard, Suite 650
Arlington, VA 22201-3354

**Samuelson-Glushko Technology Law & Policy Clinic (TLPC)**

James L. Frazier, Melissa S. Jensen, and Samantha Moodie, Student Attorneys
Prof. Blake E. Reid, Director

blake.reid@colorado.edu • 303.492.0548
tlpc.colorado.edu

Robert & Laura Hill Clinical Suite
404 UCB Boulder, CO 80309-0404

**Library Copyright Alliance**

Jonathan Band, Counsel
jband@policybandwidth.com • 202.296.5675

www.librarycopyrightalliance.org

21 Dupont Circle NW, Suite 800
Washington, DC 20036-1543

**American Association of People with Disabilities**

Eva LaManna, Policy Manager
elamanna@aapd.com • 202.521.4306

www.aapd.com

2013 H Street NW, 5th Floor
Washington, DC 20006

**Introduction**

  The American Foundation for the Blind, the American Council of the Blind, the Samuelson-Glushko Technology Law & Policy Clinic, the Library Copyright Alliance, and the American Association of People with Disabilities respectfully reply to comments made in response to Proposed Class 9: Literary Works Distributed Electronically—Assistive Technologies.[1]

  The record strongly supports renewing the e-book accessibility exemption. Our initial long form comment presented factual and legal arguments demonstrating the need for renewing the e-book accessibility exemption. These arguments remain undisputed, and many are explicitly supported by other commenters on the record. In addition, the record reflects broad support from rightsholders and consumers. Legislative history and court precedent affirm that an objective of copyright law is to enhance access to literary works for people who are blind, visually impaired, or print disabled. Finally, the record shows that the statutory factors continue to weigh in favor of renewing the e-book accessibility exemption.

---

[1] *See,* American Foundation for the Blind, American Counsel for the Blind, Samuelson-Glushko Technology Law & Policy Clinic (TLPC) and Library Copyright Alliance, *Long Form Comment, Proposed Class 9: Literary Works Distributed Electronically-Assistive Technologies* (Feb. 2015) available at http://copyright.gov/1201/2015/comments-020615/InitialComments_LongForm_AFBetal_Class09.pdf; [hereinafter *Accessibility Advocates' Supporting Comment*]; American Association of Publishers, *Short Comment Regarding a Proposed Section 1201 Exemption* (Feb. 2015) available at http://copyright.gov/1201/2015/comments-020615/InitialComments_ShortForm_AAP_Class09.pdf [hereinafter *AAP Supporting Comment*]; Music Library Association, *Short Comment Addressing Class 9* (Feb. 2015) available at http://copyright.gov/1201/2015/comments-020615/InitialComments_ShortForm_MLA_Class09.pdf [hereinafter *MLA Supporting Comment*]; Free Software Foundation, *Short Comment Regarding a Proposed Exemption under 17 U.S.C. 1201* (Feb. 2015) available at http://copyright.gov/1201/2015/comments-020615/FreeSoftwareFoundation/InitialComments_ShortForm_FreeSoftwareFoundation_Class 9.pdf [hereinafter *Free Software Foundation Supporting Comment*]; iFixit, *Short Comment Regarding a Proposed Exemption Under 17 U.S.C. 1201* (Feb. 2015) available a thttp://copyright.gov/1201/2015/comments-020615/InitialComments_LongForm_iFixit_Class09.pdf [hereinafter *iFixit Supporting Comment*]; Digital Right to Repair, *Combined Comments* (Feb. 2015) available at http://copyright.gov/1201/2015/comments-020615/EFF_merged_shortform_comments_class09.pdf [hereinafter *Digital Right to Repair Combined Support Comments*]; John Miller, *Short Comment Regarding a Proposed Section 1201 Exemption* (Mar. 2015) available at http://copyright.gov/1201/2015/comments-032715/class%209/121AuthEnt_class09_1201_2014.pdf [hereinafter *Miller Comment*].

2

## Discussion

### I. The record demonstrates an undisputed need to renew the existing e-book accessibility exemption.

Empirical evidence offered in this proceeding demonstrates the need for this exemption. The record shows that readers who are blind, visually impaired, or print disabled will benefit from this exemption as they have from similar and identical exemptions in the past, and that alternative market solutions are not yet adequate solutions. The record also includes evidence that students and consumers who are blind, visually impaired, or print disabled used previously granted exemptions to access e-books and e-textbooks.[2] Finally, rights holders "do not oppose" renewing the e-book accessibility exemption, and consumers also overwhelmingly support this exemption.[3]

As we noted in our long form comment, renewing this exemption would respond to the ongoing need of people who are blind, visually impaired, or print disabled.[4] This continued need remains undisputed. As the record reflects, millions of Americans need and will use a renewed e-book accessibility exemption. More than 20 million Americans experience vision loss, while over 40 million Americans experience dyslexia.[5]

Alternative market solutions to circumvention are not yet adequate solutions. As the Association of American Publishers noted in its comments, large-scale implementation of ePub3 and HTML5 standards may one day move the market closer to correcting current deficiencies.[6] However, all commenters in this proceeding agreed that ePub3 and HTML5 standards do not currently satisfy the needs of consumers who are blind, visually impaired, or print disabled.[7]

Students who are blind, visually impaired, or print disabled, used previously granted e-book exemptions and will continue to benefit from a renewed exemption. Other commenters have specifically supported the use of the exemption to improve outcomes for students who are blind, visually impaired, or print disabled.[8] It is estimated that well over 100,000 students in the United States experience some print disability.[9] In its comment supporting this exemption, iFixit relayed

---

[2] *See* AFB et al., *Accessibility Advocates' Supporting Comment* at 21; Free Software Foundation, *Free Software Foundation Supporting Comment* at 1; iFixit, *iFixit Supporting Comment* at 4-5; MLA, *MLA Supporting Comment* at 1.

[3] AAP, *AAP Support Comment* at 1; *see also* Miller, *Miller Comment* at 4; iFixit, *iFixit Supporting Comment*; Digital Right to Repair, *Digital Right to Repair Combined Supporting Comments* at 1.

[4] AFB et al., *Accessibility Advocates' Supporting Comment* at 13-19.

[5] AFB, *Facts and Figures on Adults with Vision Loss* (May 2014), http://www/afb.org/info/blindness-statistics/adults/facts-and-figures/235; The Dyslexia Research Institute, The Dyslexia Research Institute Mission, http://www.dyslexia-add.org/

[6] AAP, *AAP Supporting Comment*, at 1.

[7] *See* AAP, *AAP Supporting Comment*, at 1; AFB et al., *Accessibility Advocates Supporting Comment*, at 16.

[8] *See* iFixit, *iFixit Supporting Comment*, at 4-5; MLA, *MLA Supporting Comment*, at 1.

[9] AFB et al., *Accessibility Advocates' Supporting Comment,* at Students with Disabilities who May Require Alternate Format, Accessible Materials Appendix D.

3

the story of Chris Nusbaum, a then-14-year-old high school student experiencing vision loss. Chris was locked out of a textbook due to inaccessible software:

> My class has just been assigned a project for which we must use information in the class's textbook. Every student has a Kindle, which has the textbook loaded on to it. All of the sighted students can easily read the material and complete the assignment independently, […] I, on the other hand, cannot read the book without the assistance of a sighted reader. … All of this because of a problem which can easily and inexpensively be solved by integrating text-to-speech software into your readers and making sure that your apps and information are accessible with that software.[10]

Nusbaum's experience is common and familiar to many students who are blind, visually impaired, or print disabled. Individuals like Nusbaum clearly demonstrate a likelihood of adverse effect, and establish a clear and present need for this exemption. Accessing academic and technical writing is especially difficult for readers who are blind, visually impaired, or print disabled.[11] Indeed, "it is undisputed that the present-day market for books accessible to the handicapped is so insignificant that 'it is common practice in the publishing industry for authors to forego royalties for books manufactured in specialized formats for the blind.'"[12] As noted in the iFixit Comment, "there is no Library of Alexandria out there for visually-impaired readers."[13]

Finally, all of the comments received on the record support renewing the e-book accessibility exemption. As the only rightsholders filing comments in this proceeding, "AAP does not object to granting that proposal" to renew the current exemption.[14] The Music Library Association, the Free Software Foundation, and iFixit all submitted supporting comments explaining the need for renewing the e-book accessibility exemption.[15] Digital Right to Repair submitted more than 1,000 comments showing strong public support for renewing the exemption. [16] Even the only comment filed in the opposition round was "not opposed to granting such an exemption."[17]

---

[10] iFixit, *iFixit Supporting Comment*, at 5-6.

[11] *See* AFB et al., *Accessibility Advocates' Supporting Comment*, at 20-21; MLA, *MLA Supporting Comment*, at 1; Free Software Foundation, *Free Software Foundation Supporting Comment*, at 1.

[12]*Authors Guild, Inc., v. HathiTrust*, 755 F.3d 87, 103 (2nd Cir. 2014).

[13] iFixit, *iFixit Supporting Comment*, at 2.

[14] AAP, *AAP Supporting Comment*, at 1.

[15] Free Software Foundation, *Free Software Foundation Supporting Comment*; iFixit, *iFixit Supporting Comment*; MLA, *MLA Supporting Comment*.

[16] Digital Right to Repair, *Digital Right to Repair Combined Support Comments* e.g. at 147.

[17] Miller, *Miller Comment*, at 4.

## II. Converting e-Books into accessible formats for people who are blind, visually impaired, or print disabled is a fair use of copyrighted works.

As we detailed in our long form comment, providing e-books in accessible formats to people who are blind, visually impaired, or print disabled is a fair use of copyrighted works. This use has been explicitly recognized by Congress and by courts.[18] Last year, the Second Circuit reaffirmed this tradition by using the four fair use factors to determine "that the doctrine of 'fair use' allows … provid[ing] those works in formats accessible to those with disabilities."[19] Most commenters do not dispute that making e-books accessible is an archetypical fair use, and the record contains no evidence suggesting that proving e-books in accessible formats is not clearly a fair use.[20]

## III. The statutory factors support granting this exemption.

As detailed in our long form comment, the Section 1201 factors weigh in favor of renewing the e-book accessibility exemption.[21] These arguments remain undisputed on the record.

It is undisputed that the first factor, the availability for use of copyrighted work, weighs in favor of renewing this exemption.[22] This exemption will greatly improve the availability of accessible works for people who are blind, visually impaired, or print disabled. Our long form comment noted the extremely small amount of accessible works available compared with the total amount of books available for people who are sighted.[23] iFixit's comment supported this

---

[18] *See* H.R. Rep. No 94-1476, at 73 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5686 ("a special instance illustrating the application of the fair use doctrine pertains to the making of copies or phonorecords of works in the special forms needed for the use of blind persons"); *Authors Guild, Inc., v. HathiTrust*, 755 F.3d at 105 ("the doctrine of 'fair use' allows defendants appellees to create a full-text searchable database of copyrighted works and to provide those works in formats accessible to those with disabilities"); *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 455, n.40 (1984) ("[m]aking a copy of a copyrighted work for the convenience of a blind person is expressly identified by the House Committee Report as an example of fair use, with no suggestion that anything more than a purpose to entertain or to inform need motivate the copying.").

[19] *HathiTrust* 755 F.3d at 105.

[20] Despite the Second Circuit's clear holding of fair use, our discussion of the *HathiTrust* opinion prompted one responsive comment, which supported passage of the exemption as granted. *See Miller Comment*, at 4. The comment suggested that *HathiTrust*'s holding should be understood to apply only to authorized entities. This is an unduly narrow reading of the Second Circuit's decision. Indeed, the *HathiTrust* court framed its analysis of providing access to copyrighted work for people who are blind, visually impaired, or print disabled through the lens of Section 107's fair use factors (*HathiTrust* 755 F.3d at 101-103). These factors make no reference to authorized entities. In fact, the court appeared to afford HathiTrust members no unique or special consideration because of their statuses as authorized entities (*HathiTrust*, 755 F.3d at 101-103).

[21] AFB et al., *Accessibility Advocates' Supporting Comment*, at 19.

[22] *See* 17 U.S.C. § 1201(a)(1)(C)(i).

[23] AFB et al., *Accessibility Advocates' Supporting Comment*, at 19-20.

proposition, discussing the severity of this international book drought and noting that this exemption would be a means to ensure access to books for people who are blind, visually impaired, or print disabled when the market has not provided adequate solutions.[24]

The record further shows that the second factor, the availability for use of works for nonprofit archival, preservation, and educational purposes, clearly weighs in favor of renewing this exemption.[25] Again, many commenters have supported the proposition that the e-book accessibility exemption has been and will continue to be used by students who are blind, visually impaired, or print disabled as well as the university disability offices and specialty libraries assisting them.[26] Our long form comment includes 10 representative statements from students who are blind, visually impaired, or print disabled citing specific and unique difficulties in achieving an equal learning experience as sighted students.[27] iFixit's comment further notes specific difficulties faced by students who are blind, visually, impaired, or print disabled due to the implementation of new technologies in the classroom.[28] This exemption will help mitigate all of these difficulties. The record clearly shows that the second factor weighs heavily in favor of renewing this exemption.

As detailed in our long form comment, the third factor, the impact of the prohibition of circumventing TPMs on criticism, commentary, news reporting, teaching, scholarship or research, weighs in favor of renewing this exemption.[29] The other filings in this record support our assertion that this exemption would help ensure equal access to information for people who are blind, visually impaired, or print disabled. In particular, the record recognizes reading and access to information as an integral means to achieve independence and equality for people who are blind, visually impaired, or print disabled. iFixit's comment notes that this exemption is about facilitating equal access to information and ensuring a level, competitive playing field for people who are blind, visually impaired, or print disabled.[30] One student cited TTS software as "liberating" because of its ability to provide them equal access to information.[31] In addition, the

---

[24] iFixit, *iFixit Supporting Comment*, at 2.

[25] *See* 17 U.S.C. § 1201(a)(1)(C)(ii).

[26] *See* AFB et. al., *Accessibility Advocates' Supporting Comment,* at 21(noting that Disability Services Offices' "duties of non-discrimination under the Vocational Rehabilitation Act of 1973 and the Americans with Disabilities Act require [them] to provide students with accessible textbooks as quickly as possible which often require [them] to circumvent TPMS"); *see also* iFixit, *iFixit Supporting Comment*, at 4-5*;* MLA, *MLA Supporting Comment*, at 1 ("Music Librarians cannot make certain e-books, digital textbooks and PDF articles accessible to their print-disabled patrons without circumvention of access controls when necessary for literary works.").

[27] AFB et al., *Accessibility Advocates' Supporting Comment.*, at Letters to Current Congressional Representatives in Favor of The Technology, Education, and Accessibility in College and Higher Education Act, Appendix B

[28] iFixit, *iFixit Supporting Comment*, at 4-5.

[29] AFB et al., *Accessibility Advocates' Supporting Comment*, at 21-22; 17 U.S.C. § 1201(a)(1)(C)(iii).

[30] iFixit, *iFixit Supporting* Comment, at 4.

[31] *Id.* at 6.

iFixit comment notes "that copyright law under Section 1201 penalizes both the blind and developers" who want to research and develop accessibility software.[32]

There is no argument in the record that this exemption would affect the market for or value of copyrighted works.[33] Therefore, the fourth factor weighs in favor of renewing this exemption. As noted in our long form comment, previous exemptions have had no adverse effect on the market for or value of copyrighted works. Similarly, there is no argument that renewing this exemption would cause adverse market effects. In fact, the American Association of Publishers agreed with us that someday the market may provide adequate alternatives, but these alternatives are not currently practicable solutions.[34]

Finally, as we noted in our long form comment, the proposed exemption is also a critical component of bringing the United States into compliance with the Marrakesh treaty.[35] This is undisputed in the record. Renewing the e-book accessibility exemption would also continue to signal the United States' commitment to equal access for people who are blind, visually impaired, or print disabled, and signal its continuing leadership in international copyright law.

## Conclusion

The record supports renewing the e-book accessibility exemption to allow people who are blind, visually impaired, or print disabled, as well as authorized entities, to circumvent TPMs that prevent or interfere with the use of assistive technologies on electronically distributed literary works. The need for this exemption is undisputed and supported by all commenters, including rightsholders.[36] Proponents submitted strong and undisputed evidence of use of the current exemption and the need for a continuing exemption. Further, the record demonstrates overwhelming public support for this exemption.[37] The record also reflects a continuing trend of support for an exemption that addresses the ongoing needs of people who are blind, visually impaired, or print disabled.

Like AAP, we look forward to a time when fully accessible versions of e-books, textbooks, and digital articles are universally made available in the free market. But until the market delivers such a result, there remains no reasonable alternative to circumvention for readers requiring accessible e-books. Therefore, we respectfully ask the Office to renew the exemption allowing people who are blind, visually impaired, or print disabled to access the digital books they have lawfully purchased.

---

[32] *Id.* at 5.

[33] *See* 17 U.S.C. § 1201(a)(1)(C)(iv).

[34] AAP, *AAP Supporting Comment*, at 1.

[35] AFB et al., *Accessibility Advocates' Supporting Comment*, at 21.

[36] *See* AAP, *AAP Supporting Comment*, at 1.

[37] *See, e.g.,* Digital Right to Repair, *Digital Right to Repair Combined Supporting Comments*, at 1.