# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MATTHEW GREEN ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:16-cv-1492 |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

# REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

      I.      PLAINTIFFS FAIL TO ESTABLISH THEIR STANDING ................................. 3

              A.     Plaintiffs Fail To Establish a Credible Threat of Prosecution ................... 4

              B.     With the Exception of Green's Intended Publication of Decryption Code,
                     Plaintiffs Fail to Show an Intent to Engage in Conduct Proscribed by
                     § 1201(a) That Is Arguably Protected by the First Amendment ............... 7

      II.     PLAINTIFFS FAIL TO STATE A COGNIZABLE OVERBREADTH CLAIM 11

              A.     Section 1201(a) Does Not By Its Terms Regulate Speech ...................... 11

              B.     Plaintiffs Fail to Differentiate Their Overbreadth Claim From Their
                     As-Applied Claims .................................................................................. 13

              C.     Plaintiffs Cannot Establish Substantial Overbreadth in Light of the
                     Many Obvious Constitutional Applications of the Statute ...................... 14

      III.    PLAINTIFFS FAIL TO STATE A COGNIZABLE PRIOR RESTRAINT
           CLAIM ........................................................................................................... 15

      IV.    PLAINTIFFS FAIL TO STATE COGNIZABLE AS-APPLIED FIRST
           AMENDMENT CLAIMS ............................................................................... 19

      V.     THE COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS' APA
           CLAIMS ........................................................................................................ 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.,
    307 F. Supp. 2d 1085 (N.D. Cal. 2004) ............................................................ 19, 20, 23

ACLU v. Alvarez, 679 F.3d 583 (7th Cir. 2012) ............................................................ 8

A.N.S.W.E.R. v. Dist. of Columbia, 589 F.3d 433 (D.C. Cir. 2009) ................................ 5

Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289 (1979)................................ 4

Balogh v. Lombardi, 816 F.3d 536 (8th Cir. 2016) ...................................................... 5

Bd. Of Educ. v. Pico, 457 U.S. 853 (1982) .................................................................. 8

Bernstein v. U.S. Dep't of State, 974 F. Supp. 1288 (N.D. Cal. 1997) ........................ 16

Chamber of Commerce v. FEC, 69 F.3d 600 (D.C. Cir. 1995) ...................................... 5

City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750 (1988) ................................ 15, 16, 18

Clark v. Library of Cong., 750 F.2d 89 (D.C. Cir. 1984) ............................................ 24

*Eldred v. Ashcroft, 537 U.S. 186 (2003) .................................................................. 22

Ethnic Employees v. Boorstin, 751 F.2d 1405 (D.C. Cir. 1985) .................................. 24

Freedman v. Maryland, 380 U.S. 51 (1965) .............................................................. 16

FW/PBS, Inc. v. Dallas, 493 U.S. 215 (1990) ............................................................ 16

Glass v. Lahood, 786 F. Supp. 2d 189 (D.D.C. 2011) ................................................ 11

Golan v. Holder, 132 S. Ct. 873 (2012) .................................................................... 22

Holder v. Humanitarian Law Project, 561 U.S. 1 (2010) ............................................ 4

Houchins v. KQED, Inc., 438 U.S. 1 (1978) .............................................................. 8

Intercollegiate Broad. Sys. Inc. v. Copyright Royalty Bd., 684 F.3d 1332 (D.C. Cir. 2012) ...... 25

Lempert v. Rice, 956 F. Supp. 2d 17 (D.D.C. 2013) .................................................. 11

*Members of City Council v. Taxpayers for Vincent, 466 U.S. 789 (1984) .................... 13, 14, 15

*Ord v. District of Columbia*, 587 F.3d 1136 (D.C. Cir. 2009) ........................................ 4

*Parker v. District of Columbia,* 478 F.3d 370 (D.C. Cir. 2007) ............................................. 4-5, 6

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ............................................... 19-20, 21

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ...................................... 8

*Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005) .................................................. 5

*Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969) .................................................... 16

*Sorrell v. IMS Health Inc.,* 564 U.S. 552 (2011) .......................................................... 8

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014).....................................3-4, 5, 7-8, 10

*Temple v. Abercrombie*, 903 F. Supp. 2d 1024 (D. Haw. 2012) ...................................... 5

*Terveer v. Billington*, 34 F. Supp. 3d 100 (D.D.C. 2014) ........................................... 24

*United States v. Elcom Ltd.*,
    203 F. Supp. 2d 1111 (N.D. Cal. 2002) ................................................. 11, 19, 20, 21, 23

*United States v. O'Brien*, 391 U.S. 367 (1968) .......................................................... 19

*United States v. Stevens*, 559 U.S. 460 (2010) ............................................................ 12

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001)....................... 19, 20, 21, 23

*Urban Health Care Coal. v. Sebelius*, 853 F. Supp. 2d 101 (D.D.C. 2012) ................................. 4

*U.S. Telecom Ass'n v. FCC*, 825 F.3d 674 (D.C. Cir. 2016) ......................................... 5

*Vanover v. Hantman*, 77 F. Supp. 2d 91 (D.D.C. 1999) ........................................... 24

*Virginia v. Hicks*, 539 U.S. 113 (2003)................................................................. 12, 13

*Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446 (D.C. Cir. 1994) ..................... 24

*Zemel v. Rusk*, 381 U.S. 1 (1965) ...................................................................... 8

**Statutes**

Digital Millennium Copyright Act ("DMCA"), Pub. L. No. 105-304, 112 Stat. 2860 (1998)....... 1

5 U.S.C. § 551 ......................................................................................................... 24

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 .................................................. 3

5 U.S.C. § 701 ...................................................................................................... 24, 25

17 U.S.C. § 107 ........................................................................................................... 21

17 U.S.C. § 1201 ................................................................................................... *passim*

17 U.S.C. § 1203 ........................................................................................................... 5

17 U.S.C. § 1204 ........................................................................................................... 5

**Legislative Materials**

S. Rep. No. 105-190 (1998) ............................................................................................ 14

*Chapter 12 of Title 17, Hearing Before the Subcomm. on Courts, Intellectual Property and the Internet of the H. Comm. on the Judiciary ("Chapter 12 Hearing")*, 113th Cong., 2d Sess. (Sept. 17, 2014), *available at* https://judiciary.house.gov/hearing/hearing-chapter-12-of-title-17/ ............................................................................................... 14

**Administrative Materials**

37 C.F.R. § 201.40 ......................................................................................................... 6

80 Fed. Reg. 65944 (2015 Final Rule) ...................................................................... 6, 17, 18

## INTRODUCTION

Plaintiffs fail to establish that they have standing to challenge provisions of the Digital Millennium Copyright Act ("DMCA"), Pub. L. No. 105-304, 112 Stat. 2860 (1998) (codified in relevant part at 17 U.S.C. § 1201(a)), on First Amendment grounds. None of the Plaintiffs has shown a credible threat of prosecution particular to them. Nor, for the most part, have they shown that their stated intent to violate the DMCA's anti-circumvention and anti-trafficking provisions implicates the First Amendment at all. Plaintiffs' recitation of alleged burdens that technological measures that control access to copyrighted works ("access controls") impose on the ability to use those works *after* circumvention does not give them standing because the desire to use copyrighted works does not confer a First Amendment right to access those works in the first place without the copyright owner's authorization. Nor have Plaintiffs shown that their intended circumvention of such access controls *itself* qualifies as speech or expressive conduct—as would be necessary to establish standing. While one Plaintiff now claims that his conduct in violation of the separate anti-trafficking provision will involve publication of decryption code (which courts have recognized as speech) in order to expose vulnerabilities in electronic systems, the other two Plaintiffs have failed to make any similar showing. Because no Plaintiff has established all elements necessary for standing, Plaintiffs' First Amendment claims should be dismissed for lack of subject matter jurisdiction.

Moreover, even if the Court reaches the merits of those claims, they should be dismissed for failure to state a claim upon which relief may be granted. Plaintiffs fail to show that their claims properly fit within the frameworks of either an overbreadth or a prior restraint challenge. Such First Amendment facial challenges are inappropriate because, by their terms, the DMCA's anti-circumvention and anti-trafficking provisions do not regulate speech or expressive conduct.

Moreover, Plaintiffs' overbreadth claim is also foreclosed because they fail to distinguish the overbreadth claim they seek to advance from their as-applied claims. Finally, Plaintiffs' attempt to ignore the vast number of instances where the DMCA provisions constitutionally serve their intended purpose of preventing unauthorized access to copyrighted works amounts to a concession that they cannot establish substantial overbreadth.

Plaintiffs' prior restraint claim should also be dismissed because the triennial rulemaking—an interactive process involving public proposals, public comments, recommendations from other government components, and consideration of factors set forth by statute, and resulting in temporary exemptions to the anti-circumvention prohibition—bears no resemblance to the licensing or permitting schemes that courts have analyzed as potentially impermissible prior restraints. Plaintiffs fail to cite a single instance where a court has applied the prior restraint doctrine in the absence of any individualized determination that could conceivably allow a decisionmaker to censor speech based on its content or viewpoint.

Plaintiffs also fail to support their as-applied First Amendment claims. First, Plaintiffs err in urging the Court to apply strict rather than intermediate scrutiny to such claims. Plaintiffs ignore the consensus of other courts, recognizing that because the DMCA, when it applies to an individual's use or publication of decryption code, targets only the functional, non-speech elements of the code that effect the circumvention of access controls, it qualifies, at most, as a regulation of expressive conduct rather than pure speech and should therefore be analyzed under intermediate scrutiny. In addition, Plaintiffs' contention that the provisions fail intermediate scrutiny, relying on the notion that the provisions place burdens on fair use of copyrighted material, should be rejected. Plaintiffs' intended activities in publishing decryption code or creating and marketing a device that would allow widespread unlawful access to HDMI

2

content—to the extent they are entitled to First Amendment protection at all— clearly implicate the government's important interest in making digital environments safe for the authorized dissemination of copyrighted works and preventing massive digital piracy. The DMCA's application to Plaintiffs does not threaten the balance that Congress has struck, and that the Supreme Court has approved, in reconciling the constitutional concerns at issue in the Copyright Clause and the First Amendment.

Finally, Plaintiffs' attempt to assert a challenge under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, to the 2015 Final Rule, issued by the Librarian pursuant to the triennial rulemaking described in § 1201(a)(1)(C), should also be dismissed. Plaintiffs again ignore the statutory language—this time, the APA's express exclusion of Congress from its provisions—and fail to overcome well-settled precedent recognizing that the Library is included in that statutory exclusion. Plaintiffs' claims should therefore be dismissed in their entirety.

## ARGUMENT

## I.     PLAINTIFFS FAIL TO ESTABLISH THEIR STANDING

As explained in Defendants' opening brief, Plaintiffs fail to establish their standing, which requires them to show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation and alteration marks omitted). Standing requires an injury that is "concrete and particularized" and "actual or imminent" in order to ensure that a plaintiff "has a personal stake in the outcome of the controversy." *Id.* (internal quotation omitted). While a plaintiff challenging a criminal law need not show an "actual arrest, prosecution, or other enforcement action" to establish a cognizable injury, he must show "circumstances that render the threatened enforcement

sufficiently imminent." *Id.* at 2342. The plaintiff must therefore show "an intention to engage in a course of conduct arguably affected with a constitutional interest but proscribed by a statute," as well as a "credible threat of prosecution" under the statute. *Id.* Plaintiffs fail to make this showing.

### A.     Plaintiffs Fail to Establish a Credible Threat of Prosecution

Plaintiffs argue that, under *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), and *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979), they may establish a credible threat of prosecution here simply by asserting that they intend to engage in conduct that violates § 1201(a)(1)(A) and § 1201(a)(2) and that the government has prosecuted violations of those provisions in the past. Pl. Opp. at 15. However, Plaintiffs' theory is not an established rule. Courts continue to inquire into whether a plaintiff faces a credible threat of prosecution in a "concrete and particularized" sense, under the specific circumstances of a case, even where plaintiffs seek to raise First Amendment claims.

Indeed, following *Humanitarian Law Project* (a case where the government had not challenged standing and the Court addressed the issue only briefly), the Court in *Susan B. Anthony* held that the plaintiff had standing to raise its First Amendment claim only after analyzing the specific threat faced by the plaintiff, relying on evidence that the state election commission, which had the power to refer violations for prosecution, had already considered allegations that the plaintiff had violated the law at issue, which prohibited false statements about candidates during election campaigns, and had issued a probable cause finding against the plaintiff. *See Susan B. Anthony List*, 134 S. Ct. at 2338-39, 2345. The Court's analysis was thus consistent with D.C. Circuit precedent requiring some indication of a threat specific to the plaintiff. *See Urban Health Care Coal. v. Sebelius*, 853 F. Supp. 2d 101, 113 n.11 (D.D.C. 2012) (citing *Ord v. District of Columbia,* 587 F.3d 1136, 1140 (D.C. Cir. 2009); *Parker v. District of Columbia,* 478 F.3d 370,

375 (D.C. Cir. 2007)); *see also Seegars v. Gonzales,* 396 F.3d 1248, 1254 (D.C. Cir. 2005) ("[T]he idea of a special First Amendment rule for preenforcement review of statutes seems to have no explicit grounding in Supreme Court decisions.").[1]

Plaintiffs argue that their assertion of a "credible threat of prosecution" is bolstered here because they have also asserted a "threat of private litigation." Pl. Opp. at 16. However, they cite no authority for the notion that a statute's separate remedy for private civil litigants supports a preenforcement challenge to a criminal law.[2] Nor do they meaningfully distinguish the cases that have rejected the relevance of potential private civil liability to standing for a preenforcement suit against the government. *Balogh v. Lombardi*, 816 F.3d 536, 543 (8th Cir. 2016); *Temple v. Abercrombie*, 903 F. Supp. 2d 1024, 1034–35 (D. Haw. 2012). As in those cases, the civil actions that private parties might bring against Plaintiffs pursuant to 17 U.S.C. § 1203 have no bearing on Plaintiffs' standing to sue the government based on a threat of prosecution under 17 U.S.C. § 1204.

Plaintiffs also argue that they satisfy any required showing of a specific threat because the Librarian of Congress has denied exemptions that, they allege, would permit their desired

---

[1] Moreover, the two D.C. Circuit cases that Plaintiffs cite did not adopt the cursory inquiry that Plaintiffs advocate for a preenforcement challenge to a criminal statute. Indeed, *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 739 (D.C. Cir. 2016), involved a challenge to an agency rule, which the court noted was "unlike a statute" in that it was "typically reviewable without waiting for enforcement." Plaintiffs otherwise rely on *A.N.S.W.E.R. v. Dist. of Columbia*, 589 F.3d 433, 436 (D.C. Cir. 2009), but the court in that case emphasized that the plaintiff had been subject to a previous enforcement action, so its claim relied on "somewhat more than the 'conventional background expectation that the government will enforce the law.'"

[2] Plaintiffs' attempted reliance on *Susan B. Anthony* and *Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995), for this notion is misplaced. As explained above, the private complaints that might be submitted in *Driehaus* were heard by the state election commission, which itself had the power to refer matters for criminal prosecution. *Susan B. Anthony List*, 134 S. Ct. at 2338-39. And the "private" action that the court discussed in *Chamber of Commerce* was an action that would essentially compel the Federal Election Commission to enforce its rules against the plaintiff, pursuant to a statute that allowed challenges to "the FEC's decision *not* to enforce." *Chamber of Commerce*, 69 F.3d at 603. Moreover, like *U.S. Telecom Ass'n*, *Chamber of Commerce* also involved a challenge not to a statute but to an agency rule, which the court again noted was "typically reviewable without waiting for enforcement." *Id.* at 604.

circumvention activities; they suggest that these denials in the course of the triennial rulemaking are evidence that the government considers criminal prosecution of those activities to be a priority. Pl. Opp. at 16-17. This allegation does not appear in the Complaint and is in any case pure speculation. Plaintiffs cite no support for the notion that the exemption determinations made by the Librarian for classes of copyrighted works pursuant to § 1201(a)(1)(C) in any way establish criminal enforcement priorities for U.S. Attorney's Offices around the country.[3]

Plaintiffs' assertion is particularly misplaced because, of the three Plaintiffs, only Green actually proposed an exemption during the most recent triennial rulemaking, and the Librarian in large part adopted the exemption for security research that Green proposed. Indeed, it is unclear how the exemption that Green requested and the one that was ultimately granted differ in any meaningful way—much less in a way that would establish a credible threat of prosecution. The exemption for security research that was granted in the 2015 Final Rule applies to any security research on "[a] device or machine primarily designed for use by individual consumers (including voter machines)." 80 Fed. Reg. at 65962; 37 C.F.R. § 201.40(7)(i)(A). By its terms, this exemption is not restricted to consumer products that individual consumers might purchase but includes systems "designed for use" by consumers, such as voter machines—or toll collection systems. Plaintiffs have not plausibly explained why this exemption would not cover the security research that Green wishes to conduct, nor have they identified any aspect of the exemption sought by

_____

[3] While Plaintiffs attempt to analogize the situation here to *Parker*, that case is in no way similar. There, the plaintiff challenged a municipal provision barring registration of handguns, and the court held that the plaintiff had standing because he had sought and been denied a gun registration under the same provision. *See Parker*, 478 F.3d at 373, 375. Here, the Librarian's exemption determinations during the triennial rulemaking involve a process that is entirely separate from any criminal prosecution. Moreover, even if Plaintiffs' argument were tenable with respect to their challenges to § 1201(a)(1)(A), it could not establish standing to challenge § 1201(a)(2) because the triennial rulemaking does not establish exemptions from § 1201(a)(2). Plaintiffs therefore could not allege that they have requested and been denied exemptions that would allow them to engage in trafficking that is otherwise prohibited under § 1201(a)(2).

Green that was denied, let alone that an exemption was denied with respect to any specific research that he now claims is barred. Moreover, even if the current temporary exemptions do not cover Plaintiffs' desired circumvention activities, the Librarian might establish exemptions in a future triennial rulemaking that would cover them.[4] Thus, far from establishing that Plaintiffs face a credible threat of prosecution, the triennial rulemaking process makes prosecution less likely.

**B.      With the Exception of Green's Intended Publication of Decryption Code, Plaintiffs Fail to Show an Intent to Engage in Conduct Proscribed by § 1201(a) That Is Arguably Protected by the First Amendment**

Separately from their failure to establish a credible threat of prosecution, Plaintiffs, with one exception, also fail to allege that their intended violations of § 1201(a)(1)(A) or § 1201(a)(2) implicate the First Amendment. As discussed below in regard to Plaintiffs' overbreadth claim, the DMCA's prohibitions on circumventing access controls and trafficking in technology or devices that allow such circumvention do not, by their terms, regulate speech. In order to establish standing to raise First Amendment claims, Plaintiffs must therefore show not only that their conduct would violate the statute but also that this violation would implicate the First Amendment. While Plaintiffs urge the Court to defer this issue to an analysis on the merits, the Supreme Court in *Susan*

---

[4] The Register's 2015 Recommendation explained that proponents of a security research exemption did not provide sufficient evidentiary support regarding "how the prohibition on circumvention is adversely affecting security research into computer programs that control critical components of the nation's infrastructure, such as nuclear power plants, smartgrids, industrial control systems, air traffic control systems, train systems, and traffic lights," nor did the proponents "explain why research into critical systems . . . could not be conducted with the authorization of the relevant copyright owner." Register's Recommendation at 306; *see also* Register's Recommendation at 317 (recommending that a security research exemption "should encompass the types of software that were the focus of the record in this proceeding, namely computer programs contained in devices and machines primarily designed for use by individual consumers, motorized land vehicles, implanted medical devices and their corresponding home monitoring systems, and voting machines. The record does not support [an] open-ended exemption . . ., encompassing all computer programs on all systems and devices, including highly sensitive systems such as nuclear power plants and air traffic control systems."). The Registers Recommendation therefore suggests that additional security research exemptions may be available in the future if proponents of such exemptions submit sufficient evidentiary support.

*B. Anthony* addressed the question at the outset, consistent with the fact that such an inquiry is required under the preenforcement standing analysis that the Court applied. *See Susan B. Anthony List*, 134 S. Ct. at 2344 (concluding that the plaintiff's "intended future conduct concerns political speech," so it was "affected with a constitutional interest").

Plaintiffs' effort to show the First Amendment is implicated here largely relies on the notion that they and others wish to use copyrighted works, *after* their access controls are circumvented or devices that allow circumvention are disseminated, for various purposes; they claim that the § 1201(a) provisions burden these later uses. Pl. Opp. at 13, 18-24. However, as explained in Defendants' opening brief, the First Amendment confers no right to gain unauthorized access to information that is kept in areas *not* traditionally open to the public—like the White House, discussed in *Zemel v. Rusk*, 381 U.S. 1, 17 (1965); prisons, discussed in *Houchins v. KQED, Inc.,* 438 U.S. 1, 10-11 (1978); a stranger's locked residence; or on digital platforms that are protected by access controls—which are essentially digital locks.[5]

Plaintiffs now suggest, though the allegation does not appear in the Complaint, that they seek only to access information "on [their] *own property* and on works otherwise lawfully in their possession." Pl. Opp. at 21. Plaintiffs' Complaint contains no such alleged restriction, and it

---

[5] Plaintiffs attempt to distinguish *Zemel* and *Houchins*, but the cases they cite do not support a First Amendment right to "gather information," Pl. Opp. at 20, by breaking a law that does not by its terms regulate speech in order to gain access to such information. *Cf. Bd. Of Educ. v. Pico*, 457 U.S. 853, 871-72 (1982) (plurality) (school board may not remove books from school libraries based on disagreement with the books' content); *Sorrell v. IMS Health Inc.,* 564 U.S. 552, 583-64 (2011) (striking down a state law that, by its terms, prohibited the sale, disclosure, or use for marketing purposes of information identifying medical providers who prescribe drugs); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580-81 (1980) (reversing a judge's order closing the courtroom to the public during a criminal trial, recognizing that criminal trials were traditionally open to the public and that public access to criminal trials was thus itself a right protected under the First Amendment); *ACLU v. Alvarez*, 679 F.3d 583, 596, 608 (7th Cir. 2012) (enjoining state law that, on its face, prohibited audio recording—a "medium of expression"—of conversations without all parties' consent, against those wishing to record police officers in public performing their official duties).

is unclear how Green, for example, could possess "medical devices, toll collection systems, [and] industrial firewall [devices]." *See* Compl. ¶ 77. In any case, whatever possessory or property interest Plaintiffs might claim is beside the point. It is undoubtedly true that Plaintiffs are in physical possession of certain items, like a Blue-Ray disc or DVD, that contain access controls, but purchase of those items was made *subject to* those access controls. The fact that Plaintiffs may possess such items does not give them the unfettered right to access whatever those access controls are protecting.

The universe of copyrighted works protected by access controls is replete with examples that demonstrate that mere possession of copyrighted content confers no absolute right of access, much less one that is guaranteed by the First Amendment. Access controls can be used not only to control initial access but also to limit the duration of access or condition access on continuing payment of subscription fees, as well as to limit the kinds of devices that can be used to access copyrighted material. Thus, video streaming services, which allow subscribers to play content on their own devices, stream content through encryption and other protocols such as Microsoft Silverlight, Adobe Flash, or Apple's FairPlay scheme, in order to enforce the bounds of authorized access. *See* Register's Recommendation at 29. Similarly, digital lending libraries employ access controls to enforce the terms upon which users may borrow e-books. For example, the Internet Archive's Open Library initiative lends e-books through specified formats (*i.e.*, BookReader, PDF, and ePub), requires users to register and select a password, limits borrowing to five books at a time, and states "[e]ach loan will expire after two weeks and be removed from your device." *See* https://openlibrary.org/help/faq/borrow. Amazon's Kindle Lending Library is available only to Amazon Prime members, and limits receipt of borrowed books to Amazon devices. *See* https://www.amazon.com/gp/help/customer/display.html?nodeId=200757120.

Moreover, even when a consumer purchases a physical product containing a work protected by an access control (such as a Blu-Ray disc), that purchase is *subject to* the access control. For instance, access controls on Blu-Ray discs restrict the consumer's ability to view discs on anything other than a licensed Blu-Ray player. The application of § 1201(a)(1)(A) to circumvention of such access controls does not implicate the First Amendment simply because an individual who has subscribed to a streaming service, borrowed an e-book, or bought a Blu-Ray disc can claim to be in possession of copyrighted material. Plaintiffs' asserted desire to use copyrighted material after unauthorized access therefore does not identify a "course of conduct arguably affected with a constitutional interest," *Susan B. Anthony List*, 134 S. Ct. at 2342.

In order to establish standing to challenge either § 1201(a)(1)(A) or § 1201(a)(2), Plaintiffs must therefore show that their act, in circumventing access controls or trafficking in technology or devices that allow such circumvention, qualifies as speech or expressive conduct. Plaintiffs have made no attempt to do so with respect to § 1201(a)(1)(A). In regard to § 1201(a)(2), Plaintiffs' Complaint similarly fails to identify any speech at issue in their intended trafficking activities. Compl. ¶¶ 75, 90, 102. While Plaintiffs have submitted additional evidence with respect to Green,[6] they have not done so with respect to Huang or Alphamax. Rather, to the extent such assertions appear at all, they appear only in briefing. Pl. Opp. at 12, 14.[7] Factual assertions in a supporting memorandum or opposition brief "are not evidence" that a court can weigh when assessing

---

[6] Green has now submitted a declaration in support of his motion for preliminary injunction, asserting that the book he intends to publish would contain decryption code that would allow circumvention. *See* Declaration of Matthew Green, ECF 16-2, ¶ 19. Defendants do not dispute that courts have recognized that computer code qualifies as speech, albeit with functional elements.

[7] Plaintiffs' opposition brief argues that the Complaint "alleged that they intend to develop, publish, and make commercially available software code for NeTVCR and devices pre-programmed with that code," Pl. Opp. at 12, citing Compl. ¶¶ 67, 100. However, the Complaint contains no allegation that Huang and Alphamax intend to publish or make commercially available "code." Rather, it merely asserts that Huang and Alphamax wish to use a "master key," which a third party anonymously uploaded to the Internet, in order to make the NeTVCR. *Cf.* Compl. ¶ 95.

standing. *See Glass v. Lahood*, 786 F. Supp. 2d 189, 198 (D.D.C. 2011) ("legal memoranda are not evidence and cannot themselves create a factual dispute"); *see also Lempert v. Rice*, 956 F. Supp. 2d 17 (D.D.C. 2013) (recognizing "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss" (internal quotation omitted)). In sum, while Green has asserted his intent to disseminate decryption code in violation of § 1201(a)(2), that is the only speech interest arguably implicated by any of the three Plaintiffs' intended violations of either § 1201(a)(1)(A) or § 1201(a)(2). Ultimately, because no Plaintiff has shown that all requirements for standing to raise their First Amendment claims are satisfied, Counts I-V should be dismissed.

## II.     PLAINTIFFS FAIL TO STATE A COGNIZABLE OVERBREADTH CLAIM

### A.     Section 1201(a) Does Not By Its Terms Regulate Speech

As explained in Defendants' opening brief, even if the Court reaches the merits of Plaintiffs' claims, they should be dismissed for failure to state a claim upon which relief can be granted. Regarding Count I, Plaintiffs fail to set forth a viable facial challenge under the First Amendment's overbreadth doctrine—first and foremost, because the challenged statutory provisions do not regulate speech on their face. Def. Mem. at 21-23. By their terms, § 1201(a)(1)(A) prohibits "circumvent[ing] a technological measure that effectively controls access to a [copyrighted] work," and § 1201(a)(2) prohibits "traffic[king] in any technology, product, service, device, component, or part thereof." The text of these prohibitions plainly does not identify speech or expressive conduct as their target. The terms "circumvention" and "trafficking" do not automatically designate speech or expressive acts.

The court in *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111 (N.D. Cal. 2002), rejected an overbreadth challenge to the DMCA due to this "fatal flaw," recognizing that "[s]oftware as well as hardware falls within the scope of the Act, as does any other technology or device." *Id.* at

1133. The Supreme Court's decision in *Virginia v. Hicks*, 539 U.S. 113 (2003), also confirms that because the DMCA is not addressed specifically to speech or expressive conduct, it is not subject to invalidation under the "strong medicine" of the overbreadth doctrine. *Id.* at 124 ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech[.]").

Tellingly, Plaintiffs' opposition brief fails to address the statutory language of either § 1201(a)(1)(A) or § 1201(a)(2). Instead, Plaintiffs point the Court to "the activities in which Plaintiffs themselves wish to engage." Pl. Opp. at 18. However, Plaintiffs' emphasis on their own activities merely demonstrates that their real focus is on the purportedly unconstitutional application of these provisions to them, not the text of the provisions on their face. By ignoring the statutory language, Plaintiffs effectively concede that the statutory language on its face does not qualify as a regulation of speech that could be deemed unconstitutionally overbroad.

As a further indication of this concession, while Plaintiffs devote over six pages of their opposition brief to describing burdens that § 1201(a) allegedly imposes on *them*, they bury their response regarding their overbreadth claim in a later section, where they try to analogize § 1201(a) to the statute that the Supreme Court struck down as overbroad in *United States v. Stevens*, 559 U.S. 460 (2010). Pl. Opp. at 36. The animal cruelty statute at issue in *Stevens*, however, by its terms applied to "visual [and] auditory depiction[s]" of animal cruelty, *Stevens*, 559 U.S. at 468, and depictions—including photographs, films, and videos—inherently qualify as speech for First Amendment purposes. The point here, as it was in *Hicks*, is that the DMCA provisions at issue do *not* by their terms regulate "depictions," or anything else that inherently qualifies as speech or expression.[8]  In light of that fact, Plaintiffs' overbreadth claim fails.

---

[8]  Plaintiffs erroneously claim that Defendants seek to limit the overbreadth doctrine to "traditional forms of speech" such as picketing. Pl. Opp. at 36. The Supreme Court in *Hicks*

**B.     Plaintiffs Fail to Differentiate Their Overbreadth Claim From Their As-Applied Claims**

Moreover, Plaintiffs' opposition brief only confirms another fatal defect in their overbreadth challenge—the fact that their Complaint identifies no First Amendment concerns of others that are distinct from their own. As discussed in Defendants' opening brief, Supreme Court precedent bars overbreadth claims where there is no "significant difference" between the overbreadth claim and the plaintiff's as-applied challenge. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 802 (1984). That is the case here because Plaintiffs' overbreadth and as-applied claims are all limited to the idea that Plaintiffs (and others who are similarly situated) should be allowed to circumvent access controls and traffic in devices that allow such circumvention in furtherance of the fair use of copyrighted works.

Plaintiffs argue that they have identified "numerous specific categories of impermissibly burdened speech," but in fact, they simply list different possible uses of copyrighted material once that material has been accessed in violation of § 1201(a)(1)(A). *See* Pl. Opp. at 37 (citing Complaint). Plaintiffs assert that all of these uses qualify as "fair use," while their as-applied arguments similarly rely on the claim that § 1201(a) unconstitutionally burdens their own fair use of copyrighted materials. *See* Compl. ¶¶ 113-116, 133, 141, 148. Plaintiffs' citation to paragraphs of their Complaint that list different exemptions that were requested in past rulemakings based on alleged noninfringing uses, Pl. Opp. at 37, does not meaningfully differentiate their overbreadth and as-applied claims. Plaintiffs provide no indication that their theory of fair use would require a different First Amendment analysis depending on *which*

explained that a law cannot be deemed overbroad under the First Amendment if it is not "specifically addressed to speech or to conduct necessarily associated with speech," and the Court cited "picketing" and "demonstrating" as examples of conduct inherently associated with speech. *Hicks*, 539 U.S. at 124. Again, the acts of "circumvention" and "trafficking" that are prohibited in § 1201(a)(1)(A) and § 1201(a)(2) do not qualify as conduct necessarily associated with speech, and nowhere in Plaintiffs' opposition do they suggest otherwise.

13

noninfringing use is at issue. Because Plaintiffs' overbreadth claim is essentially the same as their as-applied claim, there is no "realistic danger" that an as-applied analysis would "significantly compromise First Amendment protections of individuals not before the Court." *Taxpayers for Vincent*, 466 U.S. at 802. To the contrary, a ruling on Plaintiffs' as-applied claims would fully address their stated overbreadth concerns. *Cf. id.* (where there was no "significant difference" between the plaintiff's as-applied and overbreadth claims, the court's as-applied ruling would validly apply to "parties not before the Court" as well). Under *Taxpayers for Vincent*, an overbreadth claim is therefore foreclosed.

### C.    Plaintiffs Cannot Establish Substantial Overbreadth

Plaintiffs propose a novel and wholly unsupported standard for evaluating overbreadth, essentially inviting the Court to ignore the vast universe of applications of § 1201(a) that, even they concede, would not implicate the First Amendment at all—such as the circumvention of access controls in order to obtain access to e-books on Amazon or movies on Netflix contrary to subscription terms, as described above. Such legitimate applications demonstrate the intended role of § 1201 to "make digital networks safe places to disseminate and exploit copyrighted materials" and "enable copyright owners to engage in self-help to protect their works from theft." S. Rep. No. 105-190, at 8 (1998); *Chapter 12 of Title 17, Hearing before the Subcommittee on Courts, Intellectual Property and the Internet*, 113th Cong., 2d Sess., at 2 (Sept. 17, 2014) (opening remarks of Mr. Goodlatte). Rather than acknowledging that these applications foreclose a conclusion that the § 1201(a) provisions are substantially overbroad, Plaintiffs ask the Court to facially invalidate the statute based solely on applications that, Plaintiffs allege, burden post-access "fair use" of copyrighted material.[9]  Pl. Opp. at 38.[10]  In so arguing, Plaintiffs in

---

[9] Plaintiffs' asserted First Amendment right to access copyrighted works without regard to access restrictions imposed by the copyright owner has been refuted above. Moreover, because Plaintiffs'

effect concede that they cannot establish "substantial" overbreadth "judged in relation to the statute's plainly legitimate sweep." *Taxpayers for Vincent*, 466 U.S. at 800. For all these reasons, Count I of Plaintiffs' Complaint should be dismissed for failure to state an overbreadth claim.

## III.   PLAINTIFFS FAIL TO STATE A COGNIZABLE PRIOR RESTRAINT CLAIM

Plaintiffs' opposition brief fails to provide any support for the notion that § 1201(a) qualifies as a "licensing scheme" that could be held facially invalid under the First Amendment as a prior restraint. Defendants previously pointed out that licensing schemes are analyzed under the prior restraint doctrine because they involve case-by-case determinations of whether to allow specific speech to occur, and therefore present a risk that a deciding official, vested with unbridled discretion regarding whether to grant a license in a particular instance, might suppress an applicant's speech based on content or viewpoint. Def. Mem. at 30-31; *see also City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 761 (1988) (concluding that an ordinance requiring each newspaper publisher to seek a license from the mayor in order to place newsracks on city sidewalks created a risk that the mayor would make licensing decisions based on the specific newspaper's content or viewpoint).

Here, in contrast, § 1201(a) does not establish a regime of individualized determinations made pursuant to a decisionmaker's unbridled discretion, whereby permit applications submitted by specific would-be speakers are granted or denied and particular content or viewpoints could be suppressed. Rather, § 1201(a)(1)(C) provides for an interactive, generalized triennial rulemaking

overbreadth claim relies on the same untenable theory as their as-applied claims—that the desire to engage in "fair use" of copyrighted works somehow justifies the circumvention of access controls protecting those works—the arguments set forth below with respect to Plaintiffs' as-applied claims provide additional bases for rejecting Plaintiffs' overbreadth claim.

[10]  Plaintiffs' argument is not advanced by their suggested analogy of § 1201(a) to a law that outlaws "everything already illegal plus publishing newspapers." Pl. Opp. at 38. Unlike § 1201(a), such a law would regulate speech by its own terms and could therefore potentially be subject to an overbreadth challenge. Moreover, Plaintiffs have identified no application of § 1201(a) that is in any way equivalent to an outright ban on publishing newspapers.

process whereby members of the public may propose temporary categorical exemptions to the anti-circumvention prohibition in § 1201(a)(1)(A), other commenters may weigh in on those proposals, the Register of Copyrights and the Department of Commerce provide their own recommendations, and the Librarian of Congress ultimately issues a Final Rule explaining her reasoning and setting forth exemptions that, for the next three-year period, will be generally applicable to all individuals wishing to circumvent access controls under the circumstances identified in the exemptions, regardless of the content or viewpoint of their speech. *See* 17 U.S.C. § 1201(a)(1)(C). This rulemaking process simply does not entail the potential for abuse that prompts heightened scrutiny in the context of case-by-case licensing schemes.

In their opposition brief, Plaintiffs cite no authority for the notion that a public rulemaking process, resulting in a generally applicable rule, could conceivably be subject to a prior restraint analysis. To the contrary, *every* case cited in either party's brief that analyzed a licensing scheme under the prior restraint doctrine did so in connection with a scheme that involved the granting or denial of licenses on an individual basis.[11]

Moreover, Plaintiffs fail to address the point made in Defendants' opening brief, that the triennial rulemaking described in § 1201(a)(1)(C) does not grant or deny permission for individuals to engage in their *own* speech; rather, it identifies exemptions that would allow people generally to circumvent access controls that protect *others'* copyrighted works. And, as

---

[11] *See* Def. Mem. at 31; *see also Freedman v. Maryland*, 380 U.S. 51, 52 (1965) (state censorship statute required each film to be submitted to censorship board before public exhibition for individual approval); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 224-27 (1990) (city ordinance required each sexually oriented business to obtain individual approval through inspection and license); *Bernstein v. U.S. Dep't of State*, 974 F. Supp. 1288, 1295-96 (N.D. Cal. 1997) (regulation required those wishing to export encryption software to obtain export license for specific software); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 149 (1969) (city ordinance required a permit before conducting a parade or demonstration); *City of Lakewood*, 486 U.S. at 759 (city ordinance required newspapers to obtain individual permits in order to place their newsracks on city property).

discussed above, the overarching prohibition in § 1201(a)(1)(A) on circumvention of access controls does not by its terms regulate speech at all. This scheme is therefore quite different from any law that has ever been analyzed as a "prior restraint" on speech, as shown by Plaintiffs' failure to identify any analogous precedent.

Plaintiffs' argument that the triennial rulemaking process poses a risk of "favor[ing] some lawful speech over others," Pl. Opp. at 26, appears to rely on references in the 2015 Final Rule to specific categories of noninfringing uses, such as the use of short portions of motion pictures for purposes such as criticism or comment in documentary films, or for educational purposes by university faculty, 80 Fed. Reg. at 65961-62; or the use of compilations of data generated by implanted medical devices in order to access data generated by one's own device or monitoring system, *id.* at 65963-64. However, such references in the rulemaking merely reflect the fact that commenters proposing exemptions identified those categories of uses of copyrighted works as "noninfringing"—i.e., as consistent with copyright law—in their submissions. *E.g., id.* The process allows commenters to propose temporary exemptions from the anti-circumvention provision, based in part on how likely it is, as a general matter, that the provision would otherwise "adversely affect[]" the "ability to make noninfringing uses . . . of a particular class of copyrighted works." 17 U.S.C. § 1201(a)(1)(C). The exemption determination, as set forth in the statute, is not focused on the speech of the particular individual who proposed the exemption; rather, the Librarian must determine whether the type of proposed use is in fact noninfringing under copyright law, and the factors set forth in § 1201(a)(1)(C) have to do with the general market for copyrighted works and the availability of those works for noninfringing uses. *See id.* (requiring the Librarian to consider whether copyrighted works are already available for noninfringing uses and the impact that circumvention of access controls would have on the

market for or value of copyrighted works).

Consideration of such factors does not open the door to censorship of a particular speaker's content or viewpoint.[12]  To the contrary, to the extent that prior rulemaking processes have any bearing on Plaintiffs' facial prior restraint challenge, they merely demonstrate that the rulemaking is far from an exercise of "unbridled discretion" on the part of a government decisionmaker. *Cf. City of Lakewood*, 486 U.S. at 757. Instead, the rulemaking process involves extensive public comment and analysis, and the Librarian is required by statute to make a determination "upon the recommendation of the Register of Copyrights," who in turn is required to "consult with the Assistant Secretary for Communications and Information of the Department of Commerce." 17 U.S.C. § 1201(a)(1)(C).

Finally, if an exemption is granted, anyone can engage in the circumvention of access controls allowed by the exemption during the applicable three-year period, regardless of their viewpoint and, to the extent a noninfringing use involves engaging in some form of speech after gaining access to a copyrighted work by circumventing access controls, regardless of the specific topic or subject matter of such speech. The general nature of this process precludes any risk of censorship based on the content or viewpoint of an individual's speech and further suggests that the triennial rulemaking process cannot properly be analyzed under the prior restraint doctrine. Again, Plaintiffs cite no instance where this type of public, interactive, generalized decisionmaking process has been subjected to analysis as a prior restraint, much less held invalid under the prior restraint doctrine. Count II of Plaintiffs' Complaint should therefore be dismissed

---

[12]  Plaintiffs assert that the 2015 Final Rule demonstrated a "prefer[ence]" for documentary film over narrative film, for film over video games, and for research on consumer devices over research on infrastructure. Pl. Opp. at 26 n.11. The decision to grant exemptions or not, however, was not based on the content of the films, the video games, or the research, but rather upon whether commenters submitted sufficient evidence supporting their proposed exemptions as well as the Librarian's assessment of the factors set forth in § 1201(a)(1)(C). *See* 80 Fed. Reg. at 65949.

for failure to state a claim under the prior restraint doctrine.

## IV.   PLAINTIFFS FAIL TO STATE COGNIZABLE AS-APPLIED FIRST AMENDMENT CLAIMS

Plaintiffs' as-applied First Amendment claims rely on the same fallacies evident in their facial challenges, and nothing in Plaintiffs' opposition brief provides grounds to deviate from other courts' holdings that the prohibitions in § 1201, even when applied to decryption code that courts have held qualifies as speech, are subject to intermediate scrutiny and easily satisfy such scrutiny.[13]   Indeed, all courts to have considered the question have unanimously recognized that, to the extent § 1201(a) is applied to decryption code, that application is—at most—subject to intermediate scrutiny under the framework of *United States v. O'Brien*, 391 U.S. 367 (1968), because it is the functional, non-speech aspect of the code—its ability to circumvent access controls on copyrighted works—that is the target of regulation. *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 454 (2d Cir. 2001) ("The DMCA . . . applie[s] to [CSS description code] solely because of its capacity to instruct a computer to decrypt CSS. That functional capability is not speech within the meaning of the First Amendment."); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.,* 307 F. Supp. 2d 1085, 1100 (N.D. Cal. 2004) ("it is only that functional element of the computer code that is barred [by the DMCA]; the DMCA does not suppress the speech contained within the computer code because of its content, but only because of the way in which that code, when executed, operates."); *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1128 (N.D. Cal. 2002) (recognizing that "[o]n its face, the [DMCA] does not target speech," and that the DMCA's anti-trafficking provisions apply to computer code "because of the function performed by the code").

Plaintiffs cite the Supreme Court's recent decision in *Reed v. Town of Gilbert*, 135 S. Ct.

---

[13]  As explained above, only Green has alleged that his intended violation of § 1201(a) would involve decryption code, and only with respect to the anti-trafficking provision in § 1201(a)(2).

2218 (2015), in support of the notion that, as applied to computer code, § 1201(a) is subject to

strict scrutiny. However, *Reed* does not change the analysis of *Corley*, *321 Studios*, and *Elcom*.

In *Reed*, the Supreme Court concluded that a town's sign code was "content based on its face"

because, by its terms, it regulated signs differently "because of the topic discussed or the idea or

message expressed"—for example, whether a sign conveyed a message of "directing the public

to church" or was "designed to influence the outcome of an election." *Reed*, 135 S. Ct. at 2227.

Here, however, neither § 1201(a)(1)(A) nor § 1201(a)(2) define their scope by reference to

specific topics or messages conveyed by speech. Indeed, as discussed above, the provisions do

not regulate speech on their face.

Plaintiffs attempt to analogize the anti-trafficking provision in § 1201(a)(2) to the sign

ordinance in *Reed* on the theory that § 1201(a)(2) "bans speech about the particular subject

matter . . . of circumventing [access controls]." Pl. Opp. at 30. But the anti-trafficking provision

does not apply to speech that simply discusses the *subject matter* of circumvention. Nor does it

apply to certain computer code "because of the topic discussed or the idea or message expressed"

by the computer code. *See Reed*, 135 S. Ct. at 2227. Rather, as the courts in *Corley*, *321 Studios*,

and *Elcom* recognized, the anti-trafficking provision applies to decryption code because the code

*actually circumvents* access controls on copyrighted works. *See* 17 U.S.C. § 1201(a)(3) (defining

circumvention to mean "to descramble a scrambled work, to decrypt an encrypted work, or

otherwise to avoid, bypass, remove, deactivate, or impair" an access control).

Plaintiffs also argue that the anti-circumvention provision in § 1201(a)(1)(A) is content

based because, they assert, certain permanent exemptions elsewhere in the statute "draw[]

various content-based distinctions" by exempting "certain kinds of 'reverse engineering' and

'encryption research' but not others." Pl. Opp. at 30 (citing § 1201(f), (g)). However, the phrases

"reverse engineering" and "encryption research" do not refer to specific topics or messages

conveyed by speech; rather, like the term circumvention, these phrases identify non-speech

*actions* that achieve a result but express no particular message in doing so. *E.g.*, 17 U.S.C. §

1201(g)(1)(A) ("encryption research" means "*activities* necessary to identify and analyze flaws

and vulnerabilities of encryption technologies applied to copyrighted works," for the purpose of

"advanc[ing] the state of knowledge in the field of encryption technology" or "assist[ing] in the

development of encryption products" (emphasis added)).

Similarly, Plaintiffs point to the list in § 1201(a)(1)(C) of factors to be considered when

determining whether to grant temporary exemptions in the triennial rulemaking process as

drawing content-based distinctions, but again, these factors do not refer to topics of or messages

conveyed by speech. Rather, some of the factors are intended to address activities that can fall

under the fair use of copyrighted material, as defined in 17 U.S.C. § 107. For example, one factor

refers to "nonprofit archival, preservation, and educational purposes," 17 U.S.C.

§ 1201(a)(1)(C)(ii), and another refers to the use of copyrighted works for "criticism, comment,

news reporting, teaching, scholarship, or research," *id.* § 1201(a)(1)(C)(iii). These references

invoke the same considerations set forth in the fair use provision, 17 U.S.C. § 107, and do not

identify topics of or messages conveyed by speech.[14]  As the preamble of § 107 indicates, any

copyrighted work, regardless of its topic or viewpoint, can be used for educational purposes, for

criticism, for news reporting, teaching, scholarship, or research. Plaintiffs' argument on this

---

[14]  While the Court in *Reed* suggested that content-based regulations of speech may in some cases
define regulated speech by "its function or purpose" as a "subtle" means of distinguishing based on
content, *Reed*, 135 S. Ct. at 2227, that is not the case here. In *Reed*, for example, the Court
recognized that the sign code's reference to messages that had the purpose of "influenc[ing] the
outcome of an election" was a way to identify speech that conveyed a particular message (vote for
a certain candidate) or had a particular topic (election campaigns). *See id.* Here, on the other hand,
references to the purposes for which copyrighted works may be used without infringing copyright
law are not veiled attempts to regulate speech based on its topic or message. *See* 17 U.S.C. § 107.

point therefore does not establish that § 1201(a)(1) is content based.[15]  To the extent the First Amendment is implicated at all, then, the Court should analyze the challenged provisions under intermediate scrutiny.

The provisions of § 1201(a) satisfy intermediate scrutiny as applied to Plaintiffs. Plaintiffs do not deny that § 1201(a) serves important government interests—namely, making digital networks "safe places to disseminate and exploit copyrighted materials" and providing "reasonable assurance that [copyrighted works] will be protected against massive piracy." S. Rep. No. 105-190, at 8. Plaintiffs' argument that the anti-circumvention and anti-trafficking provisions are not narrowly tailored relies on the notion that the provisions burden the ability to make fair use of copyrighted works. However, as explained in Defendants' opening brief, that contention lacks merit and has previously been rejected by other courts. *See* Def. Mem. at 26-29; *Corley*, 273 F.3d at 459; *Elcom, Ltd.,* 203 F. Supp. 2d at 1135.

The Supreme Court's decisions in *Eldred* and *Golan* do not lead to a different conclusion. Neither case established a free-standing First Amendment right to "fair use" independent of the provision Congress added to the Copyright Act in 17 U.S.C. § 107; rather, the Supreme Court in both cases emphasized that it would not second-guess the balance that Congress struck. *Golan*, 132 S. Ct. at 890; *Eldred*, 537 U.S. at 221. Section 1201(a) similarly represents the balance that Congress struck between protecting the rights of copyright owners and maintaining the

---

[15]  Plaintiffs also appear to argue that § 1201(a) is subject to strict scrutiny in light of the Supreme Court's decisions in *Eldred v. Ashcroft*, 537 U.S. 186 (2003), and *Golan v. Holder*, 132 S. Ct. 873 (2012). Pl. Opp. at 31. However, the Court in those decisions did not apply any level of First Amendment scrutiny to the challenged statutory provisions; rather, it deferred to Congress regarding how best to balance the concerns of the Copyright Clause and the First Amendment. *Eldred*, 537 U.S. at 221 (where "Congress has not altered the traditional contours of copyright protection, further First Amendment scrutiny is unnecessary"); *Golan*, 132 S. Ct. at 890 (concluding that there was "no call for . . . heightened review" under the First Amendment). Plaintiffs cite no instance where a court has considered those decisions when determining whether a statute was content based or content neutral.

availability of copyrighted works for noninfringing uses. *See Elcom, Ltd.,* 203 F. Supp. 2d at

1125 ("[W]hile it is not unlawful to circumvent for the purpose of engaging in fair use, it is

unlawful to traffic in tools that allow fair use circumvention. That is part of the sacrifice

Congress was willing to make in order to protect against unlawful piracy and promote the

development of electronic commerce and the availability of copyrighted material on the

Internet."); *see also* 17 U.S.C. § 1201(c) (expressly providing that fair use may continue to be

asserted as a defense to copyright infringement).

Nothing in Plaintiffs' arguments suggests that this balance should be disrupted

specifically for them. To the contrary, "the incidental restrictions" (if any) on Plaintiffs' speech

that are imposed by § 1201(a) "are no greater than essential to the furtherance of" the

government's interests. *321 Studios*, 307 F. Supp. 2d at 1101 (rejecting as-applied challenge to

§ 1201(a)(2) and (b)(1)); *see also Corley*, 273 F.3d at 454 (same); *Elcom Ltd.*, 203 F. Supp. 2d at

1130 (rejecting as-applied challenge to § 1201(b)(1)).

For example, Green argues that the anti-circumvention and anti-trafficking provisions

prohibit him from publishing examples of decryption code that could be used to circumvent

access controls on a wide range of devices, including "industrial-grade encryption devices" used

to protect financial transactions or medical records, toll collection systems, industrial firewalls,

and wireless communication systems. Pl. Opp. at 35; Compl. ¶ 77. Of course, when the actual

circumvention technology is disseminated, there is no effective way to control how that

technology will be used. To hold § 1201(a) unconstitutional as applied to Green would in effect

nullify the anti-trafficking prohibition and threaten the effectiveness of access controls on all

kinds of consumer and industrial devices.

Similarly, Huang and Alphamax seek to distribute a device that they concede would

allow widespread circumvention of access controls protecting HDMI content. Compl. ¶¶ 99-100. It is clear that, if the NeTVCR device allows consumers to engage in the allegedly noninfringing uses identified in the Complaint, it would just as easily facilitate infringing uses in violation of copyright law, as well as circumvention of access controls in order to gain unauthorized access in violation of § 1201(a)(1)(A). The Court should therefore conclude that the anti-circumvention and anti-trafficking provisions of § 1201(a) are narrowly tailored as applied to Plaintiffs and dismiss Plaintiffs' as-applied claims in Counts III, IV, and V.

## V.   THE COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS' APA CLAIMS

Defendants have explained in their opening brief that Plaintiffs' attempt to challenge the 2015 Final Rule issued by the Librarian of Congress pursuant to § 1201(a)(1)(C) is barred by sovereign immunity because the Library of Congress is not an "agency" as that term is defined in the APA. Indeed, the D.C. Circuit has repeatedly recognized that the statutory definition of "agency" in 5 U.S.C. § 551(a) and 5 U.S.C. § 701(b) expressly excludes Congress, and thus also excludes the Library as a component of Congress. *E.g., Ethnic Employees v. Boorstin,* 751 F.2d 1405, 1416 n. 15 (D.C. Cir. 1985); *Clark v. Library of Cong.,* 750 F.2d 89, 102 (D.C. Cir. 1984); *Terveer v. Billington*, 34 F. Supp. 3d 100, 123 n.10 (D.D.C. 2014); *see also Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (discussing repeated holdings that the APA's exclusion of "courts" and "Congress" from the definition of agency serves to exclude the entire judicial and legislative branches); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 100 (D.D.C. 1999) (similarly holding that actions of Architect of the Capitol were not subject to APA review).

Plaintiffs' effort to overcome this well-settled precedent fails. Plaintiffs urge the Court to ignore D.C. Circuit's definitive holdings on this question because, they argue, the claims in *Boorstin*, *Clark*, and *Terveer* concerned the Library as an employer. However, Plaintiffs ignore

24

the fact that these decisions did not analyze, let alone depend on, the Library's "character," *see* Pl. Opp. at 43, in a particular case; rather, they were based squarely on the plain statutory language in the APA. The term "Congress" in 5 U.S.C. § 701(b) is not ambiguous, nor is there any question that the Library of Congress is part of Congress. The statutory text simply does not allow for the Library to occupy shifting categories depending on a court's evaluation of a plaintiff's claim. Rather, when Congress intends to subject actions by a Library component to APA review, it does so expressly by enacting statutory language to that effect. *E.g.,* 17 U.S.C. § 701(e). The DMCA contains no such language.

Plaintiffs' further argument that the Librarian's issuance of a Final Rule following notice and comment raises separation of powers concerns, Pl. Opp. at 44, citing *Intercollegiate Broad. Sys. Inc. v. Copyright Royalty Bd.,* 684 F.3d 1332 (D.C. Cir. 2012), misses the mark. Plaintiffs fail to explain how this argument could affect the proper interpretation of the APA. The simple fact is that, when enacting the APA, Congress made the decision, as a matter of statutory definition, that the APA's scope would not extend to the Library. This statutory fact is entirely separate from the question of whether, for constitutional purposes, the Library operates as an executive agency for purposes of the Appointments Clause, which was the question addressed in *Intercollegiate Broad. Sys. Inc. See id.* at 1342. Plaintiffs fail to overcome the consensus of courts on this issue, and their APA claims in Counts VI and VII should therefore be dismissed.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening brief, the Court should dismiss this action with prejudice.

October 28, 2016                                 Respectfully submitted,

                                                 BENJAMIN C. MIZER
                                                 Principal Deputy Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney
ERIC R. WOMACK
Assistant Director, Federal Programs Branch

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC   20530
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*