# EXHIBIT A

Dated: June 19, 2017.

**M.L. Austin,**
*Rear Admiral, U.S. Coast Guard, Commander, Fifth Coast Guard District.*

[FR Doc. 2017–13857 Filed 6–29–17; 8:45 am]

**BILLING CODE 9110–04–P**

---

## LIBRARY OF CONGRESS

### Copyright Office

**37 CFR Part 201**

**[Docket No. 2017–10]**

### Exemptions To Permit Circumvention of Access Controls on Copyrighted Works

**AGENCY:** U.S. Copyright Office, Library of Congress.

**ACTION:** Notice of inquiry and request for petitions.

**SUMMARY:** The United States Copyright Office is initiating the seventh triennial rulemaking proceeding under the Digital Millennium Copyright Act ("DMCA"), concerning possible temporary exemptions to the DMCA's prohibition against circumvention of technological measures that control access to copyrighted works. In this proceeding, the Copyright Office is establishing a new, streamlined procedure for the renewal of exemptions that were granted during the sixth triennial rulemaking. If renewed, those current exemptions would remain in force for an additional three-year period (October 2018—October 2021). Members of the public seeking the renewal of current exemptions should submit petitions as described below; parties opposing such renewal will then have the opportunity to file comments in response. The Office is also accepting petitions for *new* exemptions to engage in activities not currently permitted by existing exemptions, which may include proposals that expand upon a current exemption. Those petitions, and any renewal petitions that are meaningfully opposed, will be considered pursuant to a more comprehensive rulemaking process similar to that used for the sixth rulemaking (*i.e.,* three rounds of written comment, followed by public hearings).

**DATES:** Written petitions for renewal of current exemptions must be received no later than 11:59 p.m. Eastern Time on July 31, 2017. Written comments in response to any petitions for renewal must be received no later than 11:59 p.m. Eastern Time on September 13, 2017. Written petitions for new exemptions must be received no later than 11:59 p.m. Eastern Time on September 13, 2017.

**ADDRESSES:** Written petitions for renewal of current exemptions must be completed using the form provided on the Office's Web site at *https://www.copyright.gov/1201/2018/renewal-petition.pdf.* Written petitions proposing new exemptions must be completed using the form provided on the Office's Web site at *https://www.copyright.gov/1201/2018/new-petition.pdf.* The Copyright Office is using the regulations.gov system for the submission and posting of public petitions and comments in this proceeding. All petitions and comments are therefore to be submitted electronically through *regulations.gov.* Specific instructions for submitting petitions and comments are available on the Copyright Office Web site at *https://www.copyright.gov/1201/2018.* If electronic submission is not feasible, please contact the Office using the contact information below for special instructions.

**FOR FURTHER INFORMATION CONTACT:** Regan A. Smith, Deputy General Counsel, by email at *resm@loc.gov,* Anna Chauvet, Assistant General Counsel, by email at *achau@loc.gov,* or Jason E. Sloan, Attorney-Advisor, by email at *jslo@loc.gov.* Each can be contacted by telephone by calling (202) 707–8350.

**SUPPLEMENTARY INFORMATION:**

### I. The Digital Millennium Copyright Act and Section 1201

The Digital Millennium Copyright Act ("DMCA")[1] has played a pivotal role in the development of the modern digital economy. Enacted by Congress in 1998 to implement the United States' obligations under two international treaties,[2] the DMCA was intended to foster the growth and development of a thriving, innovative, and flexible digital marketplace by making digital networks safe places to disseminate and use copyrighted materials.[3] It did this by, among other things, ensuring adequate legal protections for copyrighted content to "support new ways of disseminating copyrighted materials to users, and to safeguard the availability of legitimate uses of those materials by individuals."[4]

These protections, codified in section 1201 of title 17, United States Code, as envisioned by Congress, seek to balance the interests of copyright owners and users, including the personal interests of consumers, in the digital environment.[5] Section 1201 does this by protecting the use of technological measures (also called technological protection measures or TPMs) used by copyright owners to prevent unauthorized access to or use of their works.[6] Section 1201 contains three separate protections for TPMs. First, it prohibits circumvention of technological measures employed by or on behalf of copyright owners to protect access to their works (also known as access controls). Access controls include, for example, a password requirement limiting access to a Web site to paying customers, or authentication codes in video game consoles to prevent the playing of pirated copies. Second, the statute prohibits trafficking in devices or services primarily designed to circumvent access controls. Finally, it prohibits trafficking in devices or services primarily designed to circumvent TPMs used to protect the copyright rights of the owner of a work (also known as copy controls). Copy controls protect against unauthorized uses of a copyrighted work once access has been lawfully obtained. They include, for example, technology preventing the copying of an e-book after it has been downloaded to a user's device. Because title 17 already forbids copyright infringement, there is no corresponding ban on the act of circumventing a copy control.[7] These prohibitions supplement the preexisting rights of copyright owners under the Copyright Act of 1976 by establishing separate and distinct causes of action independent of any infringement of copyright.[8]

At the same time, section 1201 contains a number of discrete, statutory exemptions to these prohibitions, to avoid curtailing legitimate activities such as security testing, law enforcement activities, or the protection of personally identifying information.[9] In addition, to accommodate changing marketplace realities and ensure that access to copyrighted works for lawful

---

[1] Public Law 105–304, 112 Stat. 2860 (1998).
[2] WIPO Copyright Treaty, Dec. 20, 1996, 36 I.L.M. 65 (1997); WIPO Performances and Phonograms Treaty, Dec. 20, 1996, 36 I.L.M. 76 (1997).
[3] *See* Staff of H. Comm. on the Judiciary, 105th Cong., Section-by-Section Analysis of H.R. 2281 as Passed by the United States House of Representatives on August 4th, 1998, at 2, 6 (Comm. Print 1998) ("House Manager's Report"); H.R. Rep. No. 105–551, pt. 2, at 21, 23 (1998); H.R. Rep. No. 105–551, pt. 1, at 10 (1998); S. Rep. No. 105–190, at 1–2, 8–9 (1998).
[4] House Manager's Report at 6.
[5] *See* H.R. Rep. No. 105–551, pt. 2, at 26.
[6] 17 U.S.C. 1201(a)–(b).
[7] S. Rep. No. 105–190, at 12.
[8] U.S. Copyright Office, Section 1201 of Title 17, at i, iii, 43–45 (June 2017), *https://www.copyright.gov/policy/1201/section-1201-full-report.pdf* ("Section 1201 Study").
[9] 17 U.S.C. 1201(d)–(j).

purposes is not unjustifiably diminished,[10] the statute provides for a rulemaking proceeding whereby additional, temporary exemptions to the prohibition on circumventing access controls may be adopted by the Librarian of Congress, upon the recommendation of the Register of Copyrights in consultation with the Assistant Secretary for Communications and Information of the Department of Commerce.[11] In contrast to the permanent exemptions set out by statute, exemptions adopted pursuant to the rulemaking must be reconsidered every three years.[12] By statute, the triennial rulemaking process only addresses section 1201(a)(1)(A)'s prohibition on circumvention; the statute does not grant the authority to adopt exemptions to the anti-trafficking provisions of sections 1201(a)(2) or 1201(b).[13]

In order for a temporary exemption from the prohibition on circumvention to be granted through the triennial rulemaking, it must be established that ''persons who are users of a copyrighted work are, or are likely to be in the succeeding 3-year period, adversely affected by the prohibition . . . in their ability to make noninfringing uses under [title 17] of a particular class of copyrighted works.''[14] In evaluating the evidence, the statutory factors listed in section 1201(a)(1)(C) are weighed: ''(i) the availability for use of copyrighted works; (ii) the availability for use of works for nonprofit archival, preservation, and educational purposes; (iii) the impact that the prohibition on the circumvention of technological measures applied to copyrighted works has on criticism, comment, news reporting, teaching, scholarship, or research; (iv) the effect of circumvention of technological measures on the market for or value of copyrighted works; and (v) such other factors as the Librarian considers appropriate.''[15] To assess whether the implementation of access controls impairs the ability of individuals to make noninfringing uses of copyrighted works, the Office solicits proposals from the public and develops a comprehensive administrative record using information submitted by interested parties, and the Register makes a recommendation to the Librarian concerning whether exemptions are warranted based on that record.

## II. Overview of the Rulemaking Process

The rulemaking process for the seventh triennial proceeding will be generally similar to the process introduced in the sixth proceeding. The primary change from the last rulemaking is the addition of a new streamlined procedure through which members of the public may petition for current temporary exemptions that were granted during the sixth triennial rulemaking to remain in force for an additional three-year period (October 2018–October 2021).

With this notice of inquiry, the Copyright Office is initiating the petition phase of the rulemaking, calling for the public to submit petitions both to renew current exemptions, as well as any comments in support of or opposition to such petitions, and to propose new exemptions. This two-track petition process is described below. After the close of the petition phase, the Office will publish a notice of proposed rulemaking (''NPRM'') to initiate the next phase of the rulemaking process, as described below.

Video tutorials explaining section 1201 in general and the rulemaking process can be found on the Office's 1201 rulemaking Web page at *https://www.copyright.gov/1201*.

## III. Process for Seeking Renewal of Current Exemptions

### A. Background

The Copyright Office recently published a comprehensive study of section 1201, including the process for adopting temporary exemptions. As part of the study, the Office solicited comments from the public and held roundtable discussions on whether the Office should adjust the rulemaking procedure to streamline the process for recommending readoption of previously adopted exemptions to the Librarian.[16] Previously, the Office had ''require[d] that a factual record to support an exemption be developed *de novo* each rulemaking,'' meaning rulemaking participants could not merely rely on previously submitted evidence from prior proceedings, but had to provide new evidence every three years.[17]

During the course of the study, a broad consensus of stakeholders requested that the Copyright Office change this approach and take steps within its regulatory authority to streamline the process for recommending the renewal of previously adopted exemptions to the Librarian.[18] In the study, the Office concluded as a threshold matter that ''the statute itself requires that exemptions cannot be renewed automatically, presumptively, or otherwise, without a fresh determination concerning the next three-year period. . . . [A] determination must be made specifically for each triennial period.''[19] The Office further determined, however, that ''the statutory language appears to be broad enough to permit determinations to be based upon evidence drawn from prior proceedings, but only upon a conclusion that this evidence remains reliable to support granting an exemption in the current proceeding.''[20] The Office elaborated:

> Adopting an approach of *de novo* assessment of evidence—compared to *de novo* submission—would allow future rulemakings to consider the appropriate weight to afford to previously submitted evidence when evaluating renewal requests. The relatively quick three-year turnover of the exemptions was put in place by Congress to allow the rulemaking to be fully considered and fairly decided on the basis of real marketplace developments, and any streamlined process for recommending renewed exemptions must retain flexibility to accommodate changes in the marketplace that affect the required rulemaking analysis. But at the same time, where there is little evidence of marketplace or technological changes, the Office believes it is statutorily permissible to establish a framework that expedites the recommendation to renew perennially sought exemptions.[21]

While the study concluded that the Office has some regulatory flexibility as to how it could implement a streamlined process for evaluating exemption renewals, it announced that the Office intended to implement such a process for this seventh triennial rulemaking proceeding. As promised in the study, below the Office provides further details regarding the streamlined process.[22]

### B. Petitioning To Renew a Current Exemption

Those seeking readoption of a current exemption, granted during the sixth rulemaking, may petition for renewal by submitting the Copyright Office's required fillable form, available on the Office's Web site at *https://www.copyright.gov/1201/2018/renewal-petition.pdf*. This form is for renewal petitions only. The Office has a separate

---

[10] H.R. Rep. No. 105–551, pt. 2, at 35–36.
[11] 17 U.S.C. 1201(a)(1)(C); *see also id.* 1201(a)(1)(B)–(D).
[12] *Id.* 1201(a)(1)(C).
[13] *Id.* 1201(a)(1)(C), (a)(1)(E).
[14] *Id.* 1201(a)(1)(C).
[15] *Id.*

[16] 80 FR 81369, 81373 (Dec. 29, 2015); 81 FR 17206, 17206 (Mar. 28, 2016).
[17] Section 1201 Study at 130; *see id.* at 26–27.

[18] *Id.* at 127–28.
[19] *Id.* at 142.
[20] *Id.* at 143.
[21] *Id.* (internal quotation marks omitted).
[22] *Id.*

form, discussed below, for petitions for new exemptions.

*Scope of Renewal.* Renewal may only be sought for current exemptions as they are currently formulated, without modification. This means that if a proponent seeks to engage in any activities not currently permitted by an existing exemption, a petition for a *new* exemption must be submitted. Where a petitioner seeks to engage in activities that expand upon a current exemption, the Office recommends that the petitioner submit both a petition to renew the current exemption, and, separately, a petition for a new exemption. In such cases, the petition for a new exemption need only discuss those issues relevant to the proposed expansion of the current exemption. If the Office recommends readoption of the current exemption, then only those discrete aspects relevant to the expansion will be subject to the more comprehensive rulemaking procedure described below.

*Automatic Reconsideration.* If the Office declines to recommend renewal of a current exemption (as discussed below), the petition to renew will automatically be treated as a petition for a new exemption, and will be considered pursuant to the more comprehensive rulemaking proceeding. If a proponent has petitioned both for renewal and an expansion, and the Office declines to recommend renewal, the entire exemption (*i.e.,* the current exemption along with the proposed expansion) will automatically be considered under the more comprehensive public proceeding.

*Petition Form and Contents.* The petition to renew is a short form designed to let proponents identify themselves and the relevant exemption, and to make certain sworn statements to the Copyright Office concerning the existence of a continuing need and justification for the exemption. Use of the Office's prepared form is mandatory, and petitioners must follow the instructions contained in this notice and on the petition form. A separate petition form must be submitted for each current exemption for which renewal is sought. This is required for reasons of administrability and so that the basis for renewal set forth in each petition is clear as to which exemption it applies. While a single petition may not encompass more than one current exemption, the same party may submit multiple petitions.

The petition form has four components:

1. *Petitioner identity and contact information.* The form asks for each petitioner (*i.e.,* the individual or entity seeking renewal) to provide its name and the name of its representative, if any, along with contact information. Any member of the public capable of making the sworn declaration discussed below may submit a petition for renewal, regardless of prior involvement with past rulemakings. Petitioners and/or their representatives should be reachable through the provided contact information for the duration of the rulemaking proceeding. Multiple petitioning parties may jointly file a single petition.

2. *Identification of the current exemption that is the subject of the petition.* The form lists all current exemptions granted during the last rulemaking (codified at 37 CFR 201.40), with a check box next to each. The exemption for which renewal is sought is to be identified by marking the appropriate checkbox.

3. *Explanation of need for renewal.* The petitioner must provide a brief explanation summarizing the basis for claiming a continuing need and justification for the exemption. The required showing is meant to be minimal. The Office anticipates that petitioners will provide a paragraph or two detailing this information, but there is no page limit. While it is permissible to attach supporting documentary evidence as exhibits to the petition, it is not necessary. The Office's petition form includes an example of what it regards as a sufficient explanation.

4. *Declaration and signature.* One of the petitioners named in the petition must sign a declaration attesting to the continued need for the exemption and the truth of the explanation provided in support. Where the petitioner is an entity, the declaration must be signed by an individual at the organization having appropriate personal knowledge to make the declaration. The declaration may be signed electronically.

For the attestation to be trustworthy and reliable, it is important that the petitioner make it based on his or her own personal knowledge and experience. This requirement should not be burdensome, as a broad range of individuals have a sufficient level of knowledge and experience. For example, a blind individual having difficulty finding and purchasing e-books with appropriate assistive technologies would have such personal knowledge and experience to make the declaration with regard to the assistive technology exemption; so would a relevant employee or volunteer at an organization like the American Foundation for the Blind, which advocates for the blind, visually impaired, and print disabled, is familiar with the needs of the community, and is well-versed specifically in the e-book accessibility issue. It would be improper, however, for a general member of the public to petition for renewal if he or she knows nothing more about matters concerning e-book accessibility other than what he or she might have read in a brief newspaper article, or simply opposes the use of digital rights management tools as a matter of general principle.

The declaration also requires affirmation that, to the best of the petitioner's knowledge, there has not been any material change in the facts, law, or other circumstances set forth in the prior rulemaking record (available at *https://www.copyright.gov/1201/2015*) that originally demonstrated the need for the selected exemption, such that renewal of the exemption would not be justified. By ''material change,'' the Office means such significant change in the underlying conditions that originally justified the exemption when it was first granted, such that the appropriateness of continuing the exemption for another three years based on that original justification is called into question. This attestation tells the Office that the prior rulemaking record from when the current exemption was originally granted is still ripe and applicable in considering whether or not the same exemption is appropriate for the subsequent triennial period. Only after finding the old record to still be germane can the Office rely upon it in deciding, pursuant to 17 U.S.C. 1201(a)(1)(C), whether to recommend renewal.

*C. Comments in Response to a Petition To Renew an Exemption*

Any interested party may respond to a petition to renew a current exemption by submitting comments. While the primary purpose of these comments is to allow for opposition to renewing the exemption, comments in support of renewal are also permitted. Although no form is being provided for such comments, the first page of any responsive comments must clearly identify which exemption's readoption is being supported or opposed. While participants may comment on more than one exemption, a single submission may not address more than one exemption. For example, a party that wishes to oppose the renewal of both the wireless device unlocking exemption and the jailbreaking exemption must file separate comments for each.[23] The

---

[23] Commenters may, however, respond to multiple *petitions* to renew the same exemption in a single submission. For instance, if the Office

Office acknowledges that this format may require some parties to repeat certain general information (*e.g.,* about their organization) across multiple submissions, but the Office believes that the administrative benefits of creating self-contained, separate records for each exemption will be worth the modest amount of added effort involved.

Opposition to a renewal petition must be meaningful, such that, from the evidence provided, it would be reasonable for the Register to conclude that the prior rulemaking record and any further information provided in the renewal petition are insufficient to support recommending renewal of an exemption. For example, a change in case law might affect whether a particular use is noninfringing, new technological developments might affect the availability for use of copyrighted works, or new business models might affect the market for or value of copyrighted works. Such evidence could cause the Office to conclude that the prior evidentiary record is too stale to rely upon for an assessment affecting the subsequent three-year period. The Office may also consider whether opposition is meaningful only as to part of a current exemption.

Unsupported conclusory opinion and speculation will not be enough for the Register to refuse to recommend renewing an exemption she would have otherwise recommended in the absence of any opposition, or subject consideration of this exemption to the more comprehensive rulemaking procedure.

## IV. Process for Seeking New Exemptions

Those seeking to engage in activities not currently permitted by an existing exemption, including activities that expand upon a current exemption, may propose a new exemption by filing a petition using the Copyright Office's required fillable form, available on the Office's Web site at *https://www.copyright.gov/1201/2018/new-petition.pdf.* Use of the Office's prepared form is mandatory, and petitioners must follow the instructions contained in this notice and on the petition form. As in the sixth rulemaking, a separate petition must be filed for *each* proposed exemption. The Office anticipates that it will, once again, receive a significant number of submissions, and requiring separate submissions for each proposed exemption will help both participants and the Office keep better track of the record for each proposed exemption. Although a single petition may not encompass more than one proposed exemption, the same party may submit multiple petitions.

The petition form has two components:

*1. Petitioner identity and contact information.* The form asks for each petitioner (*i.e.,* the individual or entity proposing the exemption) to provide its name and the name of its representative, if any, along with contact information. Petitioners and/or their representatives should be reachable through the provided contact information for the duration of the rulemaking proceeding. Multiple petitioning parties may jointly file a single petition.

*2. Description of the proposed exemption.* At this stage, the Office is only asking petitioners to briefly explain the nature of the proposed new or expanded exemption. The information that would be most helpful to the Office includes the following, to the extent relevant: (1) The types of copyrighted works that need to be accessed; (2) the physical media or devices on which the works are stored or the services through which the works are accessed; (3) the purposes for which the works need to be accessed; (4) the types of users who want access; and (5) the barriers that currently exist or which are likely to exist in the near future preventing these users from obtaining access to the relevant copyrighted works.

To be clear, petitioners need not propose precise regulatory language or fully define the contours of an exemption class in the petition. A short, plain statement describing the nature of the activities the petitioners wish to engage in will be sufficient. Although there is no page limit, the Office anticipates that petitioners will be able to adequately describe in plain terms the relevant information in a few sentences. The Office's petition form includes examples of what it regards as a sufficient description of a requested exemption.

Nor does the Office intend for petitioners to deliver the complete legal and evidentiary basis for their proposals in the petition, and specifically requests that petitioners not do so. Rather, the sole purpose of the petition is to provide the Office with basic information about the uses of copyrighted works that are adversely affected by the prohibition on circumvention. The Office will then use that information to itself formulate categories of potential exemptions, and group similar proposals into those categories, for purposes of the next, more substantive, phase of the rulemaking beginning with the publication of the NPRM.

Indeed, as during the last rulemaking, even the NPRM will not ''put forward precise regulatory language for the proposed classes, because any specific language for exemptions that the Register ultimately recommends to the Librarian will necessarily depend on the full record developed during this rulemaking.'' [24] Rather, the proposed categories of exemptions described in the NPRM will ''represent only a starting point for further consideration in the rulemaking proceeding, and will be subject to further refinement based on the record.'' [25] Thus, proponents will have the opportunity to further refine or expound upon their initial petitions during later phases of the rulemaking.

## V. Notice of Proposed Rulemaking

Following receipt of all petitions, as well as comments on petitions for renewal, the Office will evaluate the material received and will issue an NPRM addressing all of the potential exemptions to be considered in the seventh rulemaking.

The NPRM will set forth which exemptions the Register will recommend for readoption, along with proposed regulatory language. The NPRM will also identify any exemptions the Register has declined to recommend for renewal under the streamlined process, after considering any opposition received. Those exemptions will instead be subject to the more comprehensive rulemaking procedure in order to build out the administrative record. The Register will not at the NPRM stage make a final determination to reject recommendation of any exemption that meets the threshold requirements of section 1201(a).[26]

For current exemptions for which renewal was sought but which were not recommended for readoption through the streamlined process and all new exemptions, including proposals to expand current exemptions, the NPRM will group them appropriately, describe them, and initiate at least three rounds of public comment. As with the sixth rulemaking, the Office plans to

---

receives six petitions in favor of readopting the current wireless device unlocking exemption, a commenter can file a single comment that addresses points made in the six petitions. That comment, however, may not address petitions to readopt the jailbreaking exemption.

[24] 79 FR 73856, 73859 (Dec. 12, 2014).

[25] *Id.* (internal quotation marks and citation omitted).

[26] *See* 79 FR 55687, 55692 (Sept. 17, 2014) (explaining that part of the purpose of providing the information in the petition phase is so the Office can ''confirm that the threshold requirements of section 1201(a) can be met''); *see also* 79 FR at 73859 (noting that three petitions sought an exemption which could not be granted as a matter of law and declining to put them forward for comment).

consolidate or group related and/or overlapping proposed exemptions where possible to simplify the rulemaking process and encourage joint participation among parties with common interests (though such collaboration is not required). As in previous rulemakings, the exemptions as described in the NPRM will represent only a starting point for further consideration in the rulemaking proceeding, and will be subject to further refinement based on the record. The NPRM will provide guidance regarding specific areas of legal and factual interest for the Office with respect to each proposed exemption, and suggest particular types of evidence that participants may wish to submit for the record. It will also contain additional instructions and requirements for submitting comments and will detail the later phases of the rulemaking proceeding—*i.e.,* public hearings, post-hearing questions, recommendation, and final rule—which will be similar to those of the sixth rulemaking.

As noted in the Office's study, however, the Office intends to issue the NPRM at an earlier point than during the sixth rulemaking proceeding, to give all parties sufficient time to participate in the process. Publishing the NPRM earlier should better accommodate the academic calendar and allow for greater law student participation during the more substantive comment and public hearing phases of the proceeding—something many commenters suggested during the study.[27] In addition, the Office will look for opportunities to preview regulatory language or ask additional post-hearing questions, where necessary to ensure sufficient stakeholder participation.[28]

---

[27] *See, e.g.,* Section 1201 Study Initial Reply Comments of International Documentary Association et al. at 3–4 (Apr. 1, 2016); Section 1201 Study Hearing Tr. at 132:10–133:17 (May 25, 2016) (McClure, American Foundation for the Blind); Section 1201 Study Hearing Tr. at 133:16–135:02 (May 19, 2016) (Decherney, University of Pennsylvania); Section 1201 Study Hearing Tr. at 108:13–109:05 (May 25, 2016) (Metalitz, Association of American Publishers, Motion Picture Association of America, Inc., & Recording Industry Association of America); Section 1201 Study Additional Comments of American Association of Law Libraries at 3 (Oct. 27, 2016). Given the statutory deadline, it was necessary to also move up the petition phase to align the written comment and hearing phases with the academic calendar. The Office determined this to be the most optimal choice, particularly given that the petitions are meant to be simple and short filings, as discussed above. Nevertheless, after discussing the schedule with a number of academic clinics, we selected a longer period for the filing of initial petitions to better accommodate academic schedules.

[28] Section 1201 Study at 150–51.

Dated: June 27, 2017.

**Sarang V. Damle,**
*General Counsel and Associate Register of Copyrights.*

[FR Doc. 2017–13815 Filed 6–29–17; 8:45 am]
**BILLING CODE 1410–30–P**

---

## POSTAL REGULATORY COMMISSION

### 39 CFR Part 3050

**[Docket No. RM2017–7; Order No. 3982]**

### Periodic Reporting

**AGENCY:** Postal Regulatory Commission.
**ACTION:** Notice of proposed rulemaking.

**SUMMARY:** The Commission is noticing a recent filing requesting that the Commission initiate an informal rulemaking proceeding to consider changes to an analytical method for use in periodic reporting (Proposal Three). This document informs the public of the filing, invites public comment, and takes other administrative steps.

**DATES:** *Comments are due:* August 16, 2017.

**ADDRESSES:** Submit comments electronically via the Commission's Filing Online system at *http://www.prc.gov.* Those who cannot submit comments electronically should contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section by telephone for advice on filing alternatives.

**FOR FURTHER INFORMATION CONTACT:** David A. Trissell, General Counsel, at 202–789–6820.

**SUPPLEMENTARY INFORMATION:**

### Table of Contents

I. Introduction
II. Proposal Three
III. Notice and Comment
IV. Ordering Paragraphs

### I. Introduction

On June 22, 2017, the Postal Service filed a petition pursuant to 39 CFR 3050.11 requesting the Commission to initiate an informal rulemaking proceeding to consider proposed changes to an analytical method related to periodic reports.[1] The Petition identifies the proposed analytical method changes filed in this docket as Proposal Three.

### II. Proposal Three

*Background.* The Postal Service currently uses statistical estimates in the

---

[1] Petition of the United States Postal Service Requesting Initiation of a Proceeding to Consider a Proposed Change in Analytical Principles (Proposal Three), June 22, 2017 (Petition).

Revenue, Pieces, and Weight (RPW) Report for mailpieces reported in the Retail Systems Software Business Partners (RSS BP) application and bearing contract postal unit metered postage. Petition at 1. The RSS BP is the electronic point-of-sale management system that the Postal Service provides to contract postal units. *Id.* at 4. The statistical estimates used in the RSS BP management system are produced by the Postal Service's Origin-Destination Information System—Revenue, Pieces, and Weight (ODIS–RPW) probability-based sampling system. *Id.* at 4, 5.

*Proposal.* Proposal Three would change the methodology for measuring the national totals of revenue, pieces, and weight in the RPW Report for RSS BP mailpieces by replacing ODIS–RPW statistical sampling estimates with corresponding census data reported in the Postal Service's Retail Data Mart reporting system. *Id.* at 6. In support of Proposal Three, the Postal Service cites other proposals approved by the Commission which have replaced statistical estimates with census data. *See id.* at 3.

*Rationale and impact.* The Postal Service states that the proposed change in methodology ''provides a complete census source of transactional-level data of all RSS BP mailpieces and extra services.'' *Id.* at 6. The Postal Service asserts that the use of census data would lead one to expect equal or improved data quality because census data, unlike ODIS–RPW statistical sampling data, does not have sampling error. *Id.* at 5. To illustrate the potential impact of switching from ODIS–RPW statistical estimates to census data, the Postal Service provides a comparison of results for the FY 2016 time period. *Id.* at 6–9.

### III. Notice and Comment

The Commission establishes Docket No. RM2017–7 for consideration of matters raised by the Petition. More information on the Petition may be accessed via the Commission's Web site at *http://www.prc.gov.* Interested persons may submit comments on the Petition and Proposal Three no later than August 16, 2017. Pursuant to 39 U.S.C. 505, Lyudmila Y. Bzhilyanskaya is designated as officer of the Commission (Public Representative) to represent the interests of the general public in this proceeding.

### IV. Ordering Paragraphs

*It is ordered:*
1. The Commission establishes Docket No. RM2017–7 for consideration of the matters raised by the Petition of the United States Postal Service Requesting