J. Matthew Williams (DC Bar No. 501860)
MITCHELL SILBERBERG & KNUPP LLP
1818 N Street NW, 7th Floor
Washington, DC 20036
(202) 355-7900
mxw@msk.com

*Attorneys for Amici Curiae*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW GREEN, ANDREW HUANG, AND ALPHAMAX, LLC,<br><br>            Plaintiffs,<br>     v.<br><br>U.S. DEPARTMENT OF JUSTICE, WILLIAM BARR, LIBRARY OF CONGRESS, CARLA HAYDEN, U.S. COPYRIGHT OFFICE, AND KARYN A. TEMPLE,<br><br>            Defendants. | Civil Case No. 16-cv-01492-EGS<br><br>**SECOND MOTION AND MEMORANDUM IN SUPPORT OF ASSOCIATION OF AMERICAN PUBLISHERS, INC., ENTERTAINMENT SOFTWARE ASSOCIATION, MOTION PICTURE ASSOCIATION, INC., AND RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. FOR LEAVE TO FILE BRIEF *AMICI CURIAE* IN SUPPORT OF THE GOVERNMENT** |

*Amici Curiae* the Association of American Publishers, Inc. ("AAP"), the Entertainment Software Association ("ESA"), the Motion Picture Association, Inc. ("MPA"), and the Recording Industry Association of America, Inc. ("RIAA"), through counsel, hereby move for leave pursuant to Local Civil Rule 7(o), to file a brief in support of Defendants and in opposition to the relief requested by Plaintiffs in their pending motion for a preliminary injunction.[1] A

---

[1] On October 9, 2019, *Amici* previously submitted a motion for leave to file a brief. However, the Court has not yet ruled on that motion. Given that in that motion, *Amici* proposed a deadline of October 31, 2019, for the filing of their brief, and that they do not want to delay the briefing schedule for the Plaintiffs' motion for a preliminary injunction, *Amici* have submitted this second motion, and attached a copy of their proposed brief *amici curiae* hereto.

1

proposed order is attached hereto.  Counsel for both Plaintiffs and Defendants have consented to *Amici* filing a brief.

I. **INTRODUCTION**

AAP, ESA, MPA and RIAA are trade associations whose members create and distribute some of the highest-value copyrighted works in the marketplace.  Section 1201 is critically important to *Amici's* members: they use technological protection measures, including access controls and copy controls, to protect their content and to design innovative business models that benefit consumers by enabling lower-cost access, subscription access, on-demand viewing, and cloud-based storage and sharing.

The legal protections provided by 17 U.S.C. § 1201 underpin the digital distribution models of all of the creative industries and prevent devastating piracy and unauthorized access to copyrighted works.  *Amici* have been actively involved in the development of Section 1201 for many years.  They advocated for the United States to accede to the World Intellectual Property Organization ("WIPO") Treaties and to enact the Digital Millennium Copyright Act ("DMCA").  *Amici* have also participated in every Section 1201(a)(1)(C) triennial rulemaking process since passage of the DMCA, brought lawsuits under section 1201, filed *amici curiae* briefs in such lawsuits, and participated in the U.S. Copyright Office processes resulting in the transmission to Congress of the 2017 "Report of the Register of Copyrights on Section 12 of Title 17."  Thus, *Amici* bring a unique and well-informed perspective to this case, including with respect to the dramatic harm that could result if Plaintiffs' pending motion were granted.

///

///

## II.     GROUNDS FOR LEAVE TO FILE[2]

*Amici* have an important interest in the outcome of the case because their members own some of the most valuable copyrighted works in the world.  These works include blockbuster motion pictures and videogames with hundred-million dollar budgets; television series for broadcast and cable networks, satellite, and online streaming services; best-selling novels; creative compilations such as textbooks and scientific journals; and some of the most popular sound recordings and music videos in the world.  *Amici's* members' businesses directly depend upon the types of technological protection measures that Section 1201 protects and that Plaintiffs seek to hack and to enable others to hack.

Indeed, Plaintiffs Alphamax and Dr. Huang seek to sell to consumers exactly the type of hacking device that Congress intended to prohibit by enacting the DMCA.  *See* H.R. Rep. No 105-551, pt. 2, at 29 (1998) (Section 1201(a)(2) "is aimed fundamentally at outlawing so-called 'black boxes' that are expressly intended to facilitate circumvention of technological protection measures for purposes of gaining access to a work[.]").  If the Court were to grant Plaintiffs' motion, *Amici*'s members would undoubtedly suffer significant harm.  NeTVCR users could strip encryption from audiovisual works – such as pay-per-view movies delivered via cable set-top boxes – for which they paid to access only through subscriptions or for limited periods of time.  These users could also create libraries of content that would supplant purchases of Blu-ray discs and digital downloads.  Even worse, NeTVCR users could distribute the decrypted, unauthorized, permanent copies over the Internet, resulting in precisely the type of widespread harm that Section 1201 exists to impede.  *See* U.S. COPYRIGHT OFFICE, REPORT OF THE REGISTER

---

[2] Local Civil Rule 7(o) states: "A motion for leave to file an *amicus* brief shall concisely state the nature of the movant's interest; identify the party or parties supported, if any; and set forth the reasons why an *amicus* brief is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case."

OF COPYRIGHTS ON SECTION 12 OF TITLE 17, at i (2017) ("In enacting section 1201, Congress aimed to create a legal foundation to launch the global digital online marketplace for copyrighted works. Congress recognized that the same features that make digital technology a valuable delivery mechanism—the ability to quickly create and distribute near-perfect copies of works on a vast scale—also carry the potential to enable piracy to a degree unimaginable in the analog context.").

Similar harm could also result from the injunction requested by Plaintiff Professor Green. Despite his ostensible focus on academic endeavors and software security research, his requested relief could impact numerous devices and systems through which unauthorized access to copyrighted content could be acquired.

*Amici* also offer a unique perspective because, unlike Defendants, *Amici* directly participate in the marketplace for copyrighted works and use technological protection measures to deliver content to consumers, businesses, and other organizations. *Amici*'s members must constantly contend with the threat of digital piracy. *Amici* can thus help to explain the critical importance of Section 1201's prohibitions.

Finally, *Amici*'s proposed brief will specifically address matters relevant to the disposition of the case. In its ruling on Defendants' motion to dismiss, the Court instructed the Government to address in more detail why, *inter alia*, "'the anti-trafficking restriction in [section] 1201(a)(2) would be less effective if individuals and companies such as Plaintiffs were allowed to disseminate decryption technologies, even if they intended the dissemination to serve a limited purpose," and why allowing Plaintiffs to disseminate such technology "would undermine the effectiveness of access controls, thus interfering with the online market for copyrighted works by deterring copyright owners from making works available online at all."

*Green v. DOJ*, 392, F. Supp. 3d 68, 95 (D.D.C. 2019).  As the copyright owners who would be directly affected by Plaintiffs' conduct, *Amici* are well suited to address these questions.  *See* S. REP. NO. 105-190, at 8 (1998) ("[C]opyright owners will hesitate to make their works readily available on the Internet without reasonable assurance that they will be protected against massive piracy."); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 947 (9th Cir. 2010) ("Congress was particularly concerned with encouraging copyright owners to make their works available in digital formats such as 'on-demand' or 'pay-per-view,' which allow consumers effectively to 'borrow' a copy of the work for a limited time or a limited number of uses.").

### III.     CONCLUSION

For the reasons stated above, *Amici* respectfully request that the Court grant their request for leave to file a brief *amici curiae* and accept into the record the proposed brief attached hereto. The filing of the brief will not unduly delay the Court's ability to rule on any pending matter.  A proposed order is submitted herewith.

DATED: October 31, 2019

                                           Respectfully submitted:

                                           **/s/**_____
                                           J. Matthew Williams (DC Bar No. 501860)
                                           MITCHELL SILBERBERG & KNUPP LLP
                                           1818 N Street NW, 7th Floor
                                           Washington, DC 20036
                                           (202) 355-7900
                                           mxw@msk.com

                                           *Attorneys for Amici Curiae*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above document was served on counsel of record for the parties electronically through the court's Case Management/Electronic Case Filing system.

DATED: October 31, 2019

                              Respectfully submitted:

                              **/s/**_____
                              J. Matthew Williams (DC Bar No. 501860)
                              MITCHELL SILBERBERG & KNUPP LLP
                              1818 N Street NW, 7th Floor
                              Washington, DC 20036
                              (202) 355-7900
                              mxw@msk.com

                              *Attorneys for Amici Curiae*