# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:16–cv–01492–EGS</u>

GREEN et al v. U.S. DEPARTMENT OF JUSTICE, et al

Assigned to: Judge Emmet G. Sullivan

Cause: 28:1343 Violation of Civil Rights

Date Filed: 07/21/2016

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: U.S. Government Defendant

**Plaintiff**

**MATTHEW D. GREEN**

represented by **Brian M. Willen**
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas
40th Floor
New York, NY 10019
(650) 849–3340
Fax: (650) 493–6811
Email: <u>bwillen@wsgr.com</u>
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ANDREW BUNNIE HUANG**

represented by **Brian M. Willen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALPHAMAX**

represented by **Brian M. Willen**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. DEPARTMENT OF JUSTICE**

represented by **Kathryn L. Wyer**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 616–8475
Fax: (202) 616–8470
Email: <u>kathryn.wyer@usdoj.gov</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**LIBRARY OF CONGRESS**

represented by

|  |  | **Kathryn L. Wyer**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

**Defendant**

| **U.S. COPYRIGHT OFFICE** | represented by | **Kathryn L. Wyer**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

**Defendant**

| **CARLA HAYDEN** | represented by | **Kathryn L. Wyer**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

**Defendant**

| **MARIA A. PALLANTE** | represented by | **Kathryn L. Wyer**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

**Defendant**

| **LORETTA E. LYNCH** | represented by | **Kathryn L. Wyer**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

**Movant**

| **DIGITAL CONTENT PROTECTION, LLC** | represented by | **Michael Parks**<br>THOMPSON COBURN LLP<br>55 East Monroe<br>37th Floor<br>Chicago, IL 60603<br>312–346–7500<br>Email: mparks@thompsoncoburn.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**James Mitchell Burger**<br>THOMPSON COBURN, LLP<br>1909 K Street, NW<br>Suite 600<br>Washington, DC 20006–1167<br>202–585–6909<br>Email: jburger@thompsoncoburn.com<br>*TERMINATED: 03/08/2021* |
|---|---|---|

**Movant**

| | | |
|---|---|---|
| **INTEL CORPORATION** | represented by | **Michael Parks**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **James Mitchell Burger**<br>(See above for address)<br>*TERMINATED: 03/08/2021* |

<u>**Movant**</u>

| | | |
|---|---|---|
| **ADVANCED ACCESS CONTENT**<br>**SYSTEM LICENSING**<br>**ADMINISTRATOR LLC** | represented by | **David Jonathan Taylor**<br>RIGHT SIZE LAW, PLLC<br>621 G Street, SE<br>Washington, DC 20003<br>(202) 546–1536<br>Email: <u>david.taylor@rightsizelaw.com</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **James Mitchell Burger**<br>(See above for address)<br>*TERMINATED: 03/08/2021* |

<u>**Movant**</u>

| | | |
|---|---|---|
| **DVD COPY CONTROL**<br>**ASSOCIATION** | represented by | **David Jonathan Taylor**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **James Mitchell Burger**<br>(See above for address)<br>*TERMINATED: 03/08/2021* |

<u>**Amicus**</u>

| | | |
|---|---|---|
| **ASSOCIATION OF AMERICAN**<br>**PUBLISHERS, INC.** | represented by | **John Matthew DeWeese Williams**<br>MITCHELL SILBERBERG & KNUPP<br>LLP<br>1818 N Street NW<br>7th Floor<br>Washington, DC 20036<br>(202) 355–7904<br>Fax: (202) 355–7894<br>Email: <u>mxw@msk.com</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Robert Henry Rotstein**<br>MITCHELL SILBERBERG & KNUPP<br>LLP<br>2049 Century Park East, 18th Floor<br>Los Angeles, CA 90067–3120 |

310–312–2000
Fax: 310–312–3100
Email: rxr@msk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ENTERTAINMENT SOFTWARE**
**ASSOCIATION**

represented by **John Matthew DeWeese Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Henry Rotstein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MOTION PICTURE ASSOCIATION,**
**INC.**

represented by **John Matthew DeWeese Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Henry Rotstein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**RECORDING INDUSTRY**
**ASSOCIATION OF AMERICA, INC.**

represented by **John Matthew DeWeese Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Henry Rotstein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**DIGITAL CONTENT PROTECTION,**
**LLP**

represented by **Michael Parks**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mitchell Burger**
(See above for address)
*TERMINATED: 03/08/2021*

**Amicus**

| | | | |
|---|---|---|---|
| **INTEL CORPORATION** | | represented by | **James Mitchell Burger**<br>(See above for address)<br>*TERMINATED: 03/08/2021* |

**Amicus**

| | | | |
|---|---|---|---|
| **ADVANCED ACCESS CONTENT SYSTEM LICENSING ADMINISTRATOR, LLC** | | represented by | **James Mitchell Burger**<br>(See above for address)<br>*TERMINATED: 03/08/2021* |

**Amicus**

| | | | |
|---|---|---|---|
| **DVD COPY CONTROL ASSOCIATION** | | represented by | **James Mitchell Burger**<br>(See above for address)<br>*TERMINATED: 03/08/2021* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/21/2016 | 1 | | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0090–4611625) filed by MATTHEW D. GREEN, ALPHAMAX, ANDREW BUNNIE HUANG. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons)(Willen, Brian) (Entered: 07/21/2016) |
| 07/21/2016 | 2 | | Corporate Disclosure Statement by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG. (Willen, Brian) (Entered: 07/21/2016) |
| 07/21/2016 | | | Case Assigned to Judge Emmet G. Sullivan. (sth) (Entered: 07/21/2016) |
| 07/21/2016 | | | SUMMONS Not Issued as to CARLA HAYDEN, LIBRARY OF CONGRESS, LORETTA LYNCH, MARIA A. PALLANTE, U.S. COPYRIGHT OFFICE, U.S. DEPARTMENT OF JUSTICE (sth) (Entered: 07/21/2016) |
| 07/21/2016 | 3 | | REQUEST FOR SUMMONS TO ISSUE re 1 Complaint, filed by ALPHAMAX, ANDREW BUNNIE HUANG, MATTHEW D. GREEN. Related document: 1 Complaint, filed by ALPHAMAX, ANDREW BUNNIE HUANG, MATTHEW D. GREEN. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons)(Willen, Brian) (Entered: 07/21/2016) |
| 07/22/2016 | 4 | | SUMMONS Issued Electronically as to CARLA HAYDEN, LIBRARY OF CONGRESS, LORETTA LYNCH, MARIA A. PALLANTE, U.S. COPYRIGHT OFFICE, U.S. DEPARTMENT OF JUSTICE, U.S. Attorney and U.S. Attorney General (jf) (Entered: 07/22/2016) |
| 08/24/2016 | 5 | | ENTERED IN ERROR.....RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 7/22/2016. (Willen, Brian) Modified on 8/24/2016 (jf). (Entered: 08/24/2016) |
| 08/24/2016 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. CARLA HAYDEN served on 7/28/2016 (Willen, Brian) (Entered: 08/24/2016) |
| 08/24/2016 | 7 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. LORETTA E. LYNCH served on 8/2/2016 (Willen, Brian) (Entered: |

| | | |
|---|---|---|
| | | 08/24/2016) |
| 08/24/2016 | 8 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. MARIA A. PALLANTE served on 7/28/2016 (Willen, Brian) (Entered: 08/24/2016) |
| 08/24/2016 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. COPYRIGHT OFFICE served on 7/28/2016 (Willen, Brian) (Entered: 08/24/2016) |
| 08/24/2016 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 5 Summons Returned Executed as to U.S. Attorney General was entered in error and counsel was instructed to refile said pleading using the correct event. (jf) (Entered: 08/24/2016) |
| 08/25/2016 | 10 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 7/22/2016. Answer due for ALL FEDERAL DEFENDANTS by 9/20/2016. (Willen, Brian) (Entered: 08/25/2016) |
| 08/31/2016 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF JUSTICE served on 8/25/2016 (Willen, Brian) (Main Document 11 replaced on 9/1/2016) (znmw). (Entered: 08/31/2016) |
| 09/12/2016 | 12 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. LIBRARY OF CONGRESS served on 8/29/2016 (Willen, Brian) (Main Document 12 replaced on 9/13/2016) (jf). (Entered: 09/12/2016) |
| 09/15/2016 | 13 | NOTICE of Appearance by Kathryn L. Wyer on behalf of All Defendants (Wyer, Kathryn) (Entered: 09/15/2016) |
| 09/15/2016 | 14 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, *or Otherwise Respond* by CARLA HAYDEN, LIBRARY OF CONGRESS, LORETTA E. LYNCH, MARIA A. PALLANTE, U.S. COPYRIGHT OFFICE, U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Wyer, Kathryn) (Entered: 09/15/2016) |
| 09/16/2016 | | MINUTE ORDER granting 14 defendants' consent motion for extension of time. Defendants are directed to answer or otherwise respond to the complaint by no later than September 29, 2016. Signed by Judge Emmet G. Sullivan on 09/16/2016. (lcegs3) (Entered: 09/16/2016) |
| 09/19/2016 | | Set/Reset Deadlines: Answer due by 9/29/2016. (mac) (Entered: 09/19/2016) |
| 09/29/2016 | 15 | MOTION to Dismiss by CARLA HAYDEN, LIBRARY OF CONGRESS, LORETTA E. LYNCH, MARIA A. PALLANTE, U.S. COPYRIGHT OFFICE, U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Wyer, Kathryn) (Entered: 09/29/2016) |
| 09/29/2016 | 16 | MOTION for Preliminary Injunction *on behalf of Plaintiff Matthew Green Pursuant to Fed. R. Civ. P. 65(a)* by MATTHEW D. GREEN (Attachments: # 1 Memorandum in Support, # 2 Declaration of Matthew Green, # 3 Declaration of Brian M. Willen, # 4 Exhibit 1 to Willen Declaration, # 5 Exhibit 2 to Willen Declaration, # 6 Exhibit 3 to Willen Declaration, # 7 Exhibit 4 to Willen Declaration, # 8 Exhibit 5 to Willen Declaration, # 9 Exhibit 6 to Willen Declaration, # 10 Exhibit 7 to Willen Declaration, # 11 Exhibit 8 to Willen |

| Date | No. | Description |
|---|---|---|
| | | Declaration, # 12 Exhibit 9 to Willen Declaration, # 13 Text of Proposed Order)(Willen, Brian) (Entered: 09/29/2016) |
| 09/30/2016 | | MINUTE ORDER. In light of 15 defendants' motion to dismiss and 16 plaintiff's motion for preliminary injunction, the Court directs the parties to comply with the following briefing schedule: plaintiff shall file his opposition to defendants' motion to dismiss by no later than 12:00 p.m. on October 7, 2016 and defendants shall file their reply by no later than 12:00 p.m. on October 11, 2016. The motion for preliminary injunction is hereby stayed pending resolution of the motion to dismiss. Signed by Judge Emmet G. Sullivan on 09/30/2016. (lcegs3) (Entered: 09/30/2016) |
| 09/30/2016 | | Set/Reset Deadlines: Plaintiff Opposition To Defendants Motion To Dismiss due on 10/07/16 by 12:00PM. Defendants Reply due on 10/11/2016 by 12:00PM. (mac) (Entered: 09/30/2016) |
| 10/02/2016 | 17 | Joint MOTION for Extension of Time to File Response/Reply as to 15 MOTION to Dismiss by CARLA HAYDEN, LIBRARY OF CONGRESS, LORETTA E. LYNCH, MARIA A. PALLANTE, U.S. COPYRIGHT OFFICE, U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Wyer, Kathryn) (Entered: 10/02/2016) |
| 10/03/2016 | | MINUTE ORDER granting 17 joint motion for extension of time. Plaintiffs' opposition to defendants' motion to dismiss shall be filed by no later than October 18, 2016. Defendants' reply shall be filed by no later than October 28, 2016. Signed by Judge Emmet G. Sullivan on 10/3/2016. (lcegs3) (Entered: 10/03/2016) |
| 10/03/2016 | | Set/Reset Deadlines: Plaintiffs' Opposition To Defendants' Motion To Dismiss due by 10/18/2016. Defendants' Reply due by 10/28/2016. (mac) (Entered: 10/03/2016) |
| 10/18/2016 | 18 | Memorandum in opposition to re 15 MOTION to Dismiss filed by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG. (Willen, Brian) (Entered: 10/18/2016) |
| 10/28/2016 | 19 | REPLY to opposition to motion re 15 MOTION to Dismiss filed by CARLA HAYDEN, LIBRARY OF CONGRESS, LORETTA E. LYNCH, MARIA A. PALLANTE, U.S. COPYRIGHT OFFICE, U.S. DEPARTMENT OF JUSTICE. (Wyer, Kathryn) (Entered: 10/28/2016) |
| 07/18/2017 | 20 | MOTION to Take Judicial Notice by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG (Attachments: # 1 Exhibit, # 2 Exhibit)(Willen, Brian) (Entered: 07/18/2017) |
| 09/21/2017 | | MINUTE ORDER. Further proceedings in this case are HEREBY STAYED pending resolution of the pending motions. Signed by Judge Emmet G. Sullivan on 9/21/2017. (lcegs1) (Entered: 09/21/2017) |
| 09/21/2017 | | Case Stayed. (zcdw) (Entered: 09/22/2017) |
| 10/31/2018 | 21 | NOTICE of Change of Address by Kathryn L. Wyer (Wyer, Kathryn) (Entered: 10/31/2018) |
| 10/31/2018 | 22 | NOTICE OF SUPPLEMENTAL AUTHORITY by CARLA HAYDEN, LIBRARY OF CONGRESS, LORETTA E. LYNCH, MARIA A. PALLANTE, |

| | | | |
|---|---|---|---|
| | | | U.S. COPYRIGHT OFFICE, U.S. DEPARTMENT OF JUSTICE (Wyer, Kathryn) (Entered: 10/31/2018) |
| 11/02/2018 | 23 | | RESPONSE re 22 NOTICE OF SUPPLEMENTAL AUTHORITY filed by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG. (Willen, Brian) (Entered: 11/02/2018) |
| 06/27/2019 | 24 | | ORDER granting in part and denying in part 15 Motion to Dismiss; granting 20 Motion to Take Judicial Notice. Signed by Judge Emmet G. Sullivan on 6/27/2019. (lcegs1) (Entered: 06/27/2019) |
| 06/27/2019 | 25 | | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 6/27/2019. (lcegs1) (Entered: 06/27/2019) |
| 06/27/2019 | 26 | | STANDING ORDER: The parties are directed to read the attached Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan in its entirety upon receipt. The parties are hereby ORDERED to comply with the directives in the attached Standing Order. Signed by Judge Emmet G. Sullivan on 06/27/19. (Attachment: Exhibit 1) (mac) (Entered: 06/27/2019) |
| 07/11/2019 | 27 | | MEET AND CONFER STATEMENT. (Attachments: # 1 Text of Proposed Order)(Wyer, Kathryn) (Entered: 07/11/2019) |
| 07/24/2019 | | | MINUTE ORDER. In view of 27 Joint Report Pursuant to Local Civil Rule 16.3, and in particular the proposed briefing schedule for plaintiffs' renewed motion for preliminary injunction together with the need for only limited discovery in this case, the Court informs the parties that it appears that consolidation of plaintiffs' motion for preliminary injunction with the merits pursuant to Federal Rule of Civil Procedure 65(a)(2) with expedited discovery and briefing of cross motions for summary judgment would conserve judicial resources and provide for a more efficient resolution of this matter. Accordingly, the Court directs the parties to submit a joint status report by no later than July 29, 2019, informing the Court whether the parties consent to consolidation and proposing a discovery and briefing schedule that would result in ripe cross motions for summary judgment on a timeline similar to the proposed briefing schedule for the renewed motion for preliminary injunction. Signed by Judge Emmet G. Sullivan on 7/24/2019. (lcegs1) (Entered: 07/24/2019) |
| 07/24/2019 | | | Set/Reset Deadlines: Joint Status Report due by 7/29/2019. (mac) (Entered: 07/24/2019) |
| 07/29/2019 | 28 | | Joint STATUS REPORT *Pursuant to Minute Order* by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG. (Willen, Brian) (Entered: 07/29/2019) |
| 07/29/2019 | | | MINUTE ORDER. In view of 28 Joint Status Report, the parties shall file a joint status report by no later than August 29, 2019 notifying the Court whether they have agreed to a statement of stipulated facts and plan to follow their proposed briefing schedule, or whether they have agreed on an alternative proposal for further proceedings. Signed by Judge Emmet G. Sullivan on 7/29/2019. (lcegs1) (Entered: 07/29/2019) |
| 07/30/2019 | | | Set/Reset Deadlines: Joint Status Report due by 8/29/2019. (mac) (Entered: 07/30/2019) |
| 08/29/2019 | 29 | | |

| | | | |
|---|---|---|---|
| | | | Joint STATUS REPORT by CARLA HAYDEN, LIBRARY OF CONGRESS, LORETTA E. LYNCH, MARIA A. PALLANTE, U.S. COPYRIGHT OFFICE, U.S. DEPARTMENT OF JUSTICE. (Wyer, Kathryn) (Entered: 08/29/2019) |
| 09/09/2019 | | | MINUTE ORDER. In view of 29 joint status report, plaintiffs shall file their renewed motion for preliminary injunction by no later than September 19, 2019; defendants shall file their opposition by no later than October 24, 2019; and plaintiffs shall file their reply by no later than November 14, 2019. Signed by Judge Emmet G. Sullivan on 9/9/2019. (lcegs1) (Entered: 09/09/2019) |
| 09/10/2019 | | | Set/Reset Deadlines: Renewed Motion For Preliminary Injunction due by 9/19/2019. Defendants Opposition due by 10/24/2019. Plaintiffs Reply due by 11/14/2019. (mac) (Entered: 09/10/2019) |
| 09/19/2019 | 30 | | MOTION for Preliminary Injunction by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG (Attachments: # 1 Memorandum in Support, # 2 Declaration of Matthew Green, # 3 Declaration of Andrew "bunnie" Huang, # 4 Declaration of Brian M. Willen, # 5 Exhibit 1 to Willen Declaration, # 6 Exhibit 2 to Willen Declaration, # 7 Exhibit 3 to Willen Declaration, # 8 Exhibit 4 to Willen Declaration, # 9 Exhibit 5 to Willen Declaration, # 10 Exhibit 6 to Willen Declaration, # 11 Exhibit 7 to Willen Declaration, # 12 Text of Proposed Order)(Willen, Brian) (Entered: 09/19/2019) |
| 10/09/2019 | 31 | | Consent MOTION for Leave to File *Amicus Curiae* by Digital Content Protection, LLC, Intel Corporation, Advanced Access Content System Licensing Administrator LLC, DVD Copy Control Association (Attachments: # 1 Text of Proposed Order)(Burger, James) (Entered: 10/09/2019) |
| 10/09/2019 | 32 | | Consent MOTION for Leave to File *Amici Curiae Brief* by ASSOCIATION OF AMERICAN PUBLISHERS, INC., ENTERTAINMENT SOFTWARE ASSOCIATION, MOTION PICTURE ASSOCIATION, INC., RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. (Attachments: # 1 Text of Proposed Order PROPOSED ORDER, # 2 Supplement CORPORATE DISCLOSURE)(Williams, John) (Entered: 10/09/2019) |
| 10/09/2019 | 33 | | NOTICE of Appearance by John Matthew DeWeese Williams on behalf of ASSOCIATION OF AMERICAN PUBLISHERS, INC., ENTERTAINMENT SOFTWARE ASSOCIATION, MOTION PICTURE ASSOCIATION, INC., RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. (Williams, John) (Entered: 10/09/2019) |
| 10/10/2019 | 34 | | NOTICE of Appearance by James Mitchell Burger on behalf of DIGITAL CONTENT PROTECTION, LLC, INTEL CORPORATION (Burger, James) (Entered: 10/10/2019) |
| 10/17/2019 | 35 | | NOTICE of Appearance by David Jonathan Taylor on behalf of ADVANCED ACCESS CONTENT SYSTEM LICENSING ADMINISTRATOR LLC, DVD COPY CONTROL ASSOCIATION (Taylor, David) (Entered: 10/17/2019) |
| 10/17/2019 | 36 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by DVD COPY CONTROL ASSOCIATION (Taylor, David) (Entered: 10/17/2019) |
| 10/17/2019 | 37 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by ADVANCED ACCESS CONTENT SYSTEM |

| | | | |
|---|---|---|---|
| | | | LICENSING ADMINISTRATOR LLC (Taylor, David) (Entered: 10/17/2019) |
| 10/24/2019 | 38 | | Memorandum in opposition to re 30 MOTION for Preliminary Injunction filed by CARLA HAYDEN, LIBRARY OF CONGRESS, LORETTA E. LYNCH, MARIA A. PALLANTE, U.S. COPYRIGHT OFFICE, U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Declaration of C. Brendan S. Traw, # 2 Declaration of Stephen P. Balogh, # 3 Exhibit A to Balogh Declaration, # 4 Marks & Turnbull, 46 J. Copyright Soc'y U.S.A. 563, # 5 Text of Proposed Order)(Wyer, Kathryn) (Entered: 10/24/2019) |
| 10/30/2019 | 39 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert H. Rotstein, :Firm– Mitchell Silberberg & Knupp LLP, :Address– 2049 Century Park East. Phone No. – 310–312–2000. Fax No. – 202–355–7899 Filing fee $ 100, receipt number ADCDC–6491425. Fee Status: Fee Paid. by ASSOCIATION OF AMERICAN PUBLISHERS, INC., ENTERTAINMENT SOFTWARE ASSOCIATION, MOTION PICTURE ASSOCIATION, INC., RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Williams, John) (Entered: 10/30/2019) |
| 10/31/2019 | 40 | | Second MOTION for Leave to File *Amici Curiae Brief* by ASSOCIATION OF AMERICAN PUBLISHERS, INC., ENTERTAINMENT SOFTWARE ASSOCIATION, MOTION PICTURE ASSOCIATION, INC., RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit, # 3 Exhibit)(Williams, John) (Entered: 10/31/2019) |
| 10/31/2019 | 41 | | Second MOTION for Leave to File *Amicus Brief* by Digital Content Protection, LLP, INTEL CORPORATION, Advanced Access Content System Licensing Administrator, LLC, DVD COPY CONTROL ASSOCIATION (Attachments: # 1 Proposed Amicus Brief, # 2 Exhibit Exhibit A to Proposed Amicus, # 3 Exhibit Exhibit B to Proposed Amicus, # 4 Exhibit Exhibit C to Proposed Amicus, # 5 Exhibit Exhibit D to Proposed Amicus)(Burger, James) (Entered: 10/31/2019) |
| 10/31/2019 | 42 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by Advanced Access Content System Licensing Administrator, LLC, DVD COPY CONTROL ASSOCIATION, Digital Content Protection, LLP, INTEL CORPORATION (Burger, James) (Entered: 10/31/2019) |
| 11/05/2019 | | | MINUTE ORDER granting 40 second motion for leave to file amicus brief in support of the government. "An amicus curiae, defined as friend of the court,... does not represent the parties but participates only for the benefit of the Court." United States v. Microsoft Corp., No. 981232, 2002 WL 319366, at *2 (D.D.C. Feb. 28, 2002) (internal quotations omitted). Thus it is within the discretion of the Court to determine the fact, extent, and manner of participation by the amicus. Id. "'An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an amicus curiae brief should be denied.'" Jin v. Ministry of State Sec., 557 F.Supp.2d 131, 137 (D.D.C. 2008) |

| | | | |
|---|---|---|---|
| | | | (quoting Ryan v. Commodity Futures Trading Commn, 125 F.3d 1062, 1064 (7th Cir.1997)). See also Local Civil Rule 7(o). The Court agrees that the Association of American Software Publishers, the Entertainment Software Association, the Motion Picture Association, Inc., and the Recording Industry of American, Inc., are not represented by a party to this litigation and that it would benefit the Court to be briefed from their perspective on matters relevant to the disposition of this case. Signed by Judge Emmet G. Sullivan on 11/5/2019. (lcegs1) (Entered: 11/05/2019) |
| 11/05/2019 | | | MINUTE ORDER granting <u>41</u> second motion for leave to file amicus brief in support of the government. An amicus curiae, defined as friend of the court,... does not represent the parties but participates only for the benefit of the Court." United States v. Microsoft Corp., No. 981232, 2002 WL 319366, at *2 (D.D.C. Feb. 28, 2002) (internal quotations omitted). Thus it is within the discretion of the Court to determine the fact, extent, and manner of participation by the amicus. Id. "'An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an amicus curiae brief should be denied.'" Jin v. Ministry of State Sec., 557 F.Supp.2d 131, 137 (D.D.C. 2008) (quoting Ryan v. Commodity Futures Trading Commn, 125 F.3d 1062, 1064 (7th Cir.1997)). See also Local Civil Rule 7(o). The Court agrees that Digital Content Protection, LLC, Intel Corporation, Advanced Access Content System Licensing Administrator, LLC, and DVD Copy Control Association are not represented by a party to this litigation and that it would benefit the Court to be briefed from their perspective on matters relevant to the disposition of this case. Signed by Judge Emmet G. Sullivan on 11/5/2019. (lcegs1) (Entered: 11/05/2019) |
| 11/05/2019 | | | MINUTE ORDER finding as moot <u>31</u> consent motion for leave to file amicus brief in support of the government. Signed by Judge Emmet G. Sullivan on 11/5/2019. (lcegs1) (Entered: 11/05/2019) |
| 11/05/2019 | | | MINUTE ORDER finding as moot <u>32</u> consent motion for leave to file amicus brief in support of the government. Signed by Judge Emmet G. Sullivan on 11/5/2019. (lcegs1) (Entered: 11/05/2019) |
| 11/05/2019 | | | MINUTE ORDER granting <u>39</u> Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Emmet G. Sullivan on 11/5/2019. (lcegs1) (Entered: 11/05/2019) |
| 11/05/2019 | <u>45</u> | | AMICUS BRIEF by ASSOCIATION OF AMERICAN PUBLISHERS, INC., ENTERTAINMENT SOFTWARE ASSOCIATION, MOTION PICTURE ASSOCIATION, INC., RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. (jf) (Entered: 12/02/2019) |
| 11/05/2019 | <u>46</u> | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests NONE by ASSOCIATION OF AMERICAN PUBLISHERS, INC., ENTERTAINMENT SOFTWARE ASSOCIATION, MOTION PICTURE ASSOCIATION, INC., RECORDING INDUSTRY ASSOCIATION OF |

| | | | |
|---|---|---|---|
| | | | AMERICA, INC. (jf) (Entered: 12/02/2019) |
| 11/05/2019 | 47 | | AMICUS BRIEF by ADVANCED ACCESS CONTENT SYSTEM LICENSING ADMINISTRATOR, LLC, DIGITAL CONTENT PROTECTION, LLP, DVD COPY CONTROL ASSOCIATION, INTEL CORPORATION. (Attachments: # 1 Exhibit A–D)(jf) (Entered: 12/02/2019) |
| 11/12/2019 | 43 | | NOTICE of Appearance by Robert Henry Rotstein on behalf of ASSOCIATION OF AMERICAN PUBLISHERS, INC., ENTERTAINMENT SOFTWARE ASSOCIATION, MOTION PICTURE ASSOCIATION, INC., RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. (Rotstein, Robert) (Entered: 11/12/2019) |
| 11/14/2019 | 44 | | REPLY to opposition to motion re 30 MOTION for Preliminary Injunction filed by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG. (Willen, Brian) (Entered: 11/14/2019) |
| 03/05/2021 | 48 | | NOTICE of Appearance by Michael Parks on behalf of DIGITAL CONTENT PROTECTION, LLC, INTEL CORPORATION (Parks, Michael) (Entered: 03/05/2021) |
| 03/08/2021 | 49 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to DIGITAL CONTENT PROTECTION, LLC, INTEL CORPORATION. Attorney James Mitchell Burger terminated. (Burger, James) (Entered: 03/08/2021) |
| 07/13/2021 | 50 | | NOTICE OF SUPPLEMENTAL AUTHORITY by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG (Attachments: # 1 Exhibit 1)(Willen, Brian) (Entered: 07/13/2021) |
| 07/15/2021 | 51 | | ORDER denying 30 Motion for Preliminary Injunction. Signed by Judge Emmet G. Sullivan on 7/15/2021. (lcegs1) (Entered: 07/15/2021) |
| 07/15/2021 | 52 | | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 7/15/2021. (lcegs1) (Entered: 07/15/2021) |
| 07/15/2021 | | | MINUTE ORDER finding as moot 16 motion for preliminary injunction in view of 51 order denying 30 motion for preliminary injunction. Signed by Judge Emmet G. Sullivan on 7/15/2021. (lcegs1) (Entered: 07/15/2021) |
| 08/04/2021 | | | MINUTE ORDER directing the parties to file a Joint Status Report with recommendations for further proceedings by no later than August 18, 2021. Signed by Judge Emmet G. Sullivan on 8/4/2021. (lcegs1) (Entered: 08/04/2021) |
| 08/05/2021 | | | Set/Reset Deadlines: Joint Status Report due by 8/18/2021 (mac) (Entered: 08/05/2021) |
| 08/18/2021 | 53 | | Joint STATUS REPORT by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG. (Willen, Brian) (Entered: 08/18/2021) |
| 09/10/2021 | 54 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 24 Order on Motion to Dismiss, Order on Motion to Take Judicial Notice, 51 Order on Motion for Preliminary Injunction by ALPHAMAX, MATTHEW D. GREEN, ANDREW BUNNIE HUANG. Filing fee $ 505, receipt number ADCDC–8725618. Fee Status: Fee Paid. Parties have been notified. (Willen, Brian) (Entered: 09/10/2021) |

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

MATTHEW GREEN, ANDREW HUANG, AND ALPHAMAX, LLC,

       Plaintiffs,

    v.

U.S. DEPARTMENT OF JUSTICE, WILLIAM BARR, LIBRARY OF CONGRESS, CARLA HAYDEN, U.S. COPYRIGHT OFFICE, AND KARYN A. TEMPLE,

       Defendants.

Civil Case No. 16-cv-01492-EGS

## NOTICE OF APPEAL

Notice is hereby given this 10 day of September, 2021 that Plaintiffs Mathew Green, Andrew Huang, and Alphamax, LLC, ("Plaintiffs") hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the judgment of this Court entered on the 15 day of July, 2021 (Dkt. No. 51) in favor of Defendants U.S. Department of Justice, William Barr, Library of Congress, Carla Hayden, U.S. Copyright Office, and Karyn A. Temple ("Defendants") against said Plaintiffs denying preliminary injunction and prior order dismissing Plaintiffs' overbreadth, prior restraint, and Administrative Procedure Act claims, entered by this Court on June 27, 2019 (Dkt. No. 24).

Dated: September 10, 2021

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ Brian M. Willen
    Brian M. Willen
D.C. Bar No. 490471
WILSON SONSINI
GOODRICH & ROSATI,
Professional Corporation
1301 Avenue of the
Americas
40th Floor
New York, NY 10019
(212) 999-5800

Lauren Gallo White
WILSON SONSINI
GOODRICH & ROSATI,
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000

Corynne McSherry
Kit Walsh
Adam Schwartz
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

*Counsel for Plaintiffs Matthew Green, Andrew
Huang, and Alphamax, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

```
                                )
MATTHEW GREEN, et al.,          )
                                )
          Plaintiffs,           )
                                )
     v.                         ) Civil Action No. 16-1492 (EGS)
                                )
U.S. DEPARTMENT OF JUSTICE,     )
et al.,                         )
                                )
          Defendants.           )
_____)
```

### MEMORANDUM OPINION

Plaintiffs Matthew Green, Andrew Huang, and Alphamax, LLC seek to engage in certain activities for which they fear they will be prosecuted under the "anti-circumvention" provision and one of the "anti-trafficking" provisions of the Digital Millennium Copyright Act ("DMCA"). Accordingly, they have brought a pre-enforcement challenge to those two provisions alleging that they violate the First Amendment to the United States Constitution facially and as applied to their proposed activities. They additionally claim that the Librarian of Congress's failure to include certain exemptions from the reach of the anti-circumvention provision in a 2015 final rule promulgated under a rulemaking procedure created by the DMCA violated the First Amendment and the Administrative Procedure Act ("APA"). They seek declaratory and injunctive relief.

Defendants——the United States Department of Justice,
Attorney General William Barr, the Library of Congress,
Librarian of Congress Carla Hayden, the United States Copyright
Office, and Register of Copyrights Karyn Temple Claggett[1]——have
moved to dismiss plaintiffs' claims for lack of subject matter
jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and,
alternatively, for failure to state a claim under Federal Rule
12(b)(6). Upon consideration of defendants' motion, the response
and reply thereto, the applicable law, and the entire record,
defendants' motion to dismiss is **GRANTED IN PART and DENIED IN
PART.**

## I.   Background

### A.   Statutory Background

Congress enacted the DMCA, 17 U.S.C. § 1201 *et seq.*, in
1998 to implement the World Intellectual Property Organization
Copyright Treaty and the World Intellectual Property
Organization Performances and Phonograms Treaty. S. Rep. No.
105-190, at 2 (1998). In implementing those treaties via the
DMCA, Congress was primarily responding to "the ease with which
digital works can be copied and distributed worldwide virtually
instantaneously." *Id.* at 8. In short, Congress was concerned

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Attorney
General Barr has been substituted for former Attorney General
Loretta Lynch, and Register Claggett has been substituted for
former Register Maria Pallante as a defendant in this action.

2

with the pirating of copyrighted works in the digital world. Three of the DMCA's central provisions respond directly to that concern.

The first——section 1201(a)(1)(A)——is an "anti-circumvention" provision. It prohibits a person from "circumvent[ing] a technological measure that effectively controls access to a work protected under [Title 17, governing copyright]." 17 U.S.C. § 1201(a)(1)(A). A "technological measure"——often referred to as a "technological protection measure" ("TPM"), Compl., ECF No. 1 ¶ 18——"effectively controls access to a work" if it, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work," 17 U.S.C. § 1201(a)(3)(B). To "circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). Section 1201(a)(1)(A) thus prohibits persons from bypassing technological barriers put in place to prevent access to copyrighted works.

The second and third provisions——sections 1201(a)(2) and 1201(b)——are "anti-trafficking provisions." That is, instead of prohibiting the circumvention of TPMs, they prohibit the

3

dissemination of the technological means that enable such circumvention. The anti-trafficking provision at issue in this case, section 1201(a)(2), prohibits, in relevant part, a person from "manufactur[ing], import[ing], offer[ing] to the public, provid[ing], or otherwise traffic[king] in any technology, product, service, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a [copyrighted] work." *Id.* § 1201(a)(2)(A).[2]

The DMCA also includes certain fine-grained permanent exemptions, some of which apply to the anti-circumvention provision and to both anti-trafficking provisions, *see, e.g.*, *id.* § 1201(e) (broadly exempting official law enforcement activity); some of which apply to the anti-circumvention provision and only one of the anti-trafficking provisions, *see, e.g.*, *id.* § 1201(j) (exempting security testing "solely for the

---

[2] Section 1201(b), in relevant part, prohibits a person from "manufactur[ing], import[ing], offer[ing] to the public, provid[ing], or otherwise traffic[king] in any technology, product, service, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under [Title 17, governing copyright]." 17 U.S.C. § 1201(b)(1)(A). Although sections 1201(a)(2) and 1201(b) employ similar wording, section 1201(a)(2) is aimed at circumvention technologies that permit access to a copyrighted work, whereas 1201(b) is aimed at circumvention technologies that permit copyrighted works to actually be copied. S. Rep. at 12.

purpose of good faith testing, investigating, or correcting, a security flaw or vulnerability"); and some of which apply only to the anti-circumvention provision *see, e.g.*, *id.* § 1201(d) (exempting nonprofit libraries, archives, and educational institutions that seek to circumvent TPMs to determine whether to purchase a copyrighted product).

Additionally, cognizant of its "longstanding commitment to the principle of fair use," H.R. Rep. No. 105-551, pt. 2, at 35 (1998) ("Commerce Comm. Rep."), Congress sought to balance its efforts to curtail digital piracy with users' rights of fair use by putting in place a triennial rulemaking process to exempt certain noninfringing uses of certain classes of copyrighted works from the anti-circumvention provision for three-year periods. *See* 17 U.S.C. §§ 1201(a)(1)(B)-(E). Accordingly, every three years, the Librarian of Congress, "upon the recommendation of the Register of Copyrights, who shall consult with the Assistant Secretary for Communications and Information of the Department of Commerce and report and comment on his or her views in making such recommendation, shall make the determination in a rulemaking proceeding . . . of whether persons who are users of a copyrighted work are, or are likely to be in the succeeding 3-year period, adversely affected by the [anti-circumvention provision] in their ability to make noninfringing uses under [Title 17] of a particular class of

5

copyrighted works." *Id.* § 1201(a)(1)(C). To make the relevant determination, the Librarian must consider: "(i) the availability for use of copyrighted works; (ii) the availability for use of works for nonprofit archival, preservation, and educational purposes; (iii) the impact that the prohibition on the circumvention of technological measures applied to copyrighted works has on criticism, comment, news reporting, teaching, scholarship, or research; (iv) the effect of circumvention of technological measures on the market for or value of copyrighted works; and (v) such other factors as the Librarian considers appropriate." *Id.*

### B.    Factual Background

Plaintiff Matthew Green is a computer science professor at Johns Hopkins University. Compl., ECF No. 1 ¶¶ 5, 75. Plaintiff Andrew Huang is a Singapore-based electrical engineer who owns and operates several technology-related business entities, including plaintiff Alphamax, LLC. *Id.* ¶¶ 6-7, 88. Plaintiffs seek to engage in certain activities that they fear will run afoul of section 1201(a)(1)(A)'s circumvention prohibition and section 1201(a)(2)'s trafficking prohibition, exposing them to potential civil liability under the DMCA's private right of action, 17 U.S.C. § 1203, and potential criminal liability under the DMCA's criminal offense provision, 17 U.S.C. § 1204. *Id.* ¶¶ 86-87, 109-10.

6

Specifically, Dr. Green "investigates the security of electronic systems," and "[h]e would like to include detailed information regarding how to circumvent security systems" in a forthcoming book, *id.* ¶ 75, but he "has declined to investigate certain devices due to the possibility of litigation based on [s]ection 1201," *id.* ¶ 80. Dr. Green requested an exemption to cover his security research as part of the 2015 triennial rulemaking process, but the exemption that the Librarian of Congress finally put in place was not broad enough to cover all of his proposed research. *Id.* ¶¶ 78-79, 84-85.

Mr. Huang and Alphamax are the creators of "NeTV," a device for editing high-definition digital video. *Id.* ¶ 89. They seek to create an "improved" NeTV——a "NeTVCR"——that would allow its users "to save content for later viewing, move content to a viewing device of the user's choice, or convert content to a more useful format." *Id.* ¶¶ 90-91. To create the NeTVCR, Huang and Alphamax have to circumvent the TPMs——High-Bandwidth Digital Content Protection ("HDCP")——that restrict the viewing of High-Definition Multimedia Interface ("HDMI") signals. *Id.* ¶¶ 92-93. They have been deterred from doing so because of the risk of prosecution under section 1201. *Id.* ¶¶ 109-10. Although Huang and Alphamax did not apply for any exemptions to the anti-circumvention provision in the 2015 triennial rulemaking, they allege that if the Librarian of Congress had granted "several"

exemptions proposed by other parties, they "would be able to circumvent HDCP as necessary to use the NeTVCR, without violating the anti-circumvention provision of [s]ection 1201." *Id.* ¶ 108.

Wanting to engage in activity that would qualify as prohibited circumvention and trafficking but fearing criminal prosecution if they do so, Dr. Green, Mr. Huang, and Alphamax have brought a pre-enforcement challenge to the two relevant provisions of the DMCA on First Amendment grounds. *See generally id.* ¶¶ 111-49. Specifically, they claim that both provisions are facially overbroad, *id.* ¶¶ 111-20; that the anti-circumvention provision amounts to an unconstitutional speech-licensing regime, *id.* ¶¶ 121-28; and that both provisions are unconstitutional as applied to their proposed activities. *Id.* ¶¶ 129-49. They also contend that the Librarian of Congress's denial of exemptions that "would have applied to [Dr.] Green's security research," *id.* ¶ 155; and that "would have applied to [Mr.] Huang and Alphamax's creation and use of NeTVCR," *id.* ¶ 162, violated both the First Amendment and the Administrative Procedure Act ("APA"), *id.* ¶¶ 150-62.[3]

---

[3] Dr. Green has filed a motion for preliminary injunction, seeking to bar the government from prosecuting him under the DMCA during the pendency of this lawsuit. *See* Mot. for PI on Behalf of Pl. Matthew Green Pursuant to Fed. R. Civ. P. 65(a), ECF No. 16. The Court stayed that motion pending resolution of

### C. Defendants' Motion to Dismiss

Defendants have moved to dismiss all of plaintiffs' claims. *See generally* Defs.' Mot. to Dismiss, ECF No. 15. Defendants argue that plaintiffs' First Amendment challenges to DMCA sections 1201(a)(1)(A) and 1201(a)(2) should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because plaintiffs lack the standing required to bring such challenges. Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem. Supp."), ECF No. 15-1 at 23-30.[4] Alternatively, defendants argue that those First Amendment challenges to the DMCA provisions, along with the First Amendment challenges to the Librarian of Congress's 2015 final rule, should be dismissed under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.* at 30-51. Defendants also argue that plaintiffs' APA challenge to the Librarian's 2015 final rule should be dismissed under Federal Rule 12(b)(1) for lack of subject matter jurisdiction because the APA's waiver of sovereign immunity "does not apply to the Librarian's [exemption] determination under the § 1201(a)(1)(C) rulemaking process." *Id.* at 51-54.

---

the instant motion to dismiss. *See* Minute Entry of September 30, 2016.

[4] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

The remainder of the Court's Opinion proceeds as follows: In Part II, the Court briefly discusses the relevant Standards of Review. In Part III.A, the Court determines that the plaintiffs have standing to bring their claims. In Part III.B, the Court addresses plaintiffs' first amendment challenges, and finds that plaintiffs' facial claims fail, but that plaintiffs' as-applied claims survive defendants' motion to dismiss. In Part III.C, the Court determines that plaintiffs' APA challenges fail.

## II. Standards of Review

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of standing and a motion to dismiss on sovereign immunity grounds are both reviewed under Federal Rule of Civil Procedure 12(b)(1). *Coulibaly v. Kerry*, No. 14-0189, 2016 WL 5674821, at *15 (D.D.C. Sept. 30, 2016); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). To survive a Rule 12(b)(1) motion to dismiss, "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court "must scrutinize the plaintiff's allegations more closely when considering a

motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Federal Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 63 (D.D.C. 2001). Finally, in reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007) (quotation marks omitted).

Despite this liberal pleading standard, to survive a motion
to dismiss, a complaint "must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible
on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(quotation marks omitted). A claim is facially plausible when
the facts pled in the complaint allow the court "to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Id.* The standard does not amount to a
"probability requirement," but it does require more than a
"sheer possibility that a defendant has acted unlawfully." *Id.*

The court must give the plaintiff the "benefit of all
inferences that can be derived from the facts alleged," *Kowal v.
MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994),
considering "the facts alleged in the complaint, documents
attached as exhibits or incorporated by reference in the
complaint, and matters about which the Court may take judicial
notice," *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196
(D.D.C. 2002). The court need not "accept inferences drawn by
plaintiffs if such inferences are unsupported by the facts set
out in the complaint" or "legal conclusions cast in the form of
factual allegations." *Kowal*, 16 F.3d at 1276. Further,
"[t]hreadbare recitals of the elements of a cause of action,

12

26

supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678. Only a complaint that "states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

## III. Analysis

### A. Standing

"Article III of the Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting U.S. Const., art. III, § 2). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The standing requirement "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Lujan*, 504 U.S. at 560-61).

The injury-in-fact requirement is only satisfied when an injury is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*,

13

504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Id.* (quoting *Clapper*, 133 S. Ct. at 1147, 1150 n.5). In the context of a statute that contemplates criminal liability, plaintiffs do not need to expose themselves to actual arrest or prosecution to be subject to "certainly impending" injury. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Instead, the injury-in-fact requirement is satisfied when plaintiffs allege "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 134 S. Ct. at 2342 (quoting *id.*). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (citations omitted). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id*.

Here, defendants argue that plaintiffs fail to satisfy the injury-in-fact requirement. They argue that plaintiffs' proposed course of conduct is not proscribed by the DMCA, that plaintiffs

14

are not subject to a credible threat of prosecution, and that plaintiffs' proposed course of conduct is not arguably affected with a constitutional interest. Defs.' Mem. Supp., ECF No. 15-1 at 24-27. None of these arguments is availing.

### 1. Proposed Course of Conduct Arguably Proscribed by a Statute

First, plaintiffs have sufficiently alleged that their proposed course of conduct is arguably proscribed by the DMCA. With regard to section 1201(a)(1)(A)'s circumvention prohibition, Dr. Green has alleged that he plans to circumvent TPMs for purposes of his academic research, Compl., ECF No. 1 ¶¶ 75-77, 80; and Mr. Huang and Alphamax have alleged that they plan to circumvent TPMs to create the NeTVCR, *id.* ¶¶ 93, 109. With regard to section 1201(a)(2)'s trafficking prohibition, Dr. Green has sufficiently alleged that he plans to include "detailed information regarding how to circumvent security systems" in a book about his research, *id.* ¶ 75, and he has indicated that the "detailed information" will include computer code. Decl. of Matthew Green in Supp. of Mot. for PI, ECF No. 16-2 ¶ 19 ("I am now writing an academic book . . . . I would like to include examples of code capable of bypassing security measures, for readers to learn from.").[5] And Mr. Huang and

---

[5] It is appropriate to "consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc.*, 402 F.3d at 1253.

Alphamax have alleged that they intend to disseminate "information about how to build NeTVCR," Compl., ECF No. 1 ¶ 110, which permits the reasonable inference that they will disseminate the technological know-how and computer code required to circumvent the TPMs that bar access to HDMI signals, *see Rann*, 154 F. Supp. 2d at 64 ("In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."). Accordingly, plaintiffs have put forth a sufficiently "credible statement of intent to engage in violative conduct." *Act Now to Stop War and End Racism Coalition v. District of Columbia*, 589 F.3d 433, 435 (D.C. Cir. 2009) ("*ANSWER*").

## 2. Credible Threat of Prosecution

Second, plaintiffs have sufficiently alleged that they are subject to a "credible threat of prosecution" under the DMCA. *United Farm Workers*, 442 U.S. at 298. In *United Farm Workers*, the Supreme Court held that a "credible threat of prosecution" existed to permit plaintiffs to challenge a state criminal law prohibiting certain union practices because, even though the criminal penalty provision had never been applied, the state had "not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices."

442 U.S. at 302. Thus, *United Farm Workers* only requires "a conventional background expectation that the government will enforce the law." *Seegars v. Gonzales*, 396 F.3d 1248, 1253 (D.C. Cir. 2005). But, not inaccurately, defendants point to a line of cases in this Circuit suggesting that something more than the government's failure to disavow criminal prosecution under a given statute is required to show a "credible threat of prosecution." *See* Defs.' Mem. Supp., ECF No. 15-1 at 25-26.

That line starts with *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), where the court confronted a pre-enforcement challenge to certain provisions of the Violent Crime Control and Law Enforcement Act of 1994. 103 F.3d at 996-97. The court held that there was a "credible threat of prosecution" as to the provisions of the Act that, by their very terms, singled out plaintiffs——certain gun manufacturers——as the "intended targets." *Id.* at 1000-01. But the court held that there was no such "credible threat of prosecution" as to the provisions that only generically referred to the characteristics of prohibited weapons and that, consequently, "could be enforced against a great number of weapon manufacturers or distributors." *Id.* at 1001. In *Seegars*, the court acknowledged that *Navegar*'s demanding "credible threat of prosecution" analysis was in tension with the permissive *United Farm Workers* analysis and Court of Appeals for the District of Columbia ("D.C. Circuit")

17

cases following *United Farm Workers* and upholding pre-enforcement review of First Amendment challenges to criminal statutes. *See* 396 F.3d at 1253-54. Even though in *Seegars* the court thought that a "special First Amendment rule for preenforcement review of statutes seems to have no explicit grounding in Supreme Court decisions," *id.* at 1254, it still decided to apply *Navegar*'s more demanding test in lieu of *United Farm Workers*' test outside of the First Amendment context precisely because *Navegar* represented "the only circuit case dealing with a non-First Amendment challenge to a criminal statute." *Id.* The court therefore drew a line between First Amendment and non-First Amendment pre-enforcement challenges to criminal laws.

The existence of that line is confirmed by the D.C. Circuit's post-*Seegars* decisions. In *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007) and *Ord v. District of Columbia*, 587 F.3d 1136 (D.C. Cir. 2009), the court considered non-First Amendment pre-enforcement challenges and applied the heightened *Navegar* "credible threat of prosecution" test, demanding that the plaintiff be able to point to "a special law enforcement priority" that makes prosecution imminent, 587 F.3d at 1141, or that the plaintiff indicate that he has been "singled out or uniquely targeted" for prosecution. 478 F.3d at 375. In *ANSWER*, however, the court confronted a First Amendment

18

challenge to regulations governing the placement of posters in the District of Columbia and held that a "credible threat of prosecution" existed. 589 F.3d at 435-36. Although in *ANSWER* the court noted that it was confronted with "somewhat more than the conventional background expectation that the government will enforce the law"——namely that a co-plaintiff was already subject to an enforcement action under the regulations, *id.*——it nowhere indicated that the "somewhat more" was required in the First Amendment context. The D.C. Circuit's more recent decision in *United States Telecom Association v. FCC*, 825 F.3d 674 (D.C. Cir. 2015) seems to confirm that the "somewhat more" is not required, as it cited *ANSWER* solely for the proposition that standing "'to challenge laws *burdening expressive rights* requires only a credible statement by the plaintiff of intent to commit violative acts and a conventional background expectation that the government will enforce the law.'" 825 F.3d at 739 (quoting *ANSWER*, 589 F.3d at 435) (emphasis added). Even though in *United States Telecom* the court noted that that principle applied with "particular force" when an agency rule, as opposed to a statute, is challenged, *id.* (citing *Chamber of Commerce v. FEC*, 69 F.3d 600, 604 (D.C. Cir. 1995)), it subsequently emphasized that "'courts' willingness to permit pre-enforcement review is at its peak when claims are rooted in the First

19

Amendment,'" *Id.* at 740 (quoting *New York Republican State Comm. v. SEC*, 799 F.3d 1126, 1135 (D.C. Cir. 2015)).

The scenario currently before this Court falls on the *ANSWER-United States Telecom* side of the line that *Seegars* drew, not the *Navegar-Parker-Ord* side of that line, because plaintiffs challenge DMCA sections 1201(a)(1)(A) and 1201(a)(2) on various First Amendment grounds. In this First Amendment context, there is a "credible threat of prosecution" so long as there is "a conventional background expectation that the government will enforce the law." *United States Telecom*, 825 F.3d at 739. That conventional background expectation exists here. Plaintiffs have adequately alleged that the government has brought charges under section 1201 in the past, Compl., ECF No. 1 ¶ 28, and past enforcement "is good evidence that the threat of enforcement is not chimerical," *Susan B. Anthony List*, 134 S. Ct. at 2345 (internal quotation marks omitted). Additionally, the government has not disavowed enforcement if plaintiffs undertake their proposed course of conduct. *See Susan B. Anthony List*, 134 S. Ct. at 2345; *Humanitarian Law Project*, 561 U.S. at 16; *cf. Johnson v. District of Columbia*, 71 F. Supp. 3d 155, 162 (D.D.C. 2014) (holding that there was no "credible threat of prosecution" in part because "the government has disavowed any intention to prosecute"). Accordingly, plaintiffs have

20

sufficiently alleged that they are subject to a "credible threat of prosecution" under the DMCA.

### 3. Proposed Course of Conduct Arguably Affected with a Constitutional Interest

Finally, plaintiffs have alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest." *United Farm Workers*, 442 U.S. at 298. Defendants put forth an extensive argument as to why plaintiffs' proposed course of conduct is not arguably affected with a constitutional interest. *See* Defs.' Mem. Supp. at 18-21; Reply in Supp. of Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 19 at 7-11. That argument reduces to the assertion that plaintiffs' proposed activities of circumvention and trafficking do not amount to the speech or expressive conduct that implicates First Amendment rights. But that is a premature merits argument: Whether plaintiffs' proposed course of conduct squarely implicates First Amendment rights is certainly an important question in this case, *see supra* Part III.B, but the resolution of that question does not determine whether the conduct that plaintiffs would engage in is at least *arguably* affected with a constitutional interest. *See Parker*, 478 U.S. at 377 ("[W]hen considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim."). *United States Telecom* confirms that "*arguably* affected with a

21

constitutional interest" simply means that a plaintiff has challenged a law on constitutional grounds. There, the court held that a plaintiff had standing in the context of a pre-enforcement First Amendment challenge to certain regulations even though the court, on the merits, concluded that the regulations did not "raise a First Amendment concern." 825 F.3d at 740-44. Logically, then, the standing inquiry only requires a challenge to a given law on constitutional grounds. Because plaintiffs have put forth such a challenge, their proposed course of conduct is "arguably affected with a constitutional interest." *United Farm Workers*, 442 U.S. at 298.

Plaintiffs have thus "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* Accordingly, they have satisfied Article III standing's injury-in-fact requirement. Defendants have not challenged the remaining standing requirements, and it appears to the Court that those causality and redressability requirements are satisfied. Accordingly, plaintiffs have standing as to their challenges to the DMCA's anti-circumvention and anti-trafficking provisions.[6]

---

[6] Having found that plaintiffs satisfy the *United Farm Workers* injury-in-fact inquiry and the remaining requirements to establish their standing to challenge DMCA sections 1201(a)(1)(A) and 1201(a)(2), the Court will not address the

### **B. First Amendment Challenges**

Plaintiffs make various claims grounded in the First Amendment. They allege that: (1) DMCA section 1201 is facially overbroad, burdening "a substantial range of protected speech that is disproportionate to its legitimate sweep," Compl., ECF No. 1 ¶¶ 111-20; (2) section 1201(a)(1) creates an unconstitutional prior restraint and speech-licensing regime, *id.* ¶¶ 121-28; and (3) the DMCA's anti-circumvention and anti-trafficking provisions violate the First Amendment as applied to their proposed course of conduct, *id*. ¶¶ 129-49, and that the Librarian of Congress violated the First Amendment when she failed to grant certain exemptions potentially applicable to plaintiffs' proposed course of conduct as part of the 2015 rulemaking carried out pursuant to DMCA sections 1201(a)(1)(B)-(D), *id.* ¶¶ 150-62.

The parties dispute the threshold First Amendment question: Whether plaintiffs have alleged that they intend to engage in conduct that is protected by the First Amendment. Defendants first argue that plaintiffs have not alleged that the conduct

---

alternative argument that Dr. Green has standing to challenge the DMCA provisions because his requested exemption was not fully granted in the 2015 triennial rulemaking process. *See* Pls.' Opp'n to Mot. to Dismiss, ECF No. 18 at 17-18. Additionally, defendants do not challenge plaintiffs' standing as to their facial First Amendment and APA claims vis-à-vis the Librarian of Congress's 2015 final rule, and it appears to the Court that plaintiffs have standing to make those claims.

they intend to engage in—circumventing access controls in violation of section 1201(a)(1)(A)—qualifies as protected speech or expressive conduct. Defs.' Mem. Supp., ECF No. 15-1 at 28. Rather, according to defendants, it is the activities that would take place after plaintiffs violate section 1201(a)(1)(A) that is constitutionally protected—specifically, informing manufacturers of security vulnerabilities, publishing a book about circumventing security systems, and creating a device that would allow copyrighted materials to be copied and altered in a high resolution format. *Id*. Therefore, according to defendants, circumventing access controls is not protected. Second, defendants argue that plaintiffs have not alleged that any item they wish to disseminate in violation of section 1201(a)(2) qualifies as protected speech. *Id*. at 29. To support that position, defendants principally rely on *Zemel v. Rusk*, 381 U.S. 1 (1965) and *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978). Defs.' Mem. Supp., ECF No. 15-1 at 28-29, 31-32, 41-42; Defs.' Reply, ECF No. 19 at 13. In the former case, Mr. Zemel sought to travel to Cuba to learn about the state of affairs in that country and to become a better informed citizen, but the Secretary of State refused to render the permission necessary for him to travel to Cuba. *Zemel*, 381 U.S. at 3-4. Although the Court acknowledged that the "Secretary's refusal to validate passports for Cuba renders less than wholly free the flow of information concerning

24

that country," it reasoned that no First Amendment right was implicated because the Secretary's refusal to validate the passports was "an inhibition of action." *Id.* at 16. The Court concluded that the "right to speak and publish does not carry with it the unrestrained right to gather information." *Id.* at 17. In *Houchins*, the Court held that no First Amendment right was implicated by a county policy barring the media from accessing a county jail where such access was requested "to prevent officials from concealing prison conditions from the voters and impairing the public's right to discuss and criticize the prison system and its administration." 438 U.S. at 8. The Court indicated that even if the First Amendment guarantees a right to communicate or publish, it does not guarantee a right to access information in the first place. *See id.* at 10-12. Accordingly, defendants assert that in these cases the Supreme Court made clear "that the subsequent *use* an individual intends to make of certain information does not confer any First Amendment right to *acquire* that information in the first place." Defs.' Mem. Supp., ECF No. 15-1 at 28.

Plaintiffs respond that they have alleged a viable First Amendment claim because they alleged that they: (1) "have created computer programs that are designed to circumvent access controls on certain copyrighted works" and "[s]ection 1201 burdens the right to create and use computer code," Pls.' Opp'n

25

to Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 18 at 27 (citing Compl., ECF No. 1 ¶¶ 132, 139); (2) "seek to gather factual information that they intend to share with the public" and "[s]ection 1201 burdens the right to gather information," *id.* at 28 (citing Compl., ECF No. 1 ¶¶ 78-82, 93, 98-106); (3) "seek to create new information that they intend to share with others" and "[s]ection 1201 burdens the right to create and share information," *id.* at 29 (citing Compl., ECF No. 1 ¶¶ 75, 90-91, 98-106); (4) "seek to disseminate the technological information they have developed" and "[s]ection 1201 burdens the right to publish speech," *id.* at 31 (citing Compl., ECF No. 1 ¶¶ 75, 110, 112-13); (5) "[m]any people want to receive the information [they] seek to offer" and "[s]ection 1201 burdens the right to receive information," *id.* at 31-32 (citing Compl., ECF No. 1 ¶¶ 90-91, 100-01, 107). Defendants concede that Dr. Green's intended publication of decryption code is protected by the First Amendment, but disagrees that any of the other activities in which plaintiffs want to engage are protected. Defs.' Reply, ECF No. 19 at 12-16.

The Court, as do defendants, *see id.* at 10 n.6, agrees with plaintiffs that the DMCA and its triennial rulemaking process burden the use and dissemination of computer code, thereby implicating the First Amendment. Although the question has not been addressed by the D.C. Circuit, as other courts have

26

explained, code "at some level contains expression, thus implicating the First Amendment." *United States v. Elcom, Ltd.*, 203 F. Supp. 2d 1111, 1126 (N.D. Cal. 2002). Code is speech precisely because, like a recipe or a musical score, it has the capacity to convey information to a human. *Universal Studios, Inc. v. Corley*, 273 F.3d 429, 448 (2d Cir. 2001); *see also Junger v. Daley*, 209 F.3d 481, 485 (6th Cir. 2000) ("Because computer source code is an expressive means for the exchange of information and ideas about computer programming, we hold that it is protected by the First Amendment."); *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 327 (S.D.N.Y. 2000) ("As computer code . . . is a means of expressing ideas, the First Amendment must be considered before its dissemination may be prohibited or regulated.").

Additionally, it is at least arguable that the DMCA and its triennial rulemaking process implicate the other First Amendment interests to which plaintiffs point. Despite *Zemel*'s holding that a law that inhibits access to information does not implicate the First Amendment, elsewhere the Court has put that holding under strain. *See, e.g.*, *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) ("[T]he First Amendment goes beyond protection of the press and self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw."). The

27

Court has also indicated that the activities of publishing and sharing information fall within the First Amendment's purview, *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011) ("An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which information might be used' or disseminated.") (quoting *Seattle Times Co. v. Rhineart*, 467 U.S. 20, 32 (1984)), as does the right to receive information and ideas, *see Kleindienst v. Mandel*, 408 U.S. 753, 762-63 (1972) ("'It is now well established that the Constitution protects the right to receive information and ideas.'") (quoting *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)). The course of conduct that plaintiffs intend to undertake——principally, using computer code to circumvent TPMs to access copyrighted materials and sharing that code with others, whether through books, articles, or otherwise, *see* Pls.' Opp'n, ECF No. 18 at 28-32——arguably implicates each of these various First Amendment rights, as the DMCA's prohibition on circumvention and trafficking appears to burden the accessing, sharing, publishing, and receiving of information, with "information" understood as both the code that does the circumventing and the TPM-protected material to which the circumventing code enables access. Accordingly, it is appropriate to consider plaintiffs' First Amendment challenges.

### 1. **Facial First Amendment Challenges to the Anti-Circumvention and Anti-Trafficking Provisions**

Plaintiffs claim that the DMCA's anti-circumvention and anti-trafficking provisions are unconstitutionally overbroad, Compl., ECF No. 1 ¶¶ 111-20, and that section 1201(a)(1)——the portion of the statute that prohibits circumvention but puts in place the triennial rulemaking process to exempt certain uses of certain classes of copyrighted works from the anti-circumvention provision——amounts to an unconstitutional prior restraint on speech. *Id.* ¶¶ 121-28.

"Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223 (1990) (citing *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798, and n.15 (1984).

### a. **Plaintiffs Fail to State an Overbreadth Claim**

Plaintiffs' overbreadth argument proceeds in two steps: Consistent with their as-applied fair use argument, *see infra* Section III.B.2, plaintiffs contend that fair use is constitutionally required, Pls.' Opp'n, ECF No. 18 at 45 n.15, and because the DMCA provisions burden a substantial number of possible fair uses of copyrighted materials that third parties

might make, those provisions are unconstitutionally overbroad, *id.* at 45-46. Defendants counter that section 1201(a) is not subject to an overbreadth claim because the challenged provisions do not directly regulate speech, Defs.' Mem. Supp., ECF No. 15-1 at 30-32, and that an overbreadth claim is inappropriate because plaintiffs do not adequately distinguish their as applied fair use arguments from their overbreadth arguments, *id.* at 33-34. Defendants also argue that even if the Court reaches the merits of the overbreadth claim, that claim still fails because the "DMCA's anti-circumvention and anti-trafficking provisions are plainly legitimate in the vast majority of applications." *Id.* at 34.

A First Amendment overbreadth challenge asserts that a law is written so broadly that it inhibits the constitutionally protected speech of third parties. *Taxpayers for Vincent*, 466 U.S. at 798. This type of facial First Amendment challenge "is an exception to ordinary standing requirements, and is justified only by the recognition that free expression may be inhibited almost as easily by the potential or threatened use of power as by the actual exercise of that power." *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988) (citing *Thornhill v. Alabama*, 310 U.S. 88, 97-98 (1940)). "[A] law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the

statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). Application of the overbreadth doctrine is "strong medicine" and should be employed "sparingly and only as a last resort," *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) because "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds," *Taxpayers for Vincent*, 466 U.S. at 801.

The Court is not persuaded that plaintiffs have alleged facts sufficient to state a claim that DMCA provisions are unconstitutionally overbroad because they "have failed to identify any significant difference" between their claim that the DMCA provisions are invalid on overbreadth grounds and their claim that those provisions are unconstitutional when applied to their proposed course of conduct. *See Taxpayers for Vincent*, 466 U.S. at 802. Plaintiffs' argument in both scenarios is that fair use is constitutionally required and that the DMCA inhibits fair use rights and thus is unconstitutional. Pls.' Opp'n, ECF No. 18 at 45 n.15, 45-46. Plaintiffs allege a number of potential fair uses that the DMCA burdens because the Librarian denied exemptions requested by third parties in the 2015 triennial rulemaking process. Compl., ECF No. 1 ¶ 39. Plaintiffs' as-

applied claims, however, arise out of the denials of exemptions either they requested, or that would have covered their conduct. *Id*. ¶¶ 78, 107, 108. Plaintiffs have not alleged that the DMCA "will have any different impact on third parties' interests in free speech than it has on" their own. *Taxpayers for Vincent*, 466 U.S. at 801; *see also Waters v. Barry*, 711 F. Supp. 1125, 1133 (D.D.C. 1989) ("[W]hen, as here, the plaintiffs are themselves engaged in protected activity—when the challenged statute would have no greater impact upon the rights of nonparties than it would have upon the rights of the parties before the Court—there is no need to employ a traditional overbreadth analysis."). The Court therefore need not reach the question of whether the "DMCA's anti-circumvention and anti-trafficking provisions are plainly legitimate in the vast majority of applications." Defs.' Mem. Supp., ECF No. 15-1 at 34.

Accordingly, defendants' motion to dismiss plaintiffs' overbreadth claim is **GRANTED** and that claim is **DISMISSED**.

### b. Plaintiffs Fail to State a Prior Restraint Claim

Plaintiffs allege that the triennial exemption process is a speech-licensing regime and, as such, it lacks "the safeguards the First Amendment requires," Compl., ECF No. 1 ¶ 122, because the rulemaking process "lacks definite standards," Pls.' Opp'n,

ECF No. 18 at 26, and because the process does not include the requirements described by *Freedman v. Maryland*, 380 U.S. 51 (1965)——namely, prompt licensing decisions, expeditious judicial review of those decisions, and a mandate that the censor go to court to obtain a judicial order permitting the suppression of speech, Pls.' Opp'n, ECF No. 18 at 33, 35 (citing *Freedman*, 380 U.S. at 58-60). Defendants counter that "the triennial rulemaking provided by section 1201(a)(1)(c) simply does not qualify as a prior restraint on speech" because: (1) it created exemptions based on class-by-class, as opposed to case-by-case, determinations, Defs.' Mem. Supp., ECF No. 15-1 at 40-41; (2) it "does not impose direct limitations on an individual's own speech," but rather "restrict[s] access to *someone else's* copyrighted materials," *id.* at 41; and (3) it is a mechanism for granting exemptions to an otherwise constitutional prohibition on circumvention, *id.* at 43-44. In any event, defendants argue, if the exemption regime can be contemplated under prior restraint doctrine, it is a content-neutral regime that satisfies intermediate scrutiny. *Id.* at 43-45.

The question at this juncture is whether plaintiffs have sufficiently alleged facts to state a facial claim that the exemption rulemaking process is an unconstitutional speech-licensing regime. A challenge to a law as a prior restraint on speech is a challenge to that law because it results in

33

censorship: "[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 758 (1988). Whether there is a prior restraint on speech depends on whether the licensor has "unconfined authority to pass judgment on the content of speech." *Thomas v. Chicago Park Dist*., 534 U.S. 316, 320 (2002).

The Court is not persuaded that plaintiffs have sufficiently alleged facts to state a claim that the exemption rulemaking process is an unconstitutional speech-licensing regime because plaintiffs have not alleged that the rulemaking process results in censorship through "suppressing disfavored speech or disliked speakers," *Plain Dealer Pub. Co.*, 486 U.S. at 759, nor that the rulemaking defendants are "pass[ing] judgment on the content of speech," *Thomas*, 534 U.S. at 320. Rather, plaintiffs allege that: (1) other applicants for exemptions in the 2015 rulemaking process provided evidence of various categories of protected and noninfringing speech activities that were "adversely affected" by section 1201, Compl., ECF No. 1 ¶ 39; (2) the circumvention ban "has an adverse effect on computer research like [Dr.] Green's," *id.* at 79; (3) "[f]ear of liability [and criminal prosecution] under [s]ection 1201

prevents [Dr.] Green from engaging in . . . research and publishing the results, *id.* ¶¶ 86-87; and (4) "[f]ear of prosecution under [s]ection 1201 deters [Mr.] Huang and Alphamax" from engaging in the activities they want to engage in, *id.* ¶¶ 109-10. Taking the facts alleged to be true and in the light most favorable to plaintiffs, they have not alleged that the rulemaking defendants, in declining to grant certain exemptions, have engaged in censorship based on what plaintiffs want to express, their viewpoint, or who they are.

Plaintiffs argue that they have stated a claim that the exemption process is an unconstitutional speech-licensing regime because it prohibits "a broad array of activities protected by the First Amendment," it "adversely affects legitimate activity," and "[t]he only way that citizens can overcome that ban is to obtain the Government's permission before they are allowed to engage in activities." Pls.' Opp'n, ECF No. 18 at 34. But plaintiffs' arguments provide no support for their claim because they do not argue that the exemption process results in censorship based on what they want to express, their viewpoint, or who they are. And as the Court will explain in detail, the DMCA and its rulemaking process cannot be deemed content-based. *See infra* Section III.B.2.a.

Plaintiffs contend that the alleged lack of safeguards in the rulemaking process enables the rulemaking defendants to

"routinely use their discretion to favor some lawful speech over others." Pls.' Opp'n, ECF No. 18 at 34. Defendants respond that "[t]he exemption determination, as set forth in the statute, is not focused on the speech of the particular individual who proposed the exemption; rather, the Librarian must determine whether the type of proposed use is in fact noninfringing under copyright law, and the factors set forth in section 1201(a)(1)(C) have to do with the general market for copyrighted works and the availability of those works for noninfringing uses." Defs.' Reply, ECF No. 19 at 22. The Court agrees with defendants. Plaintiffs have not alleged facts indicating that the rulemaking defendants' decision of whether to grant exemptions in the 2015 rulemaking process was based on the content of what those who sought exemptions wanted to say, their viewpoint, or who they are. *See generally* Compl., ECF No. 1. The allegations here are therefore entirely distinguishable from speech licensing regimes where the scheme created a prior restraint based on the content of what the speaker wanted to express. *See e.g., Plain Dealer Pub. Co.*, 486 U.S. at 758, 759 (ordinance creating a permitting scheme for the placement of newsracks on public property where decision of whether to approve the permit could be based on the content of the newspaper); *Freedman v. Maryland*, 380 U.S. 51, 58 (1965)

36

(statute requiring the submission of motion pictures to censor before they could be exhibited).

Because plaintiffs have failed to allege facts to state a facial claim that the exemption rulemaking process has resulted in censorship based on "the content or viewpoint of speech by suppressing disfavored speech or disliked speakers," *Plain Dealer Pub. Co.*, 486 U.S. at 758, the Court need not reach what procedural protections would be required if the process were a speech-licensing regime.

Accordingly, defendants' motion to dismiss plaintiffs' prior restraint claim is **GRANTED** and that claim is dismissed.

### 2. As-Applied First Amendment Challenges to the Anti-Circumvention and Anti-Trafficking Provisions

Plaintiffs allege that the anti-circumvention and anti-trafficking provisions are unconstitutional as applied to Dr. Green's proposed circumvention and trafficking for purposes of his security research and as applied to Mr. Huang's and Alphamax's proposed circumvention and trafficking for purposes of their creation, use, and dissemination of the NeTVCR. Compl., ECF No. 1 ¶¶ 129-49. Defendants argue that plaintiffs have failed to state an as-applied challenge that survives intermediate scrutiny. Defs.' Mem. Supp., ECF No. 15-1 at 45-51. For the reasons explained below, the Court is persuaded that

plaintiffs have adequately alleged as-applied First Amendment claims.

**a.    The Anti-Circumvention and Anti-Trafficking Provisions of the DMCA Trigger Intermediate Scrutiny**

To determine whether plaintiffs have alleged facts sufficient to show that section 1201, as applied to their intended conduct, violates the First Amendment, it is necessary to determine what level of scrutiny applies to the intended conduct. The level of scrutiny depends on whether the relevant restriction is content-neutral or content-based. A content-based restriction triggers strict scrutiny, "which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) (internal quotation marks omitted). A content-neutral restriction, on the other hand, triggers intermediate scrutiny, which only requires the government to prove that the restriction serves a substantial governmental interest; that the interest served is unrelated to the suppression of free expression; and that the restriction does not burden substantially more speech than is necessary to further the government's legitimate interest. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994) (citing *Ward v. Rock Against*

38

*Racism*, 491 U.S. 781, 799 (1989); *United States v. O'Brien*, 391
U.S. 367, 377 (1968)).

The Court is persuaded that the restrictions on speech here
are content-neutral, thereby triggering intermediate, rather
than strict, scrutiny. Even when conduct or activity is
sufficiently expressive to be appropriately designated as
"speech" that implicates First Amendment rights, that does not
mean that that expressive activity cannot be bifurcated into
separate speech and non-speech components. *See O'Brien*, 391 U.S.
at 376 ("[W]hen 'speech' and 'nonspeech' elements are combined
in the same course of conduct, a sufficiently important
governmental interest in regulating the nonspeech element can
justify incidental limitations on First Amendment freedoms.").
The expressive activity in which plaintiffs intend to engage
that runs afoul of the DMCA's anti-circumvention and anti-
trafficking provisions——the use of code to circumvent TPMs and
the dissemination of that code to others——involves these
separate speech and non-speech components and, critically, the
DMCA targets only the non-speech component.

The Court of Appeals for the Second Circuit in *Universal
City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001),
cogently explained the distinction between the speech and non-
speech components of expressive activity in the DMCA context.
The court explained that code capable of circumventing TPMs is

39

purely functional (*i.e.*, non-speech) when it communicates a decryption message through a computer. *Corley*, 273 F.3d at 451, 454. And because circumventing (the concern of section 1201(a)(1)(A)) is so closely linked with trafficking in code capable of circumvention (the concern of section 1201(a)(2)), the functional, non-speech aspect of code is implicated by both of the DMCA's prohibitions. *See id.* at 451-52 (citing *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 331-32 (S.D.N.Y. 2000)). In other words, because trafficking assuredly results in circumvention, it is appropriate to consider the functional, non-expressive use of code in the context of both the anti-circumvention and anti-trafficking provisions. The court then held that the DMCA and an injunction issued pursuant to its anti-trafficking provisions prohibiting the posting of a specific code capable of circumvention——DeCSS——was content-neutral because only the functional, non-speech component of the code was targeted:

> [T]he target of the posting provisions of the injunction——DeCSS——has both a nonspeech and a speech component, and . . . the DMCA, as applied to the Appellants, and the posting prohibition of the injunction target only the nonspeech component. Neither the DMCA nor the posting prohibition is concerned with whatever capacity DeCSS might have for conveying information to a human being, and that capacity, as previously explained, is what arguably creates a speech component of the decryption code. The DMCA and the posting prohibition are applied to DeCSS solely

40

> because of its capacity to instruct a computer
> to decrypt CSS. That functional capability is
> not speech within the meaning of the First
> Amendment.

*Id.* at 454. Because the DMCA targeted only the non-speech
component of the expressive activity of using and disseminating
code and thereby only incidentally burdened the speech
component——the code's ability to communicate to a human——the
restriction was deemed content-neutral. *See id.*

The same analysis is warranted in this case. As concerns
plaintiffs' First Amendment right to use and disseminate
computer code, the appropriate analysis is indistinguishable
from that in *Corley* and from two district court decisions that
followed *Corley*. *See 321 Studios v. Metro Goldwyn Mayer Studios,
Inc.*, 307 F. Supp. 2d 1085, 1101 (N.D. Cal. 2004) ("This Court
comes to the same conclusion as the courts who previously
considered this question, and determines that intermediate
scrutiny is the appropriate standard under which the DMCA should
be analyzed."); *United States v. Elcom Ltd.*, 203 F. Supp. 2d
1111, 1128-29 (N.D. Cal. 2002) ("Divorcing the function from the
message . . . is precisely what the courts have done in other
contexts . . . . Accordingly, the court concludes that
intermediate scrutiny, rather than strict scrutiny, is the
appropriate standard to apply."). Thus, because the anti-
circumvention and anti-trafficking provisions target the

functional, non-speech component of plaintiffs' use and dissemination of code and only incidentally burden the ability of the code to express a message to a human (*i.e.*, the "speech" component), those provisions are properly deemed content-neutral. Those provisions are also properly deemed content-neutral even when plaintiffs' various other arguably-burdened First Amendment rights are considered. Those expressive rights—— the rights to gather, share, publish, and receive information—— are only incidentally burdened for the same reason the right to use and disseminate expressive code is only incidentally burdened: The DMCA provisions target the functional, non-speech capacity of code to communicate messages to a computer. Accordingly, no matter which of plaintiffs' First Amendment rights is implicated, the DMCA provisions are appropriately deemed content-neutral.

The Court is not persuaded by plaintiffs' arguments to the contrary. Plaintiffs argue that the anti-trafficking provision bans speech about "the particular subject matter . . . of circumventing TPMs, while allowing speech on every other subject matter," thereby making it a content-based restriction. Pls.' Opp'n, ECF No. 18 at 38. But this argument was considered and rejected in *Corley* and *Elcom* and should be here as well for the reason explained by those courts and explained above: It overlooks that the DMCA targets only the non-speech component of

plaintiffs' proposed expressive activity and therefore cannot be considered a content-based restriction. *Corley*, 273 F.3d at 454; *Elcom*, 203 F. Supp. 2d at 1128-29. The code's functional capability——the target of the DMCA provisions——"is not speech within the meaning of the First Amendment." *Corley*, 273 F.3d at 454.

Plaintiffs also argue that the DMCA's permanent exemptions and the criteria that the DMCA directs the Librarian of Congress to consider when deciding upon exemptions under the triennial rulemaking process draw categorical distinctions and thus give rise to a content-based statute. Pls.' Opp'n, ECF No. 18 at 38-39. But that argument fails because it overlooks that what the DMCA directly targets is the functional, non-speech component of expressive activity. That functional capability is not speech. *Corley*, 273 F.3d at 454. Even if the statute and its rulemaking process use certain categorical distinctions——for instance, permanently exempting certain kinds of "reverse engineering" and "encryption research" but not other activities from the reach of the anti-circumvention and anti-trafficking provisions, Pls.' Opp'n, ECF No. 18 at 38 (citing 17 U.S.C. §§ 1201(f)-(g)), and directing the Librarian to consider the impact that the prohibition on circumvention has "on criticism, comment, news reporting, teaching, scholarship, or research" when deciding upon triennial exemptions, *id.* (citing 17 U.S.C.

§ 1201(a)(1)(C)(iii)), those categorical distinctions are overlaid on a regime that is regulating something that "is not speech within the meaning of the First Amendment," *Corley*, 273 F.3d at 454. In other words, plaintiffs identify various categorical distinctions that arise in this statutory and rulemaking context, but those categorical distinctions are ultimately concerned with the functional, non-speech capability of code to circumvent TPMs. Identifying categorical distinctions does not convert a regulation of non-speech into a content-based regulation of speech. Accordingly, because the target of the DMCA is the functional, non-speech component of the expressive activity in which plaintiffs intend to engage, the DMCA and the rulemaking process remain content-neutral regulations with only an incidental burden on the speech component of plaintiffs' proposed expressive activity.

The conclusion that the various categorical distinctions in play here do not give rise to a content-based statute and rulemaking process is consistent with *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), which plaintiffs contend supports their position. Pls.' Opp'n, ECF No. 18 at 38. There, the Supreme Court made clear that a court is required "to consider whether a regulation of speech on its face draws distinctions based on the message a speaker conveys." 135 S. Ct. at 2227 (internal quotation marks omitted). If the regulation is content-based on

44

its face, it is "subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 2228 (internal quotation marks omitted). If the regulation is not content-based on its face, it can still be deemed content-based if it was enacted because of disagreement with the message that the regulated speech conveys. *Id.* at 2227. Here, the DMCA and its rulemaking process cannot be deemed content-based at either step of the *Reed* inquiry. First, even though categorical distinctions appear on the face of the statute, those categorical distinctions are overlaid on a regulation of the non-speech component of expressive activity and thus are not the sort of facial subject matter- or message-related distinctions that make a regulation content-based; that is, the distinctions are not "based on the message a speaker conveys." *Id.* Second, as other courts have persuasively concluded, with the DMCA and its triennial rulemaking, "Congress was not concerned with suppressing ideas" but rather was concerned with code's functional ability to circumvent TPMs. *Elcom*, 203 F. Supp. 2d at 1128.

45

### b. Defendants Have Failed to Meet Their Burden of Showing that the Anti-Circumvention and Anti-Trafficking Provisions Do Not Burden Substantially More Speech than Is Necessary

As content-neutral regulations of speech, the anti-circumvention and anti-trafficking provisions trigger intermediate, rather than strict, scrutiny. Subject to intermediate scrutiny, the anti-circumvention and anti-trafficking provisions will be upheld so long as they further a substantial governmental interest; the interest furthered is unrelated to the suppression of free expression; and the provisions do not burden substantially more speech than is necessary to further the government's interest. *Turner Broad. Sys., Inc.* 512 U.S. at 662 (citing *Ward*, 491 U.S. at 799; *O'Brien*, 391 U.S. at 377). "To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government's interest. 'Rather, the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Turner*, 512 U.S. at 662 (quoting *Ward*, 491 U.S. at 799). And "the Government . . . bears the burden of showing that the remedy it has adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id*. at 665 (quoting *Ward*, 491 U.S. at 799).

46

Plaintiffs do not dispute that the DMCA is aimed at furthering a substantial interest and that that interest is unrelated to the suppression of free expression. *See* Pls.' Opp'n, ECF No. 18 at 42-44. Congress enacted the DMCA in large part because of substantial fears of "massive piracy" of copyrighted works in the digital environment. S. Rep. at 8. Thus, the government's interest is in "preventing trafficking in devices and technologies that would undermine the access controls that protect copyrighted works," Defs.' Mem. Supp., ECF No. 15-1 at 50, and that interest is "unquestionably substantial" and, moreover, "that interest is unrelated to the suppression of free expression." *Corley*, 273 F.3d at 454.

With only the third prong of the applicable test in dispute, plaintiffs argue that the relevant DMCA provisions burden substantially more speech than is necessary to further the government's interest. *See* Pls.' Opp'n, ECF No. 18 at 43-44. Defendants disagree, arguing that this prong is

> satisfied because the anti-trafficking restriction in § 1201(a)(2) would be less effective if individuals and companies such as Plaintiffs were allowed to disseminate decryption technologies, even if they intended the dissemination to serve a limited purpose. After all, if [Dr.] Green were able to publish decryption code as part of a publication discussing his security research, there would be no guarantee that the recipients of the code would similarly restrict their use of the code to security research or other likely noninfringing uses. Similarly, even if [Mr.]

> Huang and Alphamax intend that the NeTVCR device they wish to commercially distribute would be used by others for noninfringing purposes, once the device was available, there would be a far higher risk that others might use the device in ways that would facilitate copyright infringement, including piracy. Such results would undermine the effectiveness of access controls, thus interfering with the online market for copyrighted works by deterring copyright owners from making works available online at all.

Defs.' Mem. Supp., ECF No. 15-1 at 50.

Plaintiffs respond that this assertion is unsupported by any factual allegations and is illogical. Pls.' Opp'n, ECF No. 18 at 43. First, plaintiffs point out that in certain manifestations of Dr. Green's research or in many of the NeTVCR's applications, the risk of digital piracy is minimal. Pls.' Opp'n, ECF No. 18 at 43. According to plaintiffs, there is no online marketplace for certain "subjects of Dr. Green's research" and that, as concerns NeTVCR, "many applications" relate to "physical media played via an HDCP-enabled device, which would have no effect on copyright owners' decision to make works available online." *Id.* at 43. Defendants do not respond directly to this argument, Defs.' Reply, ECF No. 19 at 27, pivoting instead to rebutting plaintiffs' argument that the various permanent exemptions to the anti-circumvention and anti-trafficking provisions are "insufficient to accommodate fair use and protected speech," which demonstrates that those provisions

48

are not narrowly tailored, Pls.' Opp'n, ECF No. 18 at 43-44, pointing to their argument responding to plaintiffs' claim that the statute is constitutionally overbroad, Defs.' Reply, ECF No. 19 at 27.

At this juncture, the question before the Court is whether, assuming the facts alleged in the complaint to be true and taken in the light most favorable to plaintiffs, plaintiffs have alleged facts sufficient to show that the DMCA provisions, as applied to their intended conduct, burdens substantially more speech than is necessary to further the government's legitimate interests. And it is the government's burden to demonstrate that the provisions do not burden substantially more speech than is necessary to further the government's legitimate interest. The Court is not persuaded that the government has met this burden.

As to section 1201(a)(1)(A), defendants have conceded that Dr. Green's intended publication of decryption code is protected by the First Amendment. Defs.' Reply, ECF No. 19 at 12-16. Although it is defendants' burden, they have failed to meet that burden because they have not explained why the provision does not burden substantially more speech than is necessary to further the government's legitimate interests. *See* Defs.' Mem. Supp., ECF No. 15-1 at 45-47; Defs.' Reply, ECF No. 19 at 24-29.

As to section 1201(a)(2), the government asserts that "the anti-trafficking restriction in [section] 1201(a)(2) would be less effective if individuals and companies such as [p]laintiffs were allowed to disseminate decryption technologies, even if they intended the dissemination to serve a limited purpose," and that they "would undermine the effectiveness of access controls, thus interfering with the online market for copyrighted works by deterring copyright owners from making works available online at all." Defs.' Mem. Supp., ECF No. 15-1 at 50. This assertion falls far short of demonstrating that "the remedy it has adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Turner,* 512 U.S. at 665 (quoting *Ward*, 491 U.S. at 799). At this juncture, none of the facts supporting the asserted risks identified by the government, *see* Defs.' Mem. Supp., ECF No. 15-1 at 50, are in the record in this case. Accordingly, taking the facts alleged in the complaint to be true and affording plaintiffs the benefit of all reasonable inferences, plaintiffs have alleged facts sufficient to state a claim that section 1201, as applied to their intended conduct, violates the First Amendment.[7] Because

_____

[7] In another variant of an as-applied challenge, plaintiffs also allege that the Librarian of Congress violated the First Amendment when she failed to grant Dr. Green's exemption request in full and when she failed to grant "exemptions that would have protected [Mr.] Huang and Alphamax's creation and use of NeTVCR" in the most recent triennial exemption rulemaking. Compl., ECF

plaintiffs have alleged facts sufficient to state a claim that

section 1201, as applied to their intended conduct, violates the

First Amendment, the Court need not, at this juncture, reach the

question of whether the anti-circumvention and anti-trafficking

provisions in the DMCA run afoul of the First Amendment because

plaintiffs have alleged that they would make non-infringing uses

of content protected by section 1201. Compl., ECF No. 1 ¶¶ 78,

100, 106, 109. Accordingly, defendants' motion to dismiss

plaintiffs' as-applied claims is **DENIED**.

## C.    The Triennial Rulemaking Process is Not Subject to the Administrative Procedure Act

Plaintiffs claim that the Library of Congress, the

Librarian of Congress, the Copyright Office, and the Register of

Copyrights violated the APA by denying "portions of the

exemptions that apply to [Dr.] Green's security research" and

---

No. 1 ¶¶ 151-52, 157-58. Defendants argue that these First
Amendment challenges to the Librarian's most recent rulemaking
should be dismissed because the anti-circumvention provision is
constitutional as applied to plaintiffs, so any denial of an
exemption to that provision must also be constitutional. Defs.'
Mem. Supp., ECF No. 15-1at 51. Plaintiffs offer no rejoinder to
defendants' argument that the Librarian's denial of exemptions
did not violate the First Amendment. Accordingly, defendants'
unopposed argument can be treated as conceded. *See Hopkins v.
Women's Div., General Bd. Of Global Ministries*, 238 F. Supp. 2d
174, 178 (D.D.C. 2002) ("It is well understood in this Circuit
that when a plaintiff files an opposition to a motion to dismiss
addressing only certain arguments raised by the defendant, a
court may treat those arguments that the plaintiff failed to
address as conceded.") (citing *FDIC v. Bender*, 127 F.3d 58, 67-
68 (D.C. Cir. 1997)).

"the exemptions that would have applied to [Mr.] Huang and Alphamax's creation and use of NeTVCR" during the 2015 triennial exemption rulemaking. Compl., ECF No. 1 ¶¶ 154, 161. An APA claim against the Copyright Office and the Register of Copyrights, however, does not lie here——a conclusion that plaintiffs do not seriously contest. *See* Pls.' Opp'n, ECF No. 18 at 52 n.17. Claims under the APA can only challenge "final agency action." 5 U.S.C. § 704. For an agency action to be "final," "the action must mark the consummation of the agency's decisionmaking process" and, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted). Because it is the Librarian of Congress, who on behalf of the Library of Congress, "consummates" the triennial exemptions to the DMCA's circumvention prohibition and is only obligated to consider "the *recommendation* of the Register of Copyrights" in that exemption process, 17 U.S.C. § 1201(a)(1)(C) (emphasis added), the challenged "final" action at issue here is an action taken by the Librarian and Library of Congress. Accordingly, the statutory provision subjecting the actions of the Register of Copyrights to the APA, *see* 17 U.S.C. § 701(e), does not permit an APA claim against the Copyright Office or the Register of

an APA claim against the Copyright Office or the Register of

Copyrights for agency action taken pursuant to the DMCA's triennial rulemaking process.

Thus, plaintiffs' APA claims are restricted to claims against the Library and Librarian of Congress. Defendants contend that these claims still are not viable, arguing that the APA claims should be dismissed for lack of subject matter jurisdiction because the Library of Congress is not an "agency" as that term is defined in the APA and, accordingly, the APA's waiver of sovereign immunity does not apply to the Librarian's exemption rulemaking. Defs.' Mem. Supp., ECF No. 15-1 at 51. Plaintiffs counter that the APA excludes "the Congress" from its definition of "agency," but the Library of Congress has a "hybrid character" such that in the context of the DMCA's triennial rulemaking it is an Executive Branch agency subject to review under the APA. Pls.' Opp'n, ECF No. 18 at 50-51. Plaintiffs further contend that not understanding the Library to be an Executive Branch agency in connection with its rulemaking authority "would raise grave constitutional questions." *Id.* at 52-53.

The APA waives the sovereign immunity of the United States for claims "in a court of the United States seeking relief other than money damages" when those claims are made against "an agency or an officer or employee thereof." 5 U.S.C. § 702. "The APA defines 'agency' as 'each authority of the Government of the

53

67

United States, whether or not it is within or subject to review
by another agency, but does not include——(A) the Congress;
(B) the courts of the United States; (C) the governments of the
territories or possessions of the United States; (D) the
government of the District of Columbia.'" *Franklin v.
Massachusetts*, 505 U.S. 788, 800 (1992) (quoting 5 U.S.C.
§§ 701(b)(1), 551(1)).

Defendants contend that since the Library of Congress is
part of "the Congress," it falls within "the Congress['s]"
exemption from the APA's definition of "agency," pointing to
abundant authority that would seem to support that conclusion.
Defs.' Mem. Supp., ECF No. 15-1 at 51-52. In *Clark v. Library of
Congress*, 750 F.2d 89 (D.C. Cir. 1984), the court observed that
"the Library of Congress is not an 'agency' as defined under the
[APA]" in the context of determining that the plaintiffs relief
in the form of damages from the Librarian was barred by
sovereign immunity, but not certain non-monetary relief. 750
F.2d at 102-03. (citing 5 U.S.C. § 701(b)(1)(A)). And in *Ethnic
Employees of Library of Congress v. Boorstin*, 751 F.2d 1405
(D.C. Cir. 1985), the court likewise observed "that the Library
is not an agency under the Administrative Procedure Act." 751
F.2d at 1416 n.15. In *Boorstin*, the court explained that the
Supreme Court in *Kissinger v. Reporters Committee for Freedom of
the Press*, 445 U.S. 136 (1980) had "noted that the Library of

54

Congress is not an agency under the Freedom of Information Act,"
and because the Freedom of Information Act incorporates the
APA's definition of "agency," it follows that the Library is not
an "agency" under the APA. 751 F.2d at 1416 n.15 (citing
*Kissinger*, 445 U.S. at 145); *accord Terveer v. Billington*, 34 F.
Supp. 3d 100, 122 n.10 (D.D.C. 2014).

Plaintiffs, however, note that both *Clark* and *Boorstin* were
cases involving the Library in its capacity as an employer,
Pls.' Opp'n, ECF No. 18 at 51, and instead point to the more
recent D.C. Circuit case *Intercollegiate Broadcasting System,
Inc. v. Copyright Royalty Board*, 684 F.3d 1332 (D.C. Cir. 2012)
for the proposition that the Library of Congress has a "hybrid
character" such that when it performs certain functions it is
part of the Legislative Branch, but when it performs certain
other functions it is part of the Executive Branch. Pls.' Opp'n
at 51 (citing 684 F.3d at 1341-42; *Eltra Corp. v. Ringer*, 579
F.2d 294, 301 (4th Cir. 1978)). In *Intercollegiate*, the court
needed to determine whether the Librarian is a "Head of
Department" within the meaning of the Constitution's
Appointments Clause. 684 F.3d at 1341. The court acknowledged
that "Departments" in the Appointments Clause "are themselves in
the Executive Branch or at least have some connection with that
branch," *id.* (citing *Buckley v. Valeo*, 424 U.S. 1, 127 (1976)),
and that the D.C. Circuit had previously referred to the Library

55

of Congress as a "congressional agency." *Id.* (citing *Keeffe v. Library of Congress*, 777 F.2d 1573, 1574 (D.C. Cir. 1985)). Even so, the court concluded that "the Library of Congress is a freestanding entity that clearly meets the definition of "Department" that performs a range of functions, some of which are primarily for legislative purposes, because the Librarian "is appointed by the President with advice and consent of the Senate and is subject to unrestricted removal by the President," *id.* (internal citations omitted), and because the Library's specific functions at issue in the case——"to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case," *id.* at 1342——"are ones generally associated in modern times with executive agencies rather than legislators," *id.* Accordingly, the court concluded that "[i]n this role the Library is undoubtedly a component of the Executive Branch." *Id.* (internal quotation marks omitted).

Defendants respond that the question of "whether, for constitutional purposes, the Library operates as an executive agency"——the question addressed in *Intercollegiate*——is "entirely separate" from the question of whether the Library is part of "the Congress" that is exempt from the APA's definition of "agency." Defs.' Reply, ECF No. 19 at 30. Defendants note that the term "Congress" in the APA is not ambiguous, nor is there any dispute that the Library is part of Congress. *Id.* Defendants

also point out that "when Congress intends to subject actions by a Library component to APA review, it does that expressly by enacting statutory language to that effect." *Id.* (citing 17 U.S.C. § 701(e)).

Plaintiffs further argue that Congress made the DMCA's triennial rulemaking process subject to APA review when it enacted the DMCA, pointing to the House Commerce Committee's Report on the DMCA that states that the rulemaking proceeding should be "consistent with the requirements of the Administrative Procedure[] Act," Pls.' Opp'n, ECF No. 18 at 44. (citing Commerce Comm. Rep. at 37); as well as President Clinton's statement upon signing the DMCA that "the Copyright Office is, for constitutional purposes, an executive branch entity," *id.* (citing President William J. Clinton, Statement on Signing the Digital Millennium Copyright Act, (Oct. 28, 1998)); and the fact that the final actions of the Register of Copyrights, who works closely with the Librarian in the DMCA rulemaking, are subject to APA review, *id.* (citing 17 U.S.C. § 701(e)). Defendants respond that the fact that Congress used express statutory language to make the Register's final actions subject to APA review indicates that by not using similar statutory language in the DMCA as to the Librarian's final exemption rulemaking actions, Congress intended to shield that exemption rulemaking from APA review. Defs.' Mem. Supp., ECF No.

15-1 at 52-53; Defs.' Reply, ECF No. 19 at 30. Defendants also argue that because the D.C. Circuit "held the APA did not apply" when it considered another regulatory structure that involved the Librarian acting on a recommendation of the Register of Copyrights, that same conclusion is warranted in this case. Defs.' Mem. Supp., ECF No. 15-1 at 53-54 (citing *Nat'l Ass'n of Broadcasters v. Librarian of Congress*, 146 F.3d 907, 913, 919 (D.C. Cir. 1998).

*Intercollegiate* suggests that the Court should consider the question of whether in its role in the DMCA's triennial rulemaking process "the Library is undoubtedly a 'component of the Executive Branch,'" *id*. at 1341 (citing *Free Enterprise Fund*, 130 S. Ct. at 3163), and if so, whether that affects the exclusion of the Library as part of "Congress" as an agency subject to the APA. The rulemaking process empowers the Librarian to, among other things, determine whether the anti-circumvention provision will, or is likely to, adversely affect a person's ability to make noninfringing uses of a class of copyrighted works. *See* 17 U.S.C. § 1201(a)(1)(C). Just as the Library in its role in *Intercollegiate* in promulgating copyright regulations was "undoubtedly a 'component of the Executive Branch,'" so here too is it arguably a component of the Executive Branch in its role in the triennial rulemaking process.

However, plaintiffs have pointed to nothing in the text of the APA, its legislative history, or legal precedent that suggests that Congress did not intend to include the Library of Congress when engaging in Executive Branch functions in "the Congress" that it exempted from the APA's definition of "agency." The fact that the legislative history of the DMCA indicates that Congress intended the rulemaking proceedings to be "consistent" with the APA does not persuade the Court that Congress intended the APA to apply to the DMCA because Congress has demonstrated that when it intends to make a Library component subject to APA review, it does so through express statements in legislative text, not arguably ambiguous statements in legislative history. *See* 17 U.S.C. § 701(e) ("Except as provided by section 706(b) and the regulations issued thereunder, all actions taken by the Register of Copyrights under this title are subject to the provisions of the Administrative Procedure Act of June 11, 1946, as amended (c. 324, 60 Stat. 237, title 5, United States Code, Chapter 5, Subchapter II and Chapter 7"). Furthermore, President Clinton's signing statement says nothing at all about whether the APA should apply to the DMCA. Finally, since the DMCA was enacted in 1998, the Library, while adopting certain APA standards and procedures, has not understood the triennial rulemaking process to be subject to the APA. *See* U.S. COPYRIGHT OFFICE, SECTION 1201 OF

TITLE 17, A REPORT OF THE REGISTER OF COPYRIGHTS at 106, 108 (June 2017)
(noting that the Librarian's determinations are not subject to
challenge under the APA because "[a]lthough the Register of
Copyrights issues a recommendation based on the information
generated in the rulemaking proceeding, it is the Librarian who
adopts the final rule [and] [t]he Library of Congress is not
subject to the APA.);[8] *see also N.L.R.B. v. Canning*, 573 U.S.
513, 525 (2014) (noting that "the longstanding 'practice of the
government' . . . is an important interpretive factor)
(citations omitted)).

Plaintiffs argue if the Library is "undoubtedly" a
"component of the Executive Branch" when it promulgates rules
but is deemed "the Congress" under the APA, then this creates a
separation of powers issue because Congress is
unconstitutionally exercising Executive Branch power when DMCA
exemptions are promulgated. *Id.* 51-53 (citing *Metro. Washington
Airports Auth. V. Citizens for the Abatement of Aircraft Noise,
Inc.*, 501 U.S. 252, 299-300 (1991); *Springer v. Philippine
Islands*, 277 U.S. 189, 202 (1928)). Plaintiffs urge the Court to
avoid this constitutional problem by understanding the Library

---

[8]  In deciding a motion to dismiss, "a Court may take judicial
notice of historical, political, or statistical facts, or any
other facts that are verifiable with certainty." *Youkelsone v.
FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012) (citing *Mintz v.
FDIC*, 729 F. Supp. 2d 276, 278 n.2 (D.D.C. 2010)). Accordingly,
the Court **GRANTS** [20] motion to take judicial notice.

to be "an 'agency' for the purposes of the APA when it promulgates rules under [s]ection 1201." *Id.* at 53. Plaintiffs have not, however, challenged the DMCA on the grounds that its structure violates separation of powers. *See generally* Compl., ECF No. 1. Rather, plaintiffs ask this Court to alter the meaning of "Congress" as an "agency" in the APA because of an alleged separation of powers problem not alleged in the Complaint and in an entirely different statute. The Court has no basis to do so.

Accordingly, because the Library of Congress is not an "agency" as that term is defined in the APA, and because Congress did not expressly apply the APA to the DMCA, defendants' motion to dismiss plaintiffs' APA claims is **GRANTED** and those claims are **DISMISSED.**

## IV. Conclusion

For the reasons stated above, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.** An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **June 27, 2019**

61

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
MATTHEW GREEN, *et al.*, )
)
Plaintiffs, )
)
v. ) Civil Action No. 16-1492 (EGS)
)
U.S. DEPARTMENT OF JUSTICE, )
*et al.*, )
)
Defendants. )
_____)

## ORDER

For the reasons stated in the accompanying Memorandum
Opinion, defendants' motion to dismiss is **GRANTED IN PART and
DENIED IN PART**; and it is hereby

**ORDERED** that plaintiffs' overbreadth claim is **DISMISSED**;
and it is further

**ORDERED** that plaintiffs' prior restraint claim is
**DISMISSED**; and it is further

**ORDERED** that defendants' motion to dismiss plaintiffs' as-
applied claims is **DENIED**; and it is further

**ORDERED** that plaintiffs' Administrative Procedure Act
claims are **DISMISSED**; and it is further

**ORDERED** that plaintiffs' motion to take judicial notice is

**GRANTED.**

     **SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
           **United States District Judge**
           **June 27, 2019**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
MATTHEW GREEN, *et al.*,            )
                                    )
            Plaintiffs,             )
                                    )
    v.                              ) Civil Action No. 16-1492 (EGS)
                                    )
U.S. DEPARTMENT OF JUSTICE,         )
*et al.*,                           )
                                    )
            Defendants.             )
_____     )

## MEMORANDUM OPINION

Plaintiffs Dr. Matthew Green, Dr. Andrew Huang, and Alphamax, LLC seek to engage in certain activities for which they fear they will be prosecuted under the "anti-circumvention" provision and one of the "anti-trafficking" provisions of the Digital Millennium Copyright Act ("DMCA"). Accordingly, Plaintiffs brought a pre-enforcement challenge to those provisions of the DMCA. Following this Court's resolution of Defendants' Motion to Dismiss, *see Green v. U.S. Dep't of Justice*, 392 F. Supp. 3d 68 (D.D.C. 2019); the remaining claims are Plaintiffs' as-applied First Amendment Challenges to the DMCA and the remaining Defendants are the United States Department of Justice and Attorney General Merrick Garland.[1]

_____

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes as Defendant the United States Attorney General, Merrick Garland, for the former United States Attorney General William Barr.

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction, *see* Mot. for Prelim. Inj. ("Mot."), ECF No. 30-1; in which Plaintiffs request, among other things, that the Court enjoin Defendants from enforcing: (1) the DMCA's criminal prohibitions on trafficking against Dr. Green; and (2) the DMCA's criminal prohibitions on circumvention and trafficking against Dr. Huang and Alphamax. Upon consideration of Plaintiffs' motion, the response and reply thereto, the submissions of amici, the applicable law, and the entire record, Plaintiffs' Motion for Preliminary Injunction is **DENIED.**

## I.    Background

### A.    Statutory Background

Congress enacted the DMCA, 17 U.S.C. § 1201 *et seq.*, in 1998 to implement the World Intellectual Property Organization Copyright Treaty and the World Intellectual Property Organization Performances and Phonograms Treaty. S. Rep. No. 105-190, at 2 (1998). In implementing those treaties via the DMCA, Congress was primarily responding to "the ease with which digital works can be copied and distributed worldwide virtually instantaneously." *Id.* at 8. In short, Congress was concerned with the pirating of copyrighted works in the digital world. Three of the DMCA's central provisions respond directly to that concern.

2

The first——section 1201(a)(1)(A)——is an "anti-circumvention" provision. It prohibits a person from "circumvent[ing] a technological measure that effectively controls access to a work protected under [Title 17, governing copyright]." 17 U.S.C. § 1201(a)(1)(A). A "technological measure"——often referred to as a "technological protection measure" ("TPM"), Compl., ECF No. 1 ¶ 18——"effectively controls access to a work" if it, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work," 17 U.S.C. § 1201(a)(3)(B). To "circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). Section 1201(a)(1)(A) thus prohibits persons from bypassing technological barriers put in place to prevent access to copyrighted works.

The second and third provisions——sections 1201(a)(2) and 1201(b)——are "anti-trafficking provisions." That is, instead of prohibiting the circumvention of TPMs, they prohibit the dissemination of the technological means that enable such circumvention. The anti-trafficking provision at issue in this case, section 1201(a)(2), prohibits, in relevant part, a person

3

from "manufactur[ing], import[ing], offer[ing] to the public,
provid[ing], or otherwise traffic[king] in any technology,
product, service, device, component, or part thereof, that is
primarily designed or produced for the purpose of circumventing
a technological measure that effectively controls access to a
[copyrighted] work." *Id.* § 1201(a)(2)(A).[2]

The DMCA also includes certain fine-grained permanent
exemptions, some of which apply to the anti-circumvention
provision and to both anti-trafficking provisions, *see, e.g.*,
*id.* § 1201(e) (broadly exempting official law enforcement
activity); some of which apply to the anti-circumvention
provision and only one of the anti-trafficking provisions, *see,
e.g.*, *id.* § 1201(j) (exempting security testing "solely for the
purpose of good faith testing, investigating, or correcting, a
security flaw or vulnerability"); and some of which apply only
to the anti-circumvention provision *see, e.g.*, *id.* § 1201(d)

_____

[2] Section 1201(b), in relevant part, prohibits a person from
"manufactur[ing], import[ing], offer[ing] to the public,
provid[ing], or otherwise traffic[king] in any technology,
product, service, device, component, or part thereof, that is
primarily designed or produced for the purpose of circumventing
protection afforded by a technological measure that effectively
protects a right of a copyright owner under [Title 17, governing
copyright]." 17 U.S.C. § 1201(b)(1)(A). Although sections
1201(a)(2) and 1201(b) employ similar wording, section
1201(a)(2) is aimed at circumvention technologies that permit
access to a copyrighted work, whereas 1201(b) is aimed at
circumvention technologies that permit copyrighted works to
actually be copied. S. Rep. at 12.

4

(exempting nonprofit libraries, archives, and educational institutions that seek to circumvent TPMs to determine whether to purchase a copyrighted product).

Additionally, cognizant of its "longstanding commitment to the principle of fair use," H.R. Rep. No. 105-551, pt. 2, at 35 (1998) ("Commerce Comm. Rep."); Congress sought to balance its efforts to curtail digital piracy with users' rights of fair use by putting in place a triennial rulemaking process to exempt certain noninfringing uses of certain classes of copyrighted works from the anti-circumvention provision for three-year periods. *See* 17 U.S.C. §§ 1201(a)(1)(B)-(E). Accordingly, every three years, the Librarian of Congress, "upon the recommendation of the Register of Copyrights, who shall consult with the Assistant Secretary for Communications and Information of the Department of Commerce and report and comment on his or her views in making such recommendation, shall make the determination in a rulemaking proceeding . . . of whether persons who are users of a copyrighted work are, or are likely to be in the succeeding 3-year period, adversely affected by the [anti-circumvention provision] in their ability to make noninfringing uses under [Title 17] of a particular class of copyrighted works." *Id.* § 1201(a)(1)(C). To make the relevant determination, the Librarian must consider: "(i) the availability for use of copyrighted works; (ii) the availability

5

for use of works for nonprofit archival, preservation, and educational purposes; (iii) the impact that the prohibition on the circumvention of technological measures applied to copyrighted works has on criticism, comment, news reporting, teaching, scholarship, or research; (iv) the effect of circumvention of technological measures on the market for or value of copyrighted works; and (v) such other factors as the Librarian considers appropriate." *Id.*

### B. Factual Background

Plaintiff Matthew Green is a computer science professor at Johns Hopkins University. Compl., ECF No. 1 ¶¶ 5, 75; Declaration of Mathew Green ("Green Decl."), ECF No. 30-2 ¶ 1. Plaintiff Andrew Huang is a Singapore-based electrical engineer who owns and operates several technology-related business entities, including Plaintiff Alphamax, LLC. *Id.* ¶¶ 6-7, 88; Declaration of Andrew "bunnie" Huang ("Huang Decl."), ECF No. 30-3 ¶ 1. Plaintiffs seek to engage in certain activities that they fear will run afoul of section 1201(a)(1)(A)'s circumvention prohibition and section 1201(a)(2)'s trafficking prohibition, exposing them to potential civil liability under the DMCA's private right of action, 17 U.S.C. § 1203, and potential criminal liability under the DMCA's criminal offense provision, 17 U.S.C. § 1204. Compl., ECF No. 1 ¶¶ 86-87, 109-10;

Green Decl., ECF No. 30-2; Compl., ECF No. 1 ¶¶ 26, 29; Huang
Decl., ECF No. 30-3 ¶¶ 12, 16, 17

Specifically, Dr. Green "investigates the security of
electronic systems," and "[h]e would like to include detailed
information regarding how to circumvent security systems" in a
forthcoming book, Compl., ECF No. 1 ¶ 75, Green Decl., ECF No.
30-2 ¶ 20; but he "has declined to investigate certain devices
due to the possibility of litigation based on [s]ection 1201,"
*id.* ¶ 80. Dr. Green requested an exemption to cover his security
research as part of the 2015 triennial rulemaking process, but
the exemption that the Librarian of Congress put in place was
not broad enough to cover all of his proposed research. *Id.* ¶¶
78-79, 84-85. Dr. Green did secure an exemption in the 2018
triennial rulemaking which "allows him and others to conduct
'good-faith security research.'" Mot., ECF No. 30-1 at 20.[3]
Accordingly, he is able "to circumvent TPMs in furtherance of
his research" and does "not seek[] to preliminarily enjoin the
Government's enforcement of section 1201(a)(1) against him." *Id.*

Dr. Huang and Alphamax are the creators of "NeTV," a device
for editing high-definition digital video. Compl., ECF No. 1 ¶
89; Huang Decl., ECF No. 30-3 ¶ 3. They seek to create an

_____

[3] When citing electronic filings throughout this Opinion, the
Court cites to the ECF page number, not the page number of the
filed document.

"improved" NeTV——a "NeTVCR"——that would allow its users "to save content for later viewing, move content to a viewing device of the user's choice, or convert content to a more useful format." Compl., ECF No. 1 ¶¶ 90-91; Huang Decl., ECF No. 30-3 ¶ 3. To create the NeTVCR, Huang and Alphamax have to circumvent the TPMs——High-Bandwidth Digital Content Protection ("HDCP")——that restricts the viewing of High-Definition Multimedia Interface ("HDMI") signals. *Id.* ¶¶ 92-93; Huang Decl., ECF No. 30-3 ¶ 12. They have been deterred from doing so because of the risk of prosecution under section 1201. *Id.* ¶¶ 109-10; Huang Decl., ECF No. 30-3 ¶ 12. The "NeTVCR would dramatically expand users' ability to create new, noninfringing speech." Mot., ECF No. 30-1 at 17 (citing Huang Decl., ECF No. 30-3 ¶¶ 13-16). For example, "[a]n individual might use NeTVCR to create a short movie of herself playing a video game, alongside commentary and remixes of other gamers' videos." Mot., ECF No. 30-1 at 17 (citing Huang Decl., ECF No. 30-3 ¶¶ 13, 19). Or "[m]edia organizations might display news coverage of important events from multiple sources at the same time, bringing different perspectives to viewers." Mot., ECF No. 30-1 at 17 (citing Huang Decl., ECF No. 30-3 ¶ 13). "And beyond creative and cultural expression, NeTVCR has numerous applications that will improve people's lives in areas such as education, news, and safety." Mot., ECF No. 30-1 at 18 (citing Huang Decl., ECF No. 30-3 ¶¶ 13).

8

Dr. Huang participated in the triennial rulemaking process for the first time in 2017, but did not receive an exemption. Mot., ECF No. 30-1 at 19. While some of Dr. Huang's proposes uses were recognized as being "potentially . . . fair use," U.S. COPYRIGHT OFFICE, Section 1201 Rulemaking: Seventh Triennial Proceeding to Determine Exemptions to the Prohibition on Circumvention, Recommendation of the Acting Register of Copyrights (Oct. 2018) ("2018 Recommendation"), ECF No. 30-8 at 136; and that "possibly [] there may not be reasonable alternatives to each and every use listed by [Dr.] Huang, *id*. at 144; his petition was denied on the grounds that a "fuller description" of the potential fair uses was needed "in order to craft a sufficiently 'narrow and focused' exemption," *Id*. at 136.

## C.   Procedural History

Plaintiffs filed their Complaint on July 21, 2016, seeking declaratory and injunctive relief on their claims. See Compl., ECF No. 1. On September 29, 2016, Defendants filed a Motion to Dismiss, *see* Mot. to Dismiss, ECF No. 15; and Dr. Green filed a Motion for Preliminary Injunction, *see* Mot. for Prelim. Inj., ECF No. 16. On September 30, 2016, the Court set a briefing schedule and stayed the Motion for Preliminary Injunction pending resolution of the Motion to Dismiss. *See* Minute Order (Sept. 30, 2016). On June 27, 2019, the Court issued a

9

Memorandum Opinion and Order dismissing all but the as-applied First Amendment claims. *Green*, 392 F. Supp. 3d 68. After the parties failed to reach agreement on proposed stipulated facts for consolidated preliminary injunction proceedings with dispositive proceedings on the merits, *see* Joint Status Report, ECF No. 29; the Court adopted Plaintiffs' proposed scheduling order, *see* Minute Order (Sept. 9, 2019). Thereafter, Dr. Green, Dr. Huang, and Alphamax filed a Motion for Preliminary injunction on September 19, 2019, *see* ECF No. 30; the remaining Defendants filed their Opposition brief on October 24, 2019, *see* ECF No. 38; and Plaintiffs filed their Reply brief on November 14, 2019, *see* ECF No. 44. The motion is ripe and ready for the Court's adjudication.

## II. Standard of Review

"A plaintiff seeking a preliminary injunction must establish [1] that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (alteration in original) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). Where the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). A

preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In the usual case, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981). Where the terms of an injunction "would alter, rather than preserve, the status quo by commanding some positive act," pursuant to persuasive authority in this District, "the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp 2d 1 (D.D.C. 1997) (quotation marks and citations omitted). The power to issue such an injunction "should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (quotation marks and citation omitted).

In this Circuit, the four factors have typically been evaluated on a "sliding scale," such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288,

1291–92 (D.C. Cir. 2009). In the wake of the Supreme Court's decision in *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008), "the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." *Holmes v. FEC,* 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014); *see also Sherley,* 644 F.3d at 393 ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.") (quotation marks omitted). Nonetheless, "the Circuit has had no occasion to decide this question because it has not yet encountered a post-*Winter* case where a preliminary injunction motion survived the less rigorous sliding-scale analysis." *ConverDyn v. Moniz,* 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014).

At the preliminary injunction stage, the Court may "rely on the sworn declarations in the record and other credible evidence in the record even though such evidence might not meet all of the formal requirements for admissibility at a trial." *AFGE v. Dist. of Columbia*, No. 05-472, 2005 WL 1017877, at \*4 (D.D.C. May 2, 2005); *see Camenisch*, 451 U.S. at 395 (1981) (decision on a preliminary injunction may be made "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"); *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) (same).

## III. Analysis

### A. Plaintiffs' Requests For Injunctive Relief Pertaining to Dismissed Claims Are DENIED

Plaintiffs seek injunctive relief for dismissed claims. Because the Court dismissed Plaintiffs' facial First Amendment challenges, see *Green*, 392 F. Supp. 3d at 89, 90; the Court **DENIES** Plaintiffs' request that the Court enjoin the remaining Defendants from enforcing Section 1201(a)'s criminal prohibition on circumvention and trafficking, *see* Proposed Order, ECF No. 30-12 at 1. And because the Court dismissed Plaintiffs' Administrative Procedure Act claim, *see Green*, 392 F. Supp. 3d at 100; the Court **DENIES** Plaintiffs' request that "defendant Carla Hayden" be "enjoined to grant exemptions to 17 U.S.C. 1201(a)(1)(A) that would allow plaintiffs Green, Huang, Alphamax, and others to engage in conduct protected by the First Amendment," Proposed Order, ECF No. 31-12 at 1.

### B. Plaintiffs' Alternative Request For Relief Is DENIED

Though not articulated in their Proposed Order, Plaintiffs, in the alternative, ask the Court to

> construe the definition of "circumvent" included in Section 1201(a) such that a person may be considered to have the requisite "authority of the copyright owner" when their use of the copyrighted work at issue is non-infringing and therefore authorized by copyright law. In other words, the "authority of the copyright owner" element would be satisfied whenever the copyright owner would have no right to withhold that authority.

13

Mot. ECF No. 30-1 at 23. Defendants respond—and the Court agrees—that Plaintiffs' request would "invalidate the scheme mandated by Congress," and has been rejected by other courts. Opp'n, ECF No. 38 at 20-21. The Court is persuaded by other courts that have rejected Plaintiffs' proposed interpretation. *See, e.g.*, *Universal Studios, Inc. v. Corley*, 273 F.3d 429, 443-44 & n.13 (2d Cir. 2001) (rejecting an interpretation of subsection 1201(c)(1) that would "allow the circumvention of encryption technology protecting copyrighted material when the material will be put to 'fair uses' exempt from copyright liability" as "not only outside the range of plausible readings of the provision, but []also clearly refuted by the statute's legislative history").

## C. Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims

### 1. The Sale of Dr. Green's Book Likely Would Not Constitute Trafficking Under Section 1201(a)(2)[4]

Dr. Green states that he seeks to publish an academic book "to instruct readers . . . [on] how to identify vulnerabilities in computer systems." Green Decl., ECF No. 30-2 ¶ 20. He "would like to include examples of code capable of bypassing security measures . . . [and] instructions written in English." *Id*. He

---

[4] Dr. Green does not seek injunctive relief with regard to his anti-circumvention claim because he received an exemption in the 2018 Rulemaking. Mot., ECF No. 30-1 at 20.

states that his "book must contain detailed descriptions about how [he] circumvented technological protection measures" so that: (1) other scientists can replicate how he circumvented the protection measure; (2) other scientists can find additional flaws rather than "rediscover the same flaws that [he] already found"; and (3) so "that the people who design computer systems (both technological protection measures and the underlying software code) will learn from [his] book how to design better systems that do not contain the kind of flaws that [he] discovered. *Id*. ¶¶ 21-23. Dr. Green states that when marketing the book, "[he] would like to highlight the detailed information it contains about bypassing security measures, since that will be part of what makes it an effective book for teaching a person how to engage in cutting-edge security research." *Id.* ¶ 25. The Complaint alleges that Dr. Green "would like to include detailed information regarding how to circumvent security systems in his book, and expects to earn royalties on the book's sale," Compl., ECF No. 1 ¶ 75; and that he "seeks to publish a book that would educate readers about how to circumvent access controls on copyrightable software," *id*. ¶ 112.

The Government contends that

> Academic publications typically are not primarily produced for the purpose of circumventing TPMs, so as to fall under § 1201(a)(2)(A); instead, they are produced for academic purposes, such as instruction or

> contributing to a field of research. In
> addition, to the extent an academic
> publication has a commercially significant
> purpose or use, it is generally not to enable
> circumvention of a TPM, so as to fall under §
> 1201(a)(2)(B), nor are academic publications
> typically marketed as circumvention tools,
> such that they would fall under §
> 1201(a)(2)(C).

Opp'n, ECF No. 38 at 42. The government states that whether an

activity is subject to the anti-trafficking prohibition is

"fact-specific" and that neither the allegations in the

Complaint nor Dr. Green's Declaration indicate that the sale of

his book would fall within the ambit of the anti-trafficking

prohibition. *Id.* at 43-44. Plaintiffs do not respond to this

argument other than to observe that "the government itself

suggests that the statute plausibly may be construed so as not

to prohibit publication of the book that Dr. Green wishes to

publish." Reply, ECF No. 44 at 23.

To fall within the anti-trafficking prohibition, Dr.

Green's academic book would have to be considered a "product .

. that (a) is primarily designed or produced for the purpose of

circumventing a [TPM] that effectively controls access to a

[copyrighted work]"; (b) "has only limited commercially

significant purpose or use other than to circumvent" such a TPM;

or (c) "is marketed . . . for use in circumventing" such a TPM.

17 USC § 1201(a)(2). Neither the allegations in the Complaint

nor Dr. Green's averments in his Declaration indicate that the

book "is primarily designed or produced for the purpose of circumventing a [TPM] that effectively controls access to a [copyrighted work]," nor that the book "has only limited commercially significant purpose or use other than to circumvent" a TPM; rather the allegations and averments indicate that the primary purpose of the book is to provide scholarly information to improve computer design. Furthermore, neither the allegations nor the averments indicate that the book will be "marketed . . . for use in circumventing" a TPM; rather the book will be marketed "to highlight the detailed information it contains about bypassing security measures, since that will be part of what makes it an effective book for teacher a person how to engage in cutting-edge security research." Green Decl., ECF No. 38 ¶ 25. Neither the allegations in the Complaint nor the averments in Dr. Green's Declaration indicate that the sale of his book implicates the anti-trafficking prohibition. Accordingly, Dr. Green is unlikely to succeed on the merits of his as-applied anti-trafficking claim.[5]

---

[5] Because Dr. Green has not demonstrated that the sale of his book would fall within the ambit Section 1201(1)(2), the Court need not reach whether that section's application to Green satisfies intermediate scrutiny.

### 2. Dr. Huang and Alphamax are Unlikely to Succeed on Their As-Applied Section 1201(1)(1)(A) and (a)(2) Claims

The government makes a compelling argument that the code as used in the NeTVCR device Dr. Huang wants to create, use and distribute does not qualify as speech entitled to First Amendment protection, *see* Opp'n, ECF No. 38 at 21-27; but the Court need not resolve that question because assuming that Dr. Huang's intended use of the code in the NeTVCR is entitled to First Amendment protection, the government has met its burden under intermediate scrutiny to justify the regulation of that speech.

### a. Applicable Intermediate Scrutiny Standard

"[T]he anti-circumvention and anti-trafficking provisions will be upheld so long as they further a substantial governmental interest; the interest furthered is unrelated to the suppression of free expression; and the provisions do not burden substantially more speech than is necessary to further the government's interest." *Green*, 392 F. Supp 3d at 94 (citing *Turner Broad. Sys., Inc.* 512 U.S. at 662 (citing *Ward*, 491 U.S. at 799; *O'Brien*, 391 U.S. at 377)). "To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government's interest. 'Rather, the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be

18

95

achieved less effectively absent the regulation.'" *Turner*, 512
U.S. at 662 (quoting *Ward*, 491 U.S. at 799). A regulation is
narrowly tailored if "it does not burden substantially more
speech than is necessary to further the government's legitimate
interests." *Id.* at 665. In determining whether a regulation is
"narrowly tailored," the Court "must 'accord substantial
deference to the predictive judgments of Congress,' since '[a]s
an institution . . . Congress is far better equipped than the
judiciary to 'amass and evaluate the vast amounts of data'
bearing upon an issue as complex and dynamic as that presented
here.'" *321 Studios*, 307 F. Supp. 2d at 1101 (quoting *Turner*,
512 U.S. at 624).

"[T]he Government . . . bears the burden of showing that
the remedy it has adopted does not 'burden substantially more
speech than is necessary to further the government's legitimate
interests,'" *id*. at 665 (quoting *Ward*, 491 U.S. at 799); and to
establish "necessity" by showing that the government's interest
"would be achieved less effectively absent the regulation." *Id*.
at 662. Defendants state that they plan to meet their burden at
the summary judgment stage, but contend that "even the evidence
currently available suffices to demonstrate that Plaintiffs are
unlikely to succeed on the merits." Opp'n, ECF No. 38 at 29.

##### b.   The DMCA Is Aimed at Furthering a Substantial Interest and That Interest is Unrelated to the Suppression of Free Expression

As the Court stated in its prior Memorandum Opinion,

> Congress enacted the DMCA in large part because of substantial fears of "massive piracy" of copyrighted works in the digital environment. S. Rep. at 8. Thus, the government's interest is in "preventing trafficking in devices and technologies that would undermine the access controls that protect copyrighted works," Defs.' Mem. Supp., ECF No. 15-1 at 50, and that interest is "unquestionably substantial" and, moreover, "that interest is unrelated to the suppression of free expression." *Corley*, 273 F.3d at 454.

*Green*, 392 F. Supp 3d at 94. In their opposition briefing, Defendants cite the DMCA's legislative history,[6] declarations in this proceeding,[7] and evidence of which the Court can take judicial notice[8] to demonstrate that it was necessary for Congress to enact the anti-circumvention and anti-trafficking provisions in the DMCA in order to "launch and protect the digital marketplace for copyrighted works and address the risk of 'massive piracy' in the digital age." Opp'n, ECF No. 38 at

---

[6]  S. Rep. No. 105-190, at 2-8.

[7]  Declaration of C. Brendan S. Traw, ECF No. 38-1 ¶¶ 3, 8.

[8]  *See, e.g.*, *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 309 (S.D.N.Y. 2000) (explaining that the development of DVDs in the 1990s "brought with it a new problem—increased risk of piracy by virtue of the fact that digital files, unlike the material on video cassettes, can be copied without degradation from generation to generation"). The Court takes judicial notice of the factual findings in *Reimerdes*. *See id.* at 305 & n. 4.

29-33. Defendants further cite to testimony at more recent congressional hearings indicating that "the balance struck by the DMCA has served its purpose in allowing markets in new technologies . . . to thrive"; and the report issued by the Copyright Office, that "following a comprehensive study including public input, . . . concluded that the DMCA has been largely successful." *Id*. at 34.

Plaintiffs contend in their reply brief that "they have never conceded that the government's purported interest is substantial and unrelated to the suppression of free expression." Reply, ECF No. 44 at 18. However, in its prior Memorandum Opinion, the Court stated "[p]laintiffs do not dispute that the DMCA is aimed at furthering a substantial interest and that interest is unrelated to the suppression of free expression," *Green*, 392 F. Supp. 3d at 94; and Plaintiffs did not seek relief from the Court's Order. The Court sees no reason to revisit its prior ruling. Accordingly, "the DMCA is aimed at furthering a substantial interest and that that interest is unrelated to the suppression of free expression." *Green*, 392 F. Supp. 3d at 94.

21

**c. Defendants Have Met Their Burden of Showing that the Anti-Circumvention and Anti-Trafficking Provisions Do Not Burden Substantially More Speech than Is Necessary**

Defendants contend that "[Dr.] Huang's proposed circumvention and trafficking activity strikes at the heart of today's digital audio visual contend marketplace." *Id*. at 34-35. Defendants point out that Dr. Huang submitted a petition seeking an exemption for his NeTVCR device for the first time in the 2017 triennial rulemaking, and cite evidence arising from that rulemaking which shows that his "proposed circumvention if allowed, would pose enormous risks to the digital content marketplace." *Id*. at 35, 37-38. Defendants cite public records that are admissible[9] and that can be judicially-noticed[10] to demonstrate why Dr. Huang's NeTVCR, which is designed to circumvent HDCP, "would enable unrestricted access to ['content offered through cable and satellite subscription and on-demand television services such as Comcast, Verizon, Fios, and DIRECT TV; online streaming services such as Hulu, Netflix, and Amazon Prime Video; network mobile apps, such as HBO NOW, digital rental retailers, such as iTunes, Google Play, and Vuvu; [] video game consoles sold by Microsoft, Sony, and Nintendo'] and

---

[9] F.R.E. 803(8).

[10] *CREW v. Trump*, 924 F.3d 602, 607 (D.C. Cir. 2019) (public records can be judicially noticed); 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed.").

[content on DVDs, Blu-ray discs, and Ultra HD discs] for any purpose, including piracy and other infringements of copyright." *Id*. at 36. Defendants contend that since the NeTVCR allows recording and "format-conversion functionality", it would "certainly facilitate the ability to engage in piracy." *Id*. Accordingly, the government's substantial interests "would be achieved less effectively," *Turner*, 512 U.S. at 662; if Dr. Huang's proposed conduct was not prohibited by Section 1201(a).

The record of the rulemaking proceeding indicates that "[Dr.] Huang does not dispute that [his proposed circumvention] could permit virtually anything displayable on a modern television screen to be recorded in the clear and made available online[.]" 2018 Recommendation, ECF No. 30-8 at 147. Evidence in the record before the Court indicates that "[i]f publication of hacking material for HDCP or products like a NeTVCR (as proposed here) are permitted, the effect would be to eviscerate virtually every single video content delivery protection system exposing valuable copyrighted video content to massive infringement." Declaration of Stephen P. Balogh[11] ("Balogh Decl."), ECF No. 38-2

---

[11] Stephen P. Balogh is the President of Digital Content Protection, L.L.C., the Licensor of the High-bandwidth Digital Content Protection ("HDCP") system. Balogh Decl., ECF No. 38-2 ¶ 2.

¶ 5; *accord* Declaration of C. Brendan S. Traw[12] ("Traw Decl."),

ECF No. 38-1 ¶ 14.

Defendants also point to circumvention alternatives that are available to Dr. Huang:

> Opponents set forth a number of concrete examples of potential alternatives to circumvention that Huang fails to meaningfully challenge. For example, Huang fails to explain why using an existing laptop, smartphone, or tablet while watching TV, or even having multiple windows open on a computer, is an inadequate alternative to picture-in-picture, split screen, and certain rescale uses. While Huang argues that his NeTV device cannot create transparent overlays, he fails to explain why the opaque overlays that the NeTV does generate are inadequate for many of the described uses, such as smart home and home assistant messages, reminders, and alerts. Huang also fails to describe why current DVRs on the market, along with the myriad download, rental, streaming, on-demand, disc-to-digital, locker, and remote access options offered by copyright owners . . . are inadequate for his needs.

2018 Recommendation, ECF No. 30-8 at 144.

Furthermore, the burden on protected speech is low. As to Dr. Huang, the parties focus primarily on whether his interest in producing and distributing a device that would circumvent HDCP to giver users access and unencumbered use of audiovisual works, including those distributed through popular streaming services, is protected speech as applied. Even if Dr. Huang's

---

[12] C. Brendan S. Traw is an Intel Corporation Senior Fellow. Traw Decl., ECF No. 38-1 ¶ 1.

interest is protected, the anti-trafficking provision is constitutional if the government meets its burden under intermediate scrutiny. As the Court concludes below, here, it has.

Dr. Huang also asserts a personal interest in circumventing HDCP in order to make personal uses of "in the clear" versions of audiovisual works. During the rulemaking proceeding, the Register of Copyright lacked a sufficient record to determine whether the uses would be fair use, and therefore non-infringing—a necessary determination under the applicable legal standard. 2018 Recommendation, ECF No. 30-8 at 136-141.

The parties relitigate the question of fair use here. While fair use is potentially relevant, the legal issue before the Court is whether Dr. Huang's speech interests, as applied, outweigh the government's interest in regulation.[13] As a matter of constitutional law, a party seeking to circumvent a TPM to make even an infringing use of a copyrighted work could still have a cognizable speech interest in making such use. *See Eldred v. Ashcroft*, 537 U.S. 186, 221 (2003) (recognizing that the court below "spoke too broadly when it declared copyrights 'categorically immune to challenges under the First

---

[13] For this reason, the supplemental authority cited by Plaintiffs, *see* Notice of Supplemental Authority, ECF No. 50; is inapposite.

Amendment'"). But, the statutory question of whether such use is infringing or fair use is certainly relevant to the government's interest in regulating such speech. Thus, while the legal question before the Court is distinct from legal standard in the rulemaking, like the Register, the Court lacks a sufficient record from which it can conclude that Dr. Huang has met his burden to show that he is entitled to a preliminary injunction because he is likely to succeed on the merits as to his proposed personal interests in circumventing HDCP.

Furthermore, Dr. Huang has failed to provide evidence regarding the burden on his protected speech in relation to potential fair uses of these works by third parties. *See generally* Huang Decl., ECF No. 30-3; *see Corley*, 273 F.3d at 459 (noting that "to whatever extent the anti-trafficking provisions of the DMCA might prevent others from copying portions of DVD movies in order to make fair use of them, the evidence as to the impact of the anti-trafficking provision[s] of the DMCA on prospective fair users is scanty and fails to adequately address the issues.") (internal quotations marks omitted).

In view of the evidence that Defendants have cited, the Court is persuaded that the government has met its burden to demonstrate that the anti-circumvention and anti-trafficking provisions, as applied to Dr. Huang's proposed course of conduct, "do not burden substantially more speech than is

necessary to further the government's interest." *Green*, 392 F.
Supp. 3d at 94 (citations omitted). Plaintiffs argue that
Defendants have failed to meet their burden because they "rely
on generalized claims of harm", "offer[ing] speculation and
conjecture—specifically, private parties' supposed fears that
TPMs and traditional copyright and other laws will be
insufficient to deter unidentified third parties (not Plaintiffs
themselves) from engaging in piracy." Reply, ECF No. 44 at 20.
However, the evidence cited by Defendants is anything but
generalized, speculative and conjectural.

In the rulemaking proceeding, Dr. Huang "d[id] not dispute
that [his proposed circumvention] would permit virtually
anything displayable on a modern television screen to be
recorded in the clear and made available online[.]" 2018
Recommendation, ECF No. 30-8 at 147. Furthermore, opponents for
granting the exemption to Dr. Huang "raise[d] a serious concern
that the exemption, if granted, could potentially compromise a
distribution system for audiovisual content that has matured
seemingly in part due to the protections offered by section
1201." *Id*. Evidence in the record in this case indicates that
"[i]f publication of hacking material for HDCP or products like
a NeTVCR (as proposed here) are permitted, the effect would be
to eviscerate virtually every single video content delivery
protection system exposing valuable copyrighted video content to

massive infringement." Balogh Decl., ECF No. 38-2 ¶ 5; *accord* Traw. Decl., ECF No. 38-1 ¶ 14.

This evidence is entirely distinguishable from the "paucity of evidence" cited by the Supreme Court in *Turner*, and upon which Plaintiffs rely. *Turner*, 512 U.S. at 667. And Plaintiffs' contention that Defendants "essentially manufacture a wide-scale crisis where there is none," Reply, ECF No. 44 at 20; is wholly unpersuasive in view of the evidence upon which Defendants' rely.

Plaintiffs argument that the government's interests are protected because "actual copyright infringers can still be punished" under copyright law that precedes the DMCA, Mot., ECF No. 30-1 at 24; is unpersuasive because the DMCA was enacted specifically to address the challenges posed by the Internet and digital content. *See Corley*, 273 F.3d. at 435 (Observing that "[f]earful that the ease with which pirates could copy and distribute a copyrightable work in digital form was overwhelming the capacity of conventional copyright enforcement to find and enjoin lawfully copied material, Congress sought to combat copyright piracy in its earlier states, before the work was even copied.").

For all of these reasons, Defendants have met their burden of showing that the anti-circumvention and anti-trafficking provisions do not burden substantially more speech than is

28

necessary as applied to Dr. Huang and Alphamax. Accordingly, Dr. Huang and Alphamax are unlikely to succeed on the merits of their as-applied claim.

### D. Plaintiffs Have Failed to Demonstrate Irreparable Harm

"In this Circuit, a litigant seeking a preliminary injunction must satisfy 'a high standard' for irreparable injury." *ConverDyn*, 68 F. Supp. 3d at 46 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). The movant must demonstrate that it faces an injury that is "both certain and great; it must be actual and not theoretical," and of a nature "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quotation marks and emphasis omitted).

Plaintiffs assert that they face "clear and irreparable harm" if a preliminary injunction is not issued because "[t]he First Amendment fully applies to" the activities in which they seek to engage, and because without a preliminary injunction, they will "have to wait until the conclusion of the lawsuit to learn whether they are free to engage in" the activities. Mot., ECF No. 30-1 at 34-35. In their reply brief, Plaintiffs assert that "i]nterference with an individual's First Amendment right to expression constitutes per se irreparable injury." Reply, ECF 44 at 29. However, Plaintiffs' arguments fail because, as

explained *supra* Section IV.A, they have not established a
likelihood of success on their as-applied First Amendment
challenges. *See Pursuing America's Greatness*, 831 F.3d at 511
(noting that "[i]n first Amendment cases, the likelihood of
success 'will often be the determinative factor in the
preliminary injunction analysis'" (citing *Joelner v. Vill. of
Wash. Park, Ill*., 378 F.3d 613, 620 (7th Cir. 2004)).
Accordingly, because Plaintiffs have not established a
likelihood of success on the merits, they have not demonstrated
that they will suffer irreparable harm.

### E.   The Balance Of Equities And Public Interest Do Not Favor An Injunction

The balance-of-equities factor directs the Court to
"'balance the competing claims of injury and . . . consider the
effect on each party of the granting or withholding of the
requested relief.'" *ConverDyn*, 68 F. Supp. 3d at 52 (quoting
*Winter*, 555 U.S. at 24). "[T]he [government's] harm and the
public interest are one and the same, because the government's
interest *is* the public interest." *Pursuing America's Greatness
v. Federal Election Commission*, 831 F.3d 500, 511 (D.C. Cir.
2016). "The purpose of . . . interim relief is not to
conclusively determine the rights of the parties, *University of
Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), but to balance the
equities as the litigation moves forward. In awarding a

preliminary injunction a court must also 'conside[r] . . . the overall public interest,' *Winter*, 555 U.S. at 26." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017).

Plaintiffs argue that in the absence of an injunction, their "harm far outweighs" that of the Government because they are: (1) deprived of "of core First Amendment Rights"; and (2) threatened with criminal liability, Mot., ECF No. 30-1 at 36; whereas the Government is not harmed because: (1) the statutory provisions are likely unconstitutional; (2) it "will suffer no harm in its efforts to 'promote the progress of the useful arts'" because "[t]he anti circumvention and anti-trafficking rules restrict—instead of promote—that progress"; and (3) "[t]he government has ample, and superior, alternative means of policing infringement, such as imposing liability for actual copyright infringement . . . ." *Id.* (quoting U.S. CONST. art I, § 8, cl. 8). Finally, Plaintiffs argue that the public interest would be served by an injunction because "'enforcement of an unconstitutional law is always contrary to the public interest.'" *Id.* at 37 (citing *Gordon*, 721 F.3d at 653.)

Defendants respond—and the Court agrees—that Plaintiffs' arguments fail because, again as explained *supra* Section IV.A, Plaintiffs have not established a likelihood of success on their as-applied First Amendment challenges. *See Pursuing America's Greatness*, 831 F.3d at 511 (noting that "[i]n first Amendment

31

108

cases, the likelihood of success 'will often be the determinative factor in the preliminary injunction analysis'" (citing *Joelner v. Vill. of Wash. Park, Ill.*, 378 F.3d 613, 620 (7th Cir. 2004)); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998) ("the final preliminary injunction factor, the public interest, also offers [Plaintiff] no support because it is inextricably linked with the merits of the case. If, as we have held, [Plaintiff] is not likely to establish [a likelihood of success on the merits], then the public interest considerations weigh against an injunction.")). Accordingly, because Plaintiffs have not established a likelihood of success on the merits, the balance of the equities and the public interest do not favor a preliminary injunction.

## IV. Conclusion

For the reasons stated above, Plaintiffs' Motion for Preliminary Injunction is **DENIED.** An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**July 15, 2021**

32

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| MATTHEW GREEN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 16-1492 (EGS) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

For the reasons stated in the accompanying Memorandum

Opinion, Plaintiffs' Motion for Preliminary Injunction is

**DENIED.**

**SO ORDERED.**

**Signed:    Emmet G. Sullivan
            United States District Judge
            July 15, 2021**